## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TURNER CONSTRUCTION　　　　　)
COMPANY, a New York corporation,　)
　　　　　　　　　　　　　　　　)　　Case No.
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　)
CHICAGO CHRISTIAN INDUSTRIAL)
LEAGUE, an Illinois not-for-profit　 )
corporation,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　)

FILED: JUNE 19, 2008
08CV3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC

### COMPLAINT FOR DAMAGES

　　　　Plaintiff, Turner Construction Company, a New York corporation ("Turner"), by counsel, for its Complaint For Damages against the Defendant, Chicago Christian Industrial League, an Illinois not-for-profit corporation ("CCIL"), alleges and states as follows:

### BACKGROUND

### Nature of the Action and the Relief Requested

　　　　1.　　Plaintiff, Turner, has filed this action seeking damages arising out of CCIL's refusal to fully compensate Turner for its construction of an educational and dormitory facility in accordance with the Parties' agreement.

　　　　2.　　As more specifically alleged below, notwithstanding Turner's performance of its duties, CCIL repeatedly delayed its payments to Turner in breach of the agreement and has utterly refused to make final payment for the services provided.

3.    In light of CCIL's breaches of the agreement, Turner requests that this Court enter judgment in favor of Turner and against CCIL in the amount of at least $223,878.58, plus continuing interest, its attorneys' fees, expenses, costs and such other and further relief as this Court deems proper.

## The Parties

4.    Turner is a New York corporation with its principal place of business in New York, New York.  Turner is primarily involved in the business of acting as a general contractor for the construction of commercial, industrial and residential buildings.

5.    CCIL is an Illinois not-for-profit corporation having its registered office and principal place of business in Chicago, Cook County, Illinois.  CCIL is primarily involved in the business of providing employment, housing, counseling and health services to homeless people.

## Jurisdiction and Venue

6.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) in that there is diversity of citizenship amongst Turner and CCIL and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

7.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1) as CCIL resides in this District.

8.    Alternatively, venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions that give rise to Turner's claim occurred in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(a)(3) as CCIL is subject to personal jurisdiction in this District.

9.    This Court has personal jurisdiction over CCIL as it is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois.

## The Parties Enter Into the Construction Contract

10.    On or about December 3, 2004, Turner entered into a contract with CCIL (the "Contract") to serve as general contractor for the construction of the Chicago Christian Industrial Campus Relocation Project (the "Project") located at 2750 W. Roosevelt Road, Chicago, Illinois (the "Property").

11.    Turner agreed to complete the work set forth in Contract, including its drawings, specifications and addenda (the "Contract Work").

12.    The original base amount of the Contract was Fifteen Million Five Hundred Thirty Five Thousand Dollars ($15,535,000). A true and correct copy of the Contract is attached hereto as Exhibit A.

13.    At the insistence and request of CCIL, Turner also furnished certain extra and/or additional work and materials (the "Extra Work"). The amount of the extra and/or additional work was Three Million Seventy One Thousand Three Hundred Thirty Eight Dollars ($3,071,338).

14.    The Extra Work performed and supplied by Turner was outside the scope of the Contract, ordered by or on behalf of CCIL, accepted by or on behalf of CCIL, not furnished by Turner as a voluntary act, and not rendered necessary by any fault of Turner. True and correct copies of the Change Orders detailing the Extra Work are attached hereto as Group Exhibit B.

15.    The Contract provided for monthly progress payments whereby CCIL was to pay Turner for the work completed each month within 15 days of its receipt of

Turner's application for payment and a signed certificate of payment from the architect. See Exhibit A, Article 5.

16.    CCIL was to make a final payment of the entire unpaid balance of the Contract within 30 days of Turner's full performance of its duties under the Contract and the architect's issuance of a final Certificate for Payment. Exhibit A, § 5.2.1-2.

17.    Pursuant to § 7.2 of the Contract, "[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due at the "prime rate" or its equivalent charged from time to time by the Bank of America in Chicago, Illinois." See Exhibit A.

18.    On numerous occasions, CCIL failed to make full payment within the time allotted under the Contract. The chart attached hereto as Exhibit C details the date each payment was due, the date it was actually made and the interest charges incurred by CCIL pursuant to § 7.2 of the Contract as a result of CCIL's delays.

19.    By January 30, 2007, Turner completed its work under the Contract and on October 29, 2007, the architect issued a "Certificate of Final Completion". A true and correct unsigned copy of the Certificate of Final Completion is attached hereto as Exhibit D.

20.    Turner submitted its application for final payment on April 16, 2007 and payment was due on May 15, 2007.

21.    CCIL has failed and refused to make the final payment required by the Contract.

22.    On May 19, 2008, Turner gave notice of its claim to CCIL and submitted its claim to the architect for the Project for his initial interpretation in accordance with

4

Section 4.4.1 of the Contract, but has not received any response from the architect. True and correct copies of the notice and claim submission are attached hereto as Group Exhibit E.

23.  On June 19, 2008, Turner filed a Request for Mediation with the American Arbitration Association in accordance with Section 4.5.2 of the Contract. A true and correct copy of the Request for Mediation is attached hereto as Exhibit F.

### Count I
### (Breach of Contract)

24.  Turner adopts and re-alleges paragraphs 1-23 by and for paragraph 24 as if more fully alleged herein.

25.  Turner duly and fully performed all of the obligations required of it under the Contract and Change Orders.

26.  Turner completed all of the work required of it by CCIL as of January 30, 2007, thereby performing all of its obligations under the Contract and Change Orders, and thereby making CCIL indebted to Turner for payment on the Contract and Change Orders.

27.  After allowing all just due credits, the total amount due Turner for the Contract Work and Extra Work supplied to the Project, including interest under § 7.2 calculated through May 13, 2008 for late progress payments, is Two Hundred Twenty Three Thousand Eight Hundred Seventy Eight Dollars and Fifty Eight Cents ($223,878.58), plus interest at the rate of 6% per annum on the $60,000 final payment from and after October 29, 2007.

28.  Despite repeated requests and demands for payment by Turner, CCIL has

5

failed, refused and/or neglected to pay said sums to Turner.

29.     The aforesaid vexatious and unreasonable delay on the part of CCIL also entitles Turner to prejudgment interest pursuant to 815 ILCS 205/2.

**For Relief,** Turner Construction Company, requests judgment against Defendant, Chicago Christian Industrial League, in the amount of Two Hundred Twenty Three Thousand Eight Hundred Seventy Eight Dollars and Fifty Eight Cents ($223,878.58), plus interest at the rate of 6% per annum on the $60,000 final payment from and after October 29, 2007, the costs associated with this action, including Turner's reasonable attorneys' fees and any and all further relief as is appropriate.

### COUNT II
### (Alternative – Quantum Meruit)

30.     Turner repeats and realleges paragraphs 6 through 9 of Count I, as though fully set forth herein as paragraph 30 of this Count II.

31.     That pleading in the alternative, CCIL directed Turner to provide certain material and labor to the Project.

32.     That CCIL has received a benefit from the reasonable value of the materials, labor and fixtures provided by Turner.

33.     That as a result of the labor and materials supplied by Turner for CCIL, CCIL received a benefit from Turner in the form of improvements to the Property, which allowed CCIL to benefit from an increase in value to the Property.

34.     That CCIL has been unjustly enriched by having failed and/or refused to pay for the reasonable value of the labor and materials Turner furnished to the Project and the increased value of the Property as a result thereof.

6

35.    That the amount of CCIL's unjust enrichment is an amount in excess of this Court's jurisdictional limits.

**For Relief**, Plaintiff, Turner Construction Company, requests judgment be entered in its favor and against Defendant, Chicago Christian Industrial League, in an amount in excess of this Court's jurisdictional limits, to be determined at the time of trial, including all allowable statutory interest, all costs and fees associated with this action, and for such other and further relief as is appropriate.

**TURNER CONSTRUCTION
COMPANY**

By: _____
One of Its Attorneys

Todd A. Rowden, Esq.
James L. Oakley, Esq.
Thompson Coburn LLP d/b/a
Thompson Coburn Fagel Haber
55 E. Monroe Street, Suite 4000
Chicago, Illinois 60603
(312) 346-7500

7

08CV3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC

# ▰AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor
### where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the   3d   day of December in the year of 2004
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*

Chicago Christian Industrial League Properties, Inc., an Illinois not-for-profit corporation
c/o Chicago Christian Industrial League
123 South Green Street
Chicago, Illinois 60607
Attn: Executive Director

and the Contractor:
*(Name, address and other information)*

Turner Construction Company
c/o Stephen W. Fort, Vice President and General Manager
55 E. Monroe Street
Chicago, IL 60603

The Project is:
*(Name and location)*

Chicago Christian Industrial Campus Relocation Project
2750 W. Roosevelt Road, Chicago, Illinois -- 3.6 Acres bounded by West Roosevelt,
South Fairfield, California and elevated railway embankment

The Architect is:
*(Name, address and other information)*

Krueck & Sexton
221 West Eric
Chicago, Illinois 60610-3125

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

AIA Document A101™ – 1997, Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:28 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                        (2675568633)

1

EXHIBIT
A

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of the Contractor's Bid Qualifications, this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement (such as the Third Party Agreements) and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein.  The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.  An enumeration of the Contract Documents, other than Modifications, appears in Article 8.  Capitalized terms used in this Agreement which are defined in the General Conditions shall have the meanings ascribed to such terms in the General Conditions.  Capitalized terms used in the General Conditions which are defined in this Agreement shall have the meanings ascribed to such terms in this Agreement.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.  All services performed by Contractor under this Agreement shall be performed in the capacity of independent contractor and not as agent of Owner.

## ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**§ 3.1** *The date of commencement of the Work shall be the date upon which Contractor has received all of the following: a Notice to Proceed from the Owner or Architect, the Building Permit for the Project, and notice of Commonwealth Edison's removal of the power lines (the "Commencement Date").*  *Contractor acknowledges that time is of the essence in the performance of its obligations under the Contract Documents.*

*(Paragraph deleted)*

**§ 3.2** The Contract Time shall be measured from the Commencement Date.

**§ 3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than 456 days from the date of commencement.

## ARTICLE 4   CONTRACT SUM

**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Fifteen Million Five Hundred Thirty-Five Thousand Dollars ($15,535,000.00), subject to additions and deductions as provided in the Contract Documents.

**§ 4.2** *The Contract Sum is based upon those changes to the Contract Documents that are described in Exhibit A.*

**§ 4.3** Unit prices are set forth on Exhibit C:

**§ 4.4** Exhibit A shows changes that Owner has agreed upon.  All of the items listed in Exhibit A as changes to the original contract sum shall be described in more detail by Owner's Architect in Bulletin 3 by December 15, 2004.  Thereafter, Contractor shall provide more detailed pricing of such items and, if appropriate, adjust the prices shown on Exhibit A, provided, however, that notwithstanding such adjustments, the Contract Sum shall not increase as a result of Bulletin 3.

Bulletin 3 shall include only those items listed on Exhibit A.  Further changes or clarification by the Architect of the Contract Documents may be made in other bulletins.

**§ 4.5** With regard to Items I and J of Exhibit A and in Footnote A of Exhibit A, Owner's opportunity to add back to the contract those items described in Paragraphs I and J of Exhibit A at the prices stated on Exhibit A must be exercised on or prior to May 3 2004 in writing.  After that date, Owner may choose to have the work described in Items I and J done, but Contractor shall have the opportunity of setting new prices for such work.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                          (2675568633)

2

§ 4.6 Unless this Agreement is executed by Owner on or prior to December 3, 2004, Contractor may enter into agreements with Subcontractors whereby Subcontractors may be entitled to adjustments in their Subcontract price in the event of escalation in cost of certain materials, equipment, energy or goods, and if Contractor becomes obligated to provide any such adjustments to its Subcontractors, Contractor shall be entitled to a corresponding increase for such costs in its Contract Sum.

## ARTICLE 5  PAYMENTS
### § 5.1 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month. The procedures for application and certification of monthly Applications for Payment are described below in this Article 5, including the following:

§ 5.1.2.1 Within the seven (7) days before last day of each month, the Contractor shall submit to the Architect a Pencil Draft of the proposed itemized Application for Payment for Work completed in that month, projected through the end of that month, in accordance with the Schedule of Values. The Pencil Draft shall be complete in every respect and shall be accompanied by supporting data as the Owner or Architect may require.

§ 5.1.2.2 Within three (3) business days after the Architect's receipt of the Pencil Draft, the Architect shall notify the Contractor of any adjustments required to be made to the Pencil Draft.

§ 5.1.2.3 After the Architect's notification to the Contractor under Subparagraph 5.1.2.2, the Contractor shall submit a final Application for Payment. The final Application for Payment shall be notarized and supported by data substantiating the Contractor's right to payment as the Owner or Architect may require, and reflecting retainage withheld.

§ 5.1.3 The Owner shall make payment to the Contractor pursuant to a final (as opposed to a pencil draft) Application for Payment not later than the fifteenth (15th) business day after receipt by Owner of a Certificate of Payment, signed by the Architect, approving such Application for Payment within (3) three days; provided, however, that the Contractor shall have fulfilled all conditions precedent to payment set forth in the Contract Documents, including, without limitation, compliance with the requirements of the Third Party Agreements for the disbursement of funds pursuant to such Agreements, provided, however, that the above time limitations shall not apply to the first draw, although Owner shall take all commercially reasonable steps to have the first draw paid as soon as practicable.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of  ten percent  (10 %).

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                         (2675558633)

Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of the General Conditions;

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for incorporation in the completed construction within forty-five (45) days; provided, however, that the value of such stored equipment and material does not exceed Five Hundred Thousand Dollars ($500,000.00).  (If approved in advance by the Owner, such equipment and material may be suitably stored off the site at a location agreed upon in writing), less retainage of ten percent (10%);

.3    Subtract the aggregate of previous payments made by the Owner; and

.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of the General Conditions.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
(Section 9.8.5 of the General Condtions requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)

.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of the General Conditions

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows: Not applicable.
(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of the General Conditions, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment; ; provided, however, that the Contractor shall have fulfilled all conditions precedent to final payment set forth in the Contract Documents, including, without limitation, compliance with the requirements of the Third Party Agreements for the disbursement of funds pursuant to such Agreements.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2675560633)

### ARTICLE 6  TERMINATION OR SUSPENSION
§ 6.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

§ 6.2 The Work may be suspended by the Owner as provided in Article 14 of the General Conditions

### ARTICLE 7  MISCELLANEOUS PROVISIONS
§ 7.1 Where reference is made in this Agreement to a provision of the General Conditions  or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

*§ 7.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the "prime rate" or its equivalent charged from time to time by the Bank of America in Chicago, Illinois..*

*(Paragraph deleted)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 7.3 The name, address and phone number of Owner's representative, together with the name of the person who may (if the Owner's representative is an entity)  shall be communicated by Owner to Contractor in writing within a reasonable time after the execution hereof, and may be changed by written notice from Owner to Contractor.
*(Name, address and other information)*

§ 7.4 The Contractor's representative is:
*(Name, address and other information)*

Stephen W. Fort
Vice President and General Manager
Turner Construction Company
55 East Monroe St.
Chicago, IL  60603

§ 7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 7.6 Other provisions:

§ 7.6.1 The Contract Documents constitute the entire Agreement between Owner and Contractor. No provision of the Contract Documents shall be changed or modified, nor shall any the Contract Documents be released, in whole or in part, except by an agreement in writing signed by the party against whom the change, modification or release is claimed or sought to be enforced, nor shall any waiver of any of the conditions or provisions of the Contract Documents or of any of the rights of either of the parties thereunder be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given, consented to or suffered the waiver. In the event any written change or modification is made as aforesaid, Owner's rights and remedies under the Contract Documents and under any bond given to Owner, in accordance with the requirements of the Contract Documents, shall in no

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1986, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                                          (2675568633)

way be prejudiced or impaired, and the bond shall apply and be in full force and effect with respect to the Contract Documents as so changed and modified.

§ 7.6.2  If any of the provisions of the Contract Documents shall be held to be invalid, such facts shall not invalidate the whole Contract Documents or any provisions thereof other than those held invalid, but the Contract Documents shall be construed as if not containing the provisions so held to be invalid, and the rights and obligations of the parties shall be enforced accordingly.

§ 7.6.3  The Contractor acknowledges that Owner is party to the following agreements, each of which is dated as of May 1, 2004 and each of which bears upon the Project, including the financing thereof:

    (a)    Agreement For Sale and Redevelopment of Land among the City of Chicago (the "City"), the Owner and the Owner's affiliate, Chicago Christian Industrial League ("CCIL") (the "Land RDA");

    (b)    Redevelopment Agreement among the City, the Owner and CCIL (the "TIF RDA"); and

    (c)    Empowerment Zone Grant Agreement between the City and the Owner (the "EZ Agreement").

The above agreements are collectively referred to in the Contract Documents as the "Third Party Agreements" and Contractor has received a true, complete and legible copy of each of the Agreements comprising the Third Party Agreements. The Owner is required to comply with the Third-Party Agreements and a failure to comply may affect the availability of funding to pay the costs of the Work or may otherwise adversely affect the Project. Accordingly, the Contractor shall (i) cooperate with the Owner (and shall cause all Subcontractors and others for whom it has liability under the Contract Documents to cooperate with Owner) in connection with the Owner's performance and compliance with the requirements of the Third-Party Agreements, and (ii) not do or fail to do (and will not permit others for whom it has liability under the Contract Documents to do or fail to do) any act which if done or not done, as the case may be, would constitute a violation of any of the Third-Party Agreements. Further, the Contractor shall comply, and shall cause each of the said Subcontractors and all others for whom it has liability under the Contract Documents to comply, with the terms of the Third Party Agreements that bear upon the Work. Contractor shall also cooperate with Owner, and shall cause each of the said Subcontractors and all others for whom it has liability under the Contract Documents to cooperate with Owner, so that Owner may satisfy its obligations under various financing agreements with Owner's lenders for the Project (collectively, "Lender" or "Owner's Lender"). Contractor's obligations under the Third Party Agreements are limited to those obligations set forth in Paragraph 15.1.2 of the A201 General Conditions of the Contract for Construction as made part of this Agreement. Contractor shall sign those documents containing commercially reasonable terms that are reasonably requested by parties to the Third Party Agreements which relate to collateral or other assignments of this Agreement to such parties in the event of a default by Owner in its obligations to such third parties.

§ 7.6.3.1  Contractor's cooperation, as described in Section 7.6.3 above, includes, without limitation, the following:

    (a)    Contractor shall make the site of the Work available at reasonable times for inspection by representatives of the City, the State of Illinois (the "State") and any agency, division or department of the City or the State. Contractor shall also make the site of the Work available at reasonable times for inspection by the Owner's Lender or the Lender's representatives.

    (b)    Contractor shall consent to and execute all documents reasonably requested by the Owner in connection with the assignment of any of the Contract Documents, including this Agreement and the Drawings and Specifications, to the Lender for collateral purposes. Such assignment shall provide that the Contractor agrees that, notwithstanding a default by the Owner under the provisions of this Agreement that would give the Contractor the right to terminate this Agreement, the Contractor will continue to perform its obligations hereunder (on the same terms and conditions as set forth herein) for and on account of the Lender if the Lender shall agree to pay the Contractor all amounts due and owing the Contractor under the Agreement and shall agree in writing to perform all obligations of the Owner hereunder accruing from and after the date of the default by the Owner.

    (c)    Contractor shall promptly furnish the Owner with information, documents, and materials that the Owner may reasonably request from time to time in order to comply with the requirements of the Lender or of the Third Party Agreements, provided that such requests are not considered an extensive administrative burden.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                    (2675588633)

§ 7.6.3.2 Additional provisions concerning the Third Party Agreements are set forth in Article 15 of the General Conditions.

§ 7.6.4 In the event of any dispute between Owner and Contractor, Contractor shall expeditiously proceed with the performance of the Work with reservation of all rights and remedies it may have at law or in equity, provided that Owner has made payments to Contractor of sums not in dispute.

§ 7.6.5 Contractor shall perform or cause to be performed all of the Work, including, without limitation, the provision of any and all materials and equipment furnished pursuant to the Contract Documents, in strict compliance with all applicable local, State and federal laws, statutes, acts, ordinances, rules, regulations, codes, decrees, executive orders, permits, licenses, authorizations, directions, and requirements of any and all governmental or quasi-governmental authorities having jurisdiction over the Project (including, for purposes hereof, any local board of fire underwriters) (collectively, "Legal Requirements"). Additionally, Contractor shall, at its expense, give all notices required by any of the Legal Requirements, unless the Contract Documents provide for the Owner, or other party, to provide such notices. Further, Contractor shall take and observe all necessary measures and precautions for the safety and protection of all property and persons in connection with the performance of the Work, including, without limitation, providing and maintaining barricades, guard rails, fences, warning signs, warning lights, etc., for the protection of workmen and the public. These "Legal Requirements" are limited to the laws that pertain to the means and methods of performing the field work. Contractor is not a designer and shall not be subject to design laws.

§ 7.6.6 The Contractor represents and warrants the following to the Owner (in addition to any other representations and warranties contained in the Contract Documents), as a material inducement to the Owner to execute this Agreement, which representations and warranties shall survive the execution and delivery of this Agreement, any termination of this Agreement, and the final completion of the Work:

§ 7.6.6.1 The Contractor is financially solvent, able to pay all debts as they mature, and possessed of sufficient working capital to complete the Work and perform all obligations hereunder.

§ 7.6.6.2 The Contractor is able to furnish the plans, tools, materials, supplies, equipment, and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so.

§ 7.6.6.3 The Contractor is authorized to do business in the State and is properly licensed by all necessary governmental and public and quasi-public authorities having jurisdiction over the Contractor and over the Work and the Project.

§ 7.6.6.4 That the individual executing this Agreement has the full power and authority to execute this Agreement on behalf of Contractor and to bind Contractor and its partners to all of the covenants, obligations, agreements and duties of Contractor herein contained without the necessity of any other signatory to this Agreement, and that any actions taken hereunder by said officer or any partner of Contractor shall bind the Contractor in all respects.

§ 7.6.6.5 The execution and delivery of this Agreement by Contractor and the consummation of the transactions contemplated hereby will not conflict with or result in a breach of, or constitute a default under, any of the terms, conditions or provisions OF any statute, judgment, order, injunction, decree, regulation or ruling of any court or governmental authority to which Contractor is subject, or require the consent or approval of any person, or materially adversely conflict with or result in a breach of, or constitute a default under, any of the terms, conditions or provisions of any agreement, contract or commitment to which Contractor is a party.

§ 7.6.6.6 Contractor is not party to any legal, administrative, arbitration, investigative or other proceeding or controversy pending, or, to the best of Contractor's knowledge, threatened, which would adversely affect Contractor's ability to perform under this Agreement.

§ 7.6.6.7 The Contractor possesses a high level of experience and expertise in the business administration, construction, construction management, and superintendence of projects of the size, complexity, and nature of the Project.

§ 7.6.7 This Agreement has been negotiated and entered into by Owner and Contractor with the advice of independent counsel and shall not be construed against one party or the other based on which party drafted any portion of the Contract.

§ 7.6.8 The Contractor shall not assign this Contract or any of its obligations hereunder. The Contractor shall not assign, pledge or hypothecate any amount payable hereunder without the prior written consent of the Owner.

AIA Document A101™ – 1987. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                          (2575586633)

§7.6.9 All notices required or permitted under the Contract Documents shall be in writing (unless otherwise specifically permitted) and all notices shall be addressed to Owner or Contractor as follows:

| | |
|---|---|
| **If to Owner:** | Chicago Christian Industrial League<br>123 South Green Street<br>Chicago, Illinois 60607<br>Attn:   Judy McIntyre |
| **With copy to:** | Frederick M. Kaplan, Esq.<br>Krasnow Saunders Cornblath, LLP<br>500 North Dearborn Street, 2nd Floor<br>Chicago, Illinois 60610 |
| **If to Owners Rep:** | To be provided by Ower per paragraph 7.3 |
| **If to Contractor:** | Turner Construction Company<br>c/o Stephen W. Fort<br>55 East Monroe Street<br>Chicago, Illinois 60603 |
| **If to Architect:** | Knueck & Sexton<br>221 West Erie Street<br>Chicago, Illinois 60610-3125 |

Communications between the Contractor and the Owner, other than those relating to, declaring or threatening defaults, shall, until further notice from Owner, be directed in triplicate to Owner's Representative.

A notice complying with the preceding provisions of this Section 7.6.8 shall be deemed effective (a) upon delivery (or upon refusal to accept delivery), if personally delivered on any day that is a business day (as hereinafter defined), (b) upon completion of the transmission if sent via facsimile on business days (provided the notice is also sent that same day by any other method described in this grammatical paragraph), (c) upon the first business day following deposit with a national overnight courier service, fee prepaid, or (d) upon the third business days following deposit in the United States mail, certified or registered mail, postage prepaid, return receipt requested.   Contractor acknowledges that any notice required to be delivered by Owner hereunder may be delivered by any authorized representative of Owner. The term "business day" shall mean any day other than a Saturday, Sunday or holiday on which federally chartered banks in the City are closed for business.

§7.6.10 Contractor's first Application for Payment shall include the premiums all insurance, Subguard or bonds.

§7.7 Should the progress of the Work encounter delay or disruption due to a general shortage of materials, equipment, energy or goods in the marketplace which could not have been reasonably foreseen and an alternative developed the project schedule, completion dates and Contract Sum shall be adjusted to reflect the cost and schedule consequences.

## ARTICLE 8   ENUMERATION OF CONTRACT DOCUMENTS
§ 8.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 8.1.1 The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997, as modified by Contractor's Bid Qualifications dated June 24, 2004, and the Project Manual dated _____, 2004.  In the event of any disagreement between the terms of the foregoing, the terms of Exhibit A shall prevail.

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997, as modified by Owner and Contractor.

§ 8.1.3 The Plans, Drawings and Specifications identified on Exhibit B.

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                          (2675566833)

8

§ 8.1.4 The Addenda, if any, are Bulletin 1 and Bulletin 2.

*(Paragraphs deleted)*

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

§ 8.1.5 Other documents, if any, forming part of the Contract Documents are as follows: Contractor's Bid Qualifications dated June 24, 2004

1.  If CCII, chooses to utilize a Performance and Payment Bond, it will result in an ADD of $9.25 per thousand dollars of Contract Sum (approximately $160,000).
2.  The cost of removal of all obstructions not shown on the plans has been excluded. If obstructions are encountered they will be removed on a time and material basis.
3.  Alternate #9 – Price includes the credit to eliminate the construction management and submittal requirements to prove that the LEED requirements are met.
4.  Costs related to the excavation, transportation, disposal and reporting (i.e. submission to Owner of load tickets and manifests) for 13,300 cubic yards of Special Waste are included in the Contract Sum per Addendum no. 3 dated June 17, 2004. No costs are included relating to (i) the assessment, monitoring, testing, sampling, manifestation, reporting, and certification of such Special Waste or (ii) the assessment or remediation of hazardous, contaminated and/or (ACM) asbestos containing material. Excavation, transportation, or disposal of any additional Special Waste found on the site shall be done, upon the written advance approval of Owner, for the Unit Prices set forth in the Contract Documents.
5.  Costs to provide devices designated by the symbol "S" in hexagon on the electrical drawings are excluded. This device is not clearly defined by the documents – more clarification is needed.
6.  Pre-cast terrazzo stair treads and/or landings are excluded. The drawings do not clearly identify this condition – more clarification is needed. We included CIP concrete stair treads.
7.  The hopper and chute pipe method for placement of Caisson concrete per Note 9/S101 is excluded. Concrete placement for caissons will utilize the free fall method.
8.  Intumescent paint is generally limited to the exposed beams located in the Fairfield and California wings.
9.  Unless this Contract is executed by Owner on or prior to December 3, 2004, the Contractor and its subcontractors shall be entitled to adjustments in the bid amount and time in the event of escalation in cost and/or delay of certain materials, equipment, energy or good until execution of the Agreement.

§ 8.1.6 Contractor's obligations relative to the Third Party Agreements referred to herein shall be limited to those obligations set forth in Paragraph 15.1.2 of the A201 General Conditions of the Contract for Construction as made part of this Agreement.

*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2675568633)

9

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

**OWNER** *(Signature)*

Chicago Christian Industrial League Properties, Inc., an Illinois not-for-profit corporation

By: *Judith L. McIntire*
Print Name: Judith L. McIntire
Title: Executive Director

*(Printed name and title)*

**CONTRACTOR** *(Signature)*

Turner Construction Company

By: _____
Stephen W. Fort, Vice President and
General Manager    MJK

*(Printed name and title)*

AIA Document A161™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1980, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:31:29 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                           (2675568833)

EXHIBIT A

**Contract Amount Structure**

| | | | |
|---|---|---|---|
| A. | Turner Base Bid | | $18,499,000 |
| B. | Deduct Soil Remediation | Included | $0 |
| C. | Deduct Accepted Alternates | | ($70,316) |
| | #2 - Change the exterior wall assembly to (2) layers of Type "X" 1/2" gypsum wall board on the exterior side and one layer on the interior face | ($40,000) | |
| | #3 - Provide 12" x 12" ceramic tile with a 4" x 4" ceramic base in lieu of all areas shown as terrazzo | ($18,716) | |
| | #13 - Use (2) coat paint system in lieu of (3) coat paint system on the corrugated metal wall panels (20 year warranty applicable) | ($11,600) | |
| D. | Add Bulletin No. 1 | | $301,000 |
| E. | Add Bulletin No. 2 | | ($807,000) |
| F. | Builders Risk | Included | $0 |
| | **Total Contract Amount Prior to VE** | | **$17,922,684** |

| | | |
|---|---|---|
| G. | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | (662,912) |

| | | Guaranteed VE |
|---|---|---|
| 016 | Manual gate in lieu of electric operation | (3,000) |
| 017 | Painted finish in lieu of powder coated finish on all ornamental fence | (13,340) |
| 019 | Eliminate playground equipment and surfacing - grass play area by Owner (Over excavation and stone backfill under play surface area is not included) | w/ Bulletin No. 2 |
| 024 | Provide heavy-duty asphalt drives in lieu of concrete drives into Parking lot areas at (4) locations; concrete at Loading Dock drive to remain (May not be allowed due to City of Chicago code requirements - to be verified by Architect) (Removable concrete pavers at fountain NIC per Bulletin No. 2) | (11,800) |
| 025 | Eliminate 50% of the 3 1/2" (NWC) concrete fill at roof level (Per notes on Dwgs. S216 thru S218 - Deck S2, S5, S7, S8) | (28,000) |
| 028 | Eliminate brick veneer and concrete retaining wall along Roosevelt Road; provide bermed area up to building; replace wall with ornamental fence (18" high) to match fence at adjacent planter area | (21,000) |
| 030 | Provide ornamental fence in lieu of brick screen wall at Playground along California Avenue | (11,600) |
| 033 | Rolled shape sections in lieu of structural tubes (bracing, etc.) | (7,500) |
| 034 | Eliminate additional beam line along Col. line 1 and 6 (Dwg. S206) | (10,000) |
| 035 | Change from 5/16" bent plate to gauge metal at deck edge conditions (D6.1 and 16/S104) (12 ga. steel minimum to be used) | (15,000) |
| 036 | Provide 2" dia. picket rail in lieu of perforated baluster infill at Stair railings and delete abrasive nosings (Design to be provided at shop drawings submission) | (34,400) |
| 037 | Eliminate FRP panels at Kitchen walls - provide epoxy paint finish (Architect to verify that this will meet City of Chicago Health Department requirements) | (9,000) |

040  Eliminate millwork in Conference Room 302
(Cannot accept w/ Program Reduction Item #0111)
(4,000)

042  Eliminate mitered edge on cabinet doors and use 4" wire pull
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(4,600)

043  Delete front reception desk millwork - provide as a furniture item from
FF&E budget
(24,000)

044a  Eliminate the perforated metal screen wall between Col. J and Col K and
associated support framing (Ref. Dwg. A3.05)
(19,810)

045  Change corrugated metal wall panels from alloy aluminum to 24 ga.
steel with kynar coat finish
(Cannot accept w/ Alternate #13)  (Metal panel to be coil coated  with 20-year finish warranty)
(23,000)

047  Provide hot asphalt applied tapered insulation in lieu of cold adhesive
(Tapered insulation to be polyisocyanurate - styrofoam insulation not applicable for this condition)
(2,280)

048  Provide 45 mil TPO membrane in lieu of 60 mil TPO membrane
(15 year warranty is applicable)
(3,040)

049  Provide 1/8" per 1'-0 slope in lieu of 1/4" per 1'-0 slope
(14,000)

050  Change door finish on O.H. doors from powder coat to baked enamel - grey
(3,460)

052  Provide standard material door cores in lieu of particle board cores
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(15,712)

057  Replace 30% of the curtainwall area with metal panel on light guage stud back-up
on North elevation between column lines F and K (approx. 1,300 sf/ca)
(12,000)

58a  Replace 30% of the curtainwall area with metal panel on light guage stud back-up
on North elevation between column lines K and M (approx. 450 sf/ca)
(4,760)

058b  Replace 30% of the curtainwall areas with metal panel on light guage back-up
on North elevation wall between column lines A and F (approx. 500 sf/ca)
(4,760)

*Gypsum Board Assemblies and Acoustical Panel Ceilings*

059  Change interior drywall from specified fire code "C" to type "X" drywall
(Based on 5/8" Type X gypsum board)
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(2,000)

060  Change type C interior partitions from specified 22 ga stud at 16" o.c.
to 25 ga. Stud at 24" o.c.
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(6,570)

061a  Eliminate 50% of the continuous drywall soffit at exterior walls; extend
ACT ceiling to glass; drop metal panel spandrel; provide light guage angled
support back to beam (concealed above ceiling)
Eliminate approximately 30% of drywall soffit along column lines 1 and 6 and extend acoustic ceiling tile to soffit,
eliminating the need for additional splitters above the finished ceiling level due to open edge conditions.
Sectional profile of soffit to be simplified.
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(27,000)

062  Tile T-6:  Provide 12 x 12 Diamante paver tile in lieu of specified 4x4 Del
Diamante tile at all Toilet Room wainscot surfaces
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(6,000)

063  Delete crack-suppression membrane material under paver tile
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(15,000)

065  Provide standard glue-down carpet pad in lieu of integral pad for Carpet types
CPT-2 and CPT-3
(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)
(This credit assumes Shaw, Inc. and its subsidiaries to be an acceptable manufacturer of all floor finishes)
(17,000)

066  Replace linoleum sheet goods with VCT
(Based on Armstrong or Del Tile manufacturers)
(18,000)

(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions)

| | | |
|---|---|---|
| 069 | Use baked enamel on steel in lieu of plastic toilet compartments<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions)<br>(1 year warranty on material, parts, and labor) | (15,000) |

*Maintenance Equipment Supports, Projection Screens, Loading Dock Equip.*
*Roller Shades*

| 070 | Provide manual projection screens in lieu of specified electric operation<br>(Manufacturer to match original specified)<br>(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions) | (25,000) |
|---|---|---|

| 071 | Use alternate manufacturer(s) for Convection oven, Gas Range, Tilting Kettle<br>and Refrigerators - target VE<br>(List of proposed equipment will be provided at shop drawing phase - most economical selection will be used to meet<br>Architects's design intent)<br>(Cannot accept with Project Alternate #11) | (8,000) |
|---|---|---|

| 073 | Provide fluorescent luminous ceiling in lieu of stainless island ceiling<br>with incandescent downlights | (8,400) |
|---|---|---|
| 076 | Provide in-car tandems in lieu of combination hall lantern/hall position<br>indicators; directional lantern and chime is located on jamb of door<br>and travels w/ cab in lieu of separate lantern located above door | (5,100) |
| 077 | Provide baked enamel aluminum hoistway entrances in lieu of stainless steel | (3,100) |

| 078 | Delete sump pumps in elevator pits; use high water alarm | w/ Bulletin No. 1 |
|---|---|---|
| 079 | Use copper type M in lieu of specified Schedule 40 galvanized pipe w/<br>screwed fittings for all waste and vent 2 1/2" dia. And smaller | (13,000) |
| 081 | Use standard deck faucets in lieu of specified battery-operated sensor faucets<br>with thermostatic mixing valves for Lavatory types No. 1 and No. 2<br>(Based on Symmons S-60-H push metering faucets or approved equal)<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (9,000) |
| 082 | Use standard 1.0 flush valves in lieu of specified Sloan battery operated<br>flushometers at (16) urinals<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (3,000) |
| 085 | Allow alternate manufacturers for plumbing fixtures and equipment<br>in lieu of specified products - target VE<br>(List of proposed equipment will be provided at shop drawing phase - most economical selection will be used to meet<br>Architects's design intent)<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (20,000) |

| 086 | Extend acoustical ceiling to exterior wall(s) and eliminate the increased sprinkler<br>coverage above and below the ceiling<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (8,500) |
|---|---|---|

| 087 | Convert 650 lf of linear diffuser to 150 standard registers<br>(Based upon a Titus Architectural Ceiling Diffuser - Model OMNI)<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (5,000) |
|---|---|---|
| 088 | Centralize return air (RA) system thru the elimination of (36) transfer elbows;<br>add grille in door to accommodate air flow<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (2,000) |
| 089 | Eliminate (41) sound elbows on VAV boxes (CCJM to confirm #)<br>(Engineer of record to confirm exact locations - credit may diminish based on actual quantity)<br>(Cannot accept full value with Accepted Project Alternate #6,7,8 and Program Reductions) | (2,000) |
| 92b | Combine residential fan coil units back to back into one unit to serve two<br>adjacent residential units<br>(Based upon International Environmental Concealed Modular Unit - Model MPY) | (30,000) |

(Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)

094  Eliminate sound boots on RA return-air grilles in Roosevelt wing                                              (2,300)
     (Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)

096  Modify DDC controls and add local thermostat control on Toilet exhaust fans                                  (2,800)
     (Based on Kele electronic time clock - Model DIGI-42)

098  Change fan-powered VAV boxes to standard VAV for box #11 and #44                                             (1,100)
     (Based on Titus Model DESV - DDC control pressure independent)
     (First Floor - Roosevelt Wing - Open office)

099  Use EMT conduit in lieu of IMC conduit                                                                      (10,000)

0100  Eliminate 30% of parking lot light poles                                                                   (29,500)
      (Architect to identify exact fixtures to be removed from scope of work)

0100a  Eliminate (5) five type "EF" fixtures                                                                     (10,500)

0101  Interior light fixture package - target VE w/ similar fixtures                                             (20,000)
      (Fixture submittal to be provided upon final selection and award of Electrical contractor)
      (Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)

0102  Security system cameras to be fixed position in lieu of PTZ operation                                      (28,500)

0104  Provide low voltage cable in lieu of fiber optic cable for Security system                                 (1,500)
      (Most of the credit included in savings of item #0102)

0105  Fixture type M1 (exterior - change from aluminum to steel                                                   (3,000)
      (Cannot accept full value with Accepted Project Alternates #6,7,8 and Program Reductions)

H.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Included above

I.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                     | (1,013,249) |

    Alt.  #6 - Omit the interior build-out of the Second Floor of the Roosevelt wing                           (438,090)

    Alt.  #7 - Omit the interior build-out of the Fourth Floor of the California wing                           (229,364)

    Alt.  #8 - Omit the interior build-out of the Fourth Floor of the Fairfield wing                            (344,795)

J.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                       | (938,059) |

    0110  Omit the interior build-out of the 3rd floor of the California wing                                    (281,579)

    0111  Omit the interior build-out of the 3rd floor of the Roosevelt wing                                     (349,425)

    0112  Omit the interior build-out of the 3rd floor of the Fairfield wing                                     (307,050)

K.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                       | 181,530 |

    Add back value Accepted VE items above at reduced value which overlap Accepted Alternates and Program Reductions       181,530
    (Items 042, 052, 059, 060, 061a, 062, 083, 085, 095, 098, 069, 070, 081, 082, 085, 086, 087, 088, 089, 092b, 094, 0101, 0104, 0105)

L.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                       | 65,000 |

    Escalation                                                                                                  85,000

    | FINAL CONTRACT AMOUNT |                                                                    | $15,535,800 |

### Notes:

A  The work described in Deduct Alternates and Program Reductions (Sections I and J) will be done pursuant to the plans and
   specifications for the prices presented above up until a period of 6 months from the date Owner's Notice to Proceed (defined
   in paragraph 4.5 of the Agreement. Should these alternates be exercised as Add Alternates after the 6 month expiration
   period (defined in paragraph 4.5 of the Agreement), a re-price will be required.

B  Owner agrees to modification of Contract Documents based upon scope defined above and as made part of this Agreement

Chicago Christian Industrial League                    Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 1 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

Drawing List:

| Drawing # | Drawing Title |
|-----------|---------------|
| Cover | Cover Sheet/General Building Requirements Code Matrix |
| N/A | Sheet Index dated 6/11/04 |
| N/A | General Building Requirements Code Matrix |
| N/A | Alta/ACSM Land Title Survey by Professionals Associated Survey dated 4/27/02 |
| A-0.01 | Project Data dated 8/6/04 |
| A-0.02 | Notes dated 5/25/04 |
| A-0.03 | Specifications Summary dated 5/25/04 |
| A-0.04 | Occupancy Diagrams dated 8/6/04 |
| A-0.05 | Exiting & Fire Resistance Rating Diagrams – Level 1 dated 5/25/04 |
| A-0.06 | Exiting & Fire Resistance Rating Diagrams – Level 2 dated 5/25/04 |
| A-0.07 | Exiting & Fire Resistance Rating Diagrams – Level 3 dated 5/25/04 |
| A-0.08 | Exiting & Fire Resistance Rating Diagrams – Level 4 dated 5/25/04 |
| A-0.09 | Exiting & Fire Resistance Rating Diagrams – Penthouse dated 5/25/04 |
| A-0.10 | Fire-Proofing Diagrams dated 9/10/04 |
| A-0.11 | Partition Details dated 8/6/04 |
| A-0.12 | Partition Details dated 8/6/04 |
| A-0.13 | Accessibility Diagrams Residential Units dated 5/25/04 |
| A-0.14 | Accessibility Diagrams Residential Units dated 5/25/04 |
| A-0.15 | Accessibility Diagrams Residential Bathrooms dated 5/25/04 |
| A-0.16 | Accessibility Diagrams dated 5/25/04 |
| A-1.01 | Master Site Plan dated 8/6/04 |
| EX-1.01 | Excavation Plan dated 5/25/04 |
| C-1.01 | Demolition Plan dated 5/25/04 |
| C-1.02 | Dimension Plan dated 5/25/04 |
| C-1.03 | Utilities Plan dated 8/6/04 |
| C-1.04 | Grading Plan dated 5/25/04 |
| C-1.05 | Details dated 5/25/04 |
| C-1.06 | Details dated 5/25/04 |
| L-01.1 | Master Plan dated 9/9/04 |
| L-02.1 | Planting Plan dated 9/9/04 |
| L-02.2 | Planting Plan dated 9/9/04 |
| L-03.1 | Layout dated 9/9/04 |
| L-03.2 | Layout dated 9/9/04 |
| L-03.3 | Fountain Layout dated 9/9/04 |
| L-03.4 | Roof Top Garden dated 9/9/04 |
| L-03.5 | Playground Layout dated 9/9/04 |
| L-03.6 | Dimension Plan dated 9/9/04 (Drawing Not Listed on Sheet Index) |

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| L-04.1 | Planting Details dated 9/9/04 |
| L-04.2 | Details dated 9/9/04 |
| L-04.3 | Details dated 9/9/04 |
| L-05.1 | Irrigation Layout dated 9/9/04 |
| L-06.1 | Fountain Plan Section Detail dated 9/9/04 |
| L-06.2 | Piping Plans dated 9/9/04 |
| L-06.3 | Equipment Details dated 9/9/04 |
| A-1.02 | Site Details dated 5/25/04 |
| A-1.03 | Site Details dated 5/25/04 |
| A-1.04 | First Floor Plan – Overall dated 5/25/04 |
| A-1.05 | Second Floor Plan – Overall dated 5/25/04 |
| A-1.06 | Third Floor Plan – Overall dated 5/25/04 |
| A-1.07 | Fourth Floor Plan – Overall dated 5/25/04 |
| A-1.08 | Mechanical Floor Plan dated 5/25/04 |
| A-1.09 | Roof Plan – Overall dated 6/16/04 |
| A-1.10 | First Floor Plan – Roosevelt Wing dated 8/6/04 |
| A-1.11 | First Floor Plan – California Wing dated 8/6/04 |
| A-1.12 | First Floor Plan – Fairfield Wing dated 8/6/04 |
| A-1.13 | Second Floor Plan – Roosevelt Wing dated 8/6/04 |
| A-1.14 | Second Floor Plan – California Wing dated 8/6/04 |
| A-1.15 | Second Floor Plan – Fairfield Wing dated 8/6/04 |
| A-1.16 | Third Floor Plan – Roosevelt Wing dated 8/6/04 |
| A-1.17 | Third Floor Plan – California Wing dated 8/6/04 |
| A-1.18 | Third Floor Plan – Fairfield Wing dated 8/6/04 |
| A-1.19 | Fourth Floor Plan – California Wing dated 8/6/04 |
| A-1.20 | Fourth Floor Plan – Fairfield Wing dated 8/6/04 |
| A-1.21 | Mechanical Floor Plan – Roosevelt Wing dated 8/6/04 |
| A-2.01 | Elevations dated 6/11/04 |
| A-2.02 | Elevations dated 6/11/04 |
| A-3.01 | Bldg. Sections dated 8/6/04 |
| A-3.02 | Bldg. Sections dated 5/25/04 |
| A-3.03 | Bldg. Sections dated 5/25/04 |
| A-3.04 | Bldg. Sections dated 5/25/04 |
| A-3.05 | Wall Sections dated 5/25/04 |
| A-3.06 | Wall Sections dated 5/25/04 |
| A-3.07 | Wall Sections dated 5/25/04 |
| A-3.08 | Wall Sections dated 6/11/04 |
| A-3.09 | Wall Sections dated 5/25/04 (Shown Crossed Out on Index Sheet included in set) |
| A-3.10 | Wall Sections dated 5/25/04 (Shown on Index Sheet - Missing from set) |
| A-3.11 | Stair Sections, Plans dated 5/25/04 |
| A-3.12 | Stair Sections, Plans dated 5/25/04 |

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

Issued:  November 9, 2004

Page 3 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| A-3.13 | Stair Sections, Plan dated 5/25/04 |
| A-3.14 | Stair Details dated 8/6/04 |
| A-3.15 | Stair Details dated 8/6/04 |
| A-3.16 | Elevator Sections, Plans dated 8/6/04 |
| A-3.17 | Elevator Sections, Plans dated 8/6/04 |
| A-3.18 | Elevator Details dated 5/25/04 |
| A-4.01 | Plan Details dated 5/25/04 |
| A-4.02 | Plan Details dated 5/25/04 |
| A-4.03 | Plan Details dated 5/25/04 |
| A-4.04 | Plan Details dated 5/25/04 |
| A-4.05 | Plan Details dated 5/25/04 |
| A-4.06 | Section Details dated 5/25/04 |
| A-4.07 | Section Details dated 5/25/04 |
| A-4.08 | Section Details dated 5/25/04 |
| A-4.09 | Section Details dated 5/25/04 |
| A-4.10 | Section Details dated 5/25/04 |
| A-4.11 | Section Details dated 5/25/04 |
| A-4.12 | Section Details dated 5/25/04 |
| A-5.01 | Partial Enlarged Plan Interior Elevations – Chapel dated 6/11/04 |
| A-5.02 | Partial Enlarged Plan Interior Elevations – Entry Lobby dated 6/11/04 |
| A-5.03 | Partial Enlarged Plan Interior Elevations – Entry Lobby dated 6/11/04 |
| A-5.04 | Partial Enlarged Plan Interior Elevations – Landscape Office dated 5/25/04 |
| A-5.05 | Partial Enlarged Plan Interior Elevations – Open Office dated 5/25/04 |
| A-5.06 | Partial Enlarged Plan Interior Elevations – Open Office/Interview dated 5/25/04 |
| A-5.07 | Partial Enlarged Plan Interior Elevations – Therapy Rooms dated 5/25/04 |
| A-5.08 | Partial Enlarged Plan Interior Elevations – Therapy Rooms dated 5/25/04 |
| A-5.09 | Partial Enlarged Plan Interior Elevations – Therapy/Waiting dated 5/25/04 |
| A-5.10 | Partial Enlarged Plan Interior Elevations – Classroom/Security dated 5/25/04 |
| A-5.11 | Partial Enlarged Plan Interior Elevations – Classrooms dated 5/25/04 |
| A-5.12 | Partial Enlarged Plan Interior Elevations – Classroom/Office dated 5/25/04 |
| A-5.13 | Partial Enlarged Plan Interior Elevations – Conference Room dated 5/25/04 |
| A-5.14 | Partial Enlarged Plan Interior Elevations – Open Office dated 5/25/04 |
| A-5.15 | Partial Enlarged Plan Interior Elevations – Open Office dated 5/25/04 |
| A-5.16 | Partial Enlarged Plan Interior Elevations – Conference Rooms dated 6/11/04 |
| A-5.17 | Partial Enlarged Plan Interior Elevations – Conference Rooms dated 6/11/04 |
| A-5.18 | Partial Enlarged Plan Interior Elevations – Lounge/Security dated 5/25/04 |
| A-5.19 | Partial Enlarged Plan Interior Elevations – Corridor dated 9/10/04 |
| A-5.20 | Partial Enlarged Plan Interior Elevations – Lounge/Security dated 5/25/04 |
| A-5.21 | Partial Enlarged Plan Interior Elevations – Phone & Corridor dated 5/25/04 |
| A-5.22 | Partial Enlarged Plan Interior Elevations – Dining Hall dated 5/25/04 |
| A-5.23 | Partial Enlarged Plan Interior Elevations – Dining Hall dated 5/25/04 |
| A-5.24 | Partial Enlarged Plan Interior Elevations – Kitchen dated 5/25/04 |

Chicago Christian Industrial League                    Issued:  November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 4 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| A-5.25 | Partial Enlarged Plan Interior Elevations – Kitchen dated 5/25/04 |
| A-5.26 | Partial Enlarged Plan Interior Elevations – Laundry/Security dated 5/25/04 |
| A-5.27 | Partial Enlarged Plan Interior Elevations – Corridor/Lounge dated 5/25/04 |
| A-5.28 | Interior Elevations – Fairfield Wing – Rooms dated 5/25/04 |
| A-5.29 | Interior Elevation – Fairfield Wing – Rooms dated 5/25/04 |
| A-5.30 | Interior Elevations – California Wing – Rooms dated 5/25/04 |
| A-5.31 | Interior Elevations – California Wing – Rooms dated 5/25/04 |
| A-5.32 | Partial Enlarged Plan Interior Elevations - Toilets dated 5/25/04 |
| A-5.33 | Partial Enlarged Plan Interior Elevations – Toilets dated 5/25/04 |
| A-5.34 | Partial Enlarged Plan Interior Elevations – Toilets dated 5/25/04 |
| A-5.35 | Partial Enlarged Plan Interior Elevations – Office/Toilet dated 5/25/04 |
| A-5.36 | Partial Enlarged Plan Interior Elevations – Toilets dated 5/25/04 |
| A-5.37 | Partial Enlarged Plan Interior Elevations – Toilet/Lounge dated 5/25/04 |
| A-5.38 | Partial Enlarged Plan Interior Elevations – Toilet/Lounge dated 5/25/04 |
| A-6.01 | Room Finish Schedule dated 5/25/04 |
| A-6.02 | Room Finish Schedule dated 5/25/04 |
| A-6.04 | Millwork Detail dated 8/6/04 |
| A-6.05 | Millwork Detail dated 5/25/04 |
| A-6.06 | Millwork Detail dated 5/25/04 |
| A-6.07 | Millwork Detail dated 5/25/04 |
| A-6.08 | Millwork Detail dated 8/6/04 |
| A-7.01 | Door Schedules dated 8/6/04 |
| A-7.02 | Door Schedules dated 8/6/04 |
| A-7.03 | Door Details dated 5/25/04 |
| A-7.04 | Window Schedules dated 8/6/04 |
| A-7.05 | Window Schedules dated 8/6/04 |
| A-7.06 | Window Details dated 5/25/04 |
| A-7.10 | Signage dated 5/25/04 |
| A-8.01 | Reflected Ceiling Plan First Floor Roosevelt Wing dated 5/25/04 |
| A-8.02 | Reflected Ceiling Plan First Floor California Wing dated 8/6/04 |
| A-8.03 | Reflected Ceiling Plan First Floor Fairfield Wing dated 5/25/04 |
| A-8.04 | Reflected Ceiling Plan Second Floor Roosevelt Wing dated 5/25/04 |
| A-8.05 | Reflected Ceiling Plan Second Floor California Wing dated 5/25/04 |
| A-8.06 | Reflected Ceiling Plan 2-4 Typical Floor Fairfield Wing dated 8/6/04 |
| A-8.07 | Reflected Ceiling Plan Third Floor Roosevelt Wing dated 5/25/04 |
| A-8.08 | Reflected Ceiling Plan Third Floor California Wing dated 5/25/04 |
| A-8.09 | Reflected Ceiling Plan Fourth Floor California Wing dated 5/25/04 |
| A-9.01 | First Floor Furniture Plan dated 5/25/04 |
| A-9.02 | Second Floor Furniture Plan dated 5/25/04 |
| A-9.03 | Third Floor Furniture Plan dated 5/25/04 |
| A-9.04 | Fourth Floor Furniture Plan dated 5/25/04 |

Chicago Christian Industrial League                    Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 5 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

Issued:  November 9, 2004

Page 6 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| S101 | General Notes dated 6/11/04 |
| S102 | General Notes dated 5/25/04 |
| S103 | Typical Concrete Details dated 6/11/04 |
| S104 | Typical Steel Details dated 5/25/04 |
| S201 | Caisson Plan dated 5/25/04 |
| S202 | Caisson Plan dated 5/25/04 |
| S203 | Caisson Plan dated 5/25/04 |
| S204 | First Floor Framing Plan dated 6/17/04 |
| S205 | First Floor Framing Plan dated 6/11/04 |
| S206 | First Floor Framing Plan dated 6/11/04 |
| S206A | First Floor Partial Layout Plan dated 5/25/04 |
| S207 | Second Floor Framing Plan dated 6/17/04 |
| S208 | Second Floor Framing Plan dated 6/17/04 |
| S209 | Second Floor Framing Plan dated 6/17/04 |
| S210 | Third Floor Framing Plan dated 6/17/04 |
| S211 | Third Floor Framing Plan dated 6/11/04 |
| S212 | Third Floor Framing Plan dated 6/11/04 |
| S213 | Fourth Floor Framing Plan dated 6/17/04 |
| S214 | Fourth Floor Framing Plan dated 6/11/04 |
| S215 | Fourth Floor Framing Plan dated 6/11/04 |
| S216 | Roof Framing Plan dated 6/17/04 |
| S217 | Roof Framing Plan dated 6/11/04 |
| S218 | Roof Framing Plan dated 6/11/04 |
| S219 | Penthouse Roof Framing Plan dated 6/11/04 |
| S220 | Entry Screen Elevation & Details dated 6/11/04 |
| S301 | Caisson Schedule and Details dated 6/11/04 |
| S302 | Grade Beam Schedule & Details dated 6/11/04 |
| S303 | Foundation Sections & Details dated 5/25/04 |
| S304 | Foundation Sections & Details dated 5/25/04 |
| S401 | Column Schedule and Details dated 6/17/04 |
| S402 | Braced Frame Elevations & Details dated 6/11/04 |
| S403 | Braced Frame Sections & Details dated 6/11/04 |
| S404 | Sections and Details dated 5/25/04 |
| S405 | Sections and Details dated 6/11/04 |
| S406 | Sections and Details dated 5/25/04 |
| | |
| MEP | Mechanical, Piping, Electrical and Plumbing Coordination Plan dated 5/25/04 |
| M1.11 | First Floor Ductwork Plan – Roosevelt Wing dated 5/25/04 |
| M1.21 | First Floor Ductwork Plan – California Wing dated 5/25/04 |
| M1.31 | First Floor Ductwork Plan – Fairfield Wing dated 5/25/04 |
| M1.12 | First Floor Piping Plan – Roosevelt Wing dated 5/25/04 |
| M1.22 | First Floor Piping Plan – California Wing dated 5/25/04 |

08CV3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC

Chicago Christian Industrial League                    Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 7 of 13

## EXHIBIT B
### PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| M1.32 | First Floor Piping Plan – Fairfield Wing dated 5/25/04 |
| M2.11 | Second Floor Ductwork Plan – Roosevelt Wing dated 5/25/04 |
| M2.2 | Second Floor Ductwork Plan – California Wing dated 5/25/04 |
| M2.3 | Second Floor Ductwork Plan – Fairfield Wing dated 5/25/04 |
| M2.12 | Second Floor Piping Plan – Roosevelt Wing dated 5/25/04 |
| M2.22 | Second Floor Piping Plan – California Wing dated 5/25/04 |
| M2.32 | Second Floor Piping Plan – Fairfield Wing dated 5/25/04 |
| M3.11 | Third Floor Ductwork Plan – Roosevelt Wing dated 5/25/04 |
| M3.2 | Third Floor Ductwork Plan – California Wing dated 5/25/04 |
| M3.3 | Third Floor Ductwork Plan – Fairfield Wing dated 5/25/04 |
| M3.12 | Third Floor Piping Plan – Roosevelt Wing dated 5/25/04 |
| M3.22 | Third Floor Piping Plan – California Wing dated 5/25/04 |
| M3.32 | Third Floor Piping Plan – Fairfield Wing dated 5/25/04 |
| M4.2 | Fourth Floor Ductwork & Piping Plan - California Wing dated 5/25/04 |
| M4.3 | Fourth Floor Ductwork & Piping Plan – Fairfield Wing dated 5/25/04 |
| M5.1 | Mechanical Penthouse Ductwork & Piping Plan – Roosevelt Wing dated 5/25/04 |
| M5.2 | Mechanical Penthouse Ductwork & Piping Plan – California Wing dated 5/25/04 |
| M5.3 | Mechanical Floor Ductwork & Piping Plan – Fairfield Wing dated 5/25/04 |
| M6.1 | Mechanical Roof Ductwork Plan – Roosevelt Wing dated 5/25/04 |
| M6.2 | Mechanical Roof Ductwork Plan – California Wing dated 5/25/04 |
| M7.1 | Schedules dated 5/25/04 |
| M7.2 | Schedules dated 5/25/04 |
| M7.3 | Schedules dated 5/25/04 |
| M7.4A | Risers dated 5/25/04 |
| M7.4B | Risers dated 5/25/04 |
| M8.1 | Details dated 5/25/04 |
| M8.2 | Details dated 5/25/04 |
| M8.3 | Details dated 5/25/04 |
| E0.2 | Electrical Symbols dated 6/11/04 |
| E0.3 | Electrical Site Plan dated 5/25/04 |
| E1.1P | First Floor Power Plan - Roosevelt Wing dated 5/25/04 |
| E1.2P | First Floor Power Plan - California Wing dated 5/25/04 |
| E1.3P | First Floor Power Plan - Fairfield Wing dated 5/25/04 |
| E1.S | First Floor Security Plan dated 5/25/04 |
| E1.1L | First Fl Lighting Plan - Roosevelt Wing dated 5/25/04 |
| E1.2L | First Fl Lighting Plan – California Wing dated 5/25/04 |
| E1.3L | First Fl Lighting Plan – Fairfield Wing dated 5/25/04 |
| E1.1EM | First Floor EM Lighting – Roosevelt Wing dated 5/25/04 |
| E1.2EM | First Floor EM Lighting – California Wing dated 5/25/04 |
| E1.3EM | First Floor EM Lighting – Fairfield Wing dated 5/25/04 |
| E2.1P | Second Floor Power Plan – Roosevelt Wing dated 5/25/04 |



EXHIBIT
A2

Chicago Christian Industrial League                    Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 8 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| E2.2P | Second Floor Power Plan – California Wing dated 5/25/04 |
| E2.3P | Second Floor Power Plan – Fairfield Wing dated 5/25/04 |
| E2.S | Second Floor Security Plan dated 5/25/04 |
| E2.1L | Second Floor Lighting Plan – Roosevelt Wing dated 5/25/04 |
| E2.2L | Second Floor Lighting Plan – California Wing dated 5/25/04 |
| E2.3L | Second Floor Lighting Plan – Fairfield Wing dated 5/25/04 |
| E2.1EM | Second Floor EM Lighting – Roosevelt Wing dated 5/25/04 |
| E2.2EM | Second Floor EM Lighting – California Wing dated 5/25/04 |
| E2.3EM | Second Floor EM Lighting – Fairfield Wing dated 5/25/04 |
| E3.1P | Third Floor Power Plan – Roosevelt Wing dated 5/25/04 |
| E3.2P | Third Floor Power Plan – California Wing dated 5/25/04 |
| E3.3P | Third Floor Power Plan – Fairfield Wing dated 5/25/04 |
| E3.S | Third Floor Security Plan dated 5/25/04 |
| E3.1L | Third Floor Lighting Plan – Roosevelt Wing dated 5/25/04 |
| E3.2L | Third Floor Lighting Plan – California Wing dated 5/25/04 |
| E3.3L | Third Floor Lighting Plan – Fairfield Wing dated 5/25/04 |
| E3.1EM | Third Floor Lighting Plan – Roosevelt Wing dated 5/25/04 |
| E3.2EM | Third Floor Lighting Plan – California Wing dated 5/23/04 |
| E3.3EM | Third Floor Lighting Plan – Fairfield Wing dated 5/25/04 |
| E4.2P | Fourth Floor Power Plan – California Wing dated 5/25/04 |
| E4.3P | Fourth Floor Power Plan – Fairfield Wing dated 5/25/04 |
| E4.S | Fourth Floor Security Plan dated 5/25/04 |
| E4.2L | Fourth Floor Lighting Plan – California Wing dated 5/25/04 |
| E4.3L | Fourth Floor Lighting Plan – Fairfield Wing dated 5/25/04 |
| E4.2EM | Fourth Floor EM Lighting – California Wing dated 5/25/04 |
| E4.3EM | Fourth Floor EM Lighting – Fairfield Wing dated 5/25/04 |
| E5.1P | Penthouse Power Plan – Roosevelt Wing dated 5/25/04 |
| E5.2P | Penthouse Power Plan – California Wing dated 5/25/04 |
| E5.3P | Penthouse Power Plan – Fairfield Wing dated 5/25/04 |
| E5.1L | Penthouse Lighting Plan dated 5/25/04 |
| E5.1EM | Penthouse EM Lighting Plan dated 5/25/04 |
| E6.1 | Electrical Riser dated 5/25/04 |
| E6.2 | Grounding & Exterior Lighting Control Diagrams dated 5/25/04 |
| E7.1 | Distribution Panel Schedules dated 5/25/04 |
| E7.2 | Lighting Fixture Schedules dated 5/25/04 |
| E7.3 | Panel Schedules dated 5/25/04 |
| E7.4 | Panel Schedules dated 5/25/04 |
| E7.5 | Panel Schedules dated 5/25/04 |
| E7.6 | Panel Schedules dated 5/25/04 |
| E8.1 | Electrical Tables dated 5/25/04 |
| E9.1 | Kitchen Electrical Plan dated 5/25/04 |

Chicago Christian Industrial League                     Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                       Page 9 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| P0.1 | Plumbing/Fire Protection Symbols and Notes dated 5/25/04 |
| P1.1 | First Floor Plan – Roosevelt Wing dated 5/25/04 |
| P1.2 | First Floor Plan – California Wing dated 5/25/04 |
| P1.3 | First Floor Plan – Fairfield Wing dated 5/25/04 |
| P2.1 | Second Floor Plan – Roosevelt Wing dated 5/25/04 |
| P2.2 | Second Floor Plan – California Wing dated 5/25/04 |
| P2.3 | Second Floor Plan – Fairfield Wing dated 5/25/04 |
| P3.1 | Third Floor Plan – Roosevelt Wing dated 5/25/04 |
| P3.2 | Third Floor Plan – California Wing dated 5/25/04 |
| P3.3 | Third Floor Plan – Fairfield Wing dated 5/25/04 |
| | |
| P4.1 | Fourth Floor Plan – California Wing dated 5/25/04 |
| P4.2 | Fourth Floor Plan – California Wing dated 5/25/04 |
| P4.3 | Fourth Floor Plan – Fairfield Wing dated 5/25/04 |
| P5.1 | Roof Plan – Roosevelt Wing dated 5/25/04 |
| P5.2 | Roof Plan – California Wing dated 5/25/04 |
| P5.3 | Roof Plan – Fairfield Wing dated 5/25/04 |
| P6.1 | Schedules & Details dated 5/25/04 |
| P7.1 | Fire Protection Riser, Notes & Schedules dated 5/25/04 |
| P8.1 | Plumbing Riser Diagrams dated 5/25/04 |
| P8.2 | Plumbing Riser Diagrams dated 5/25/04 |
| P8.3 | Plumbing Riser Diagrams dated 5/25/04 |
| P8.4 | Plumbing Riser Diagrams dated 5/25/04 |
| P8.5 | Plumbing Riser Diagrams dated 5/25/04 |
| P9.1 | Plumbing Riser Diagrams dated 5/25/04 |
| P9.2 | Plumbing Riser Diagrams dated 5/25/04 |
| P10.1 | Kitchen Floor Plan – Fairfield Wing dated 5/25/04 |
| FS-1 | Foodservice Equipment – Equipment Plan dated 5/17/04 |
| FS-2 | Foodservice Equipment – Utility Schedule dated 5/17/04 |
| FS-3 | Foodservice Equipment – Plumbing Plan dated 5/17/04 |
| FS-4 | Foodservice Equipment – Electrical Plan dated 5/17/04 |
| FS-5 | Foodservice Equipment – Special Conditions Plan dated 5/17/04 |
| FS-6 | Foodservice Equipment – Exhaust Hood Details dated 5/17/04 |

Project Manual Specifications – All Dated 5/25/04

Volume One

| Spec. # | Description |
|---|---|
| 00100 | Instructions to Bidders |
| 00200 | Information Available to Bidders |
| 00350 | Bid Form |

Chicago Christian Industrial League                    Issued: November 9, 2004
Roosevelt Road Campus
Chicago, Illinois                                      Page 10 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

|       | AIA A101 Standard Form of Agreement between Owner and Contractor |
|-------|------------------------------------------------------------------|
| 01100 | Summary |
| 01210 | Allowances |
| 01230 | Alternates |
| 01250 | Contract Modification Procedures |
| 01270 | Unit Prices |
| 01290 | Payment Procedures |
| 01310 | Project Management and Coordination |
| 01320 | Construction Progress Documentation |
| 01322 | Photographic Documentation |
| 01330 | Submittal Procedures |
| 01352 | LEED Requirements |
| 01400 | Quality Requirements |
| 01410 | Regulatory Requirements |
| 01420 | References |
| 01450 | Sequence of Finish Installation |
| 01500 | Temporary Facilities and Controls |
| 01524 | Construction Waste Management |
| 01600 | Product Requirements |
| 01700 | Execution Requirements |
| 01731 | Cutting and Patching |
| 01770 | Closeout Procedures |
| 01781 | Project Record Documents |
| 01782 | Operation and Maintenance Data |
| 02110 | Site Clearing |
| 02212 | Finish Grading |
| 02300 | Earthwork |
| 02466 | Caisson |
| 02511 | Bituminous Concrete Paving |
| 02513 | Portland Cement Concrete Paving |
| 02701 | Exterior Sewer and Water Facilities |
| 02791 | Playground Surface Systems |
| 02810 | Irrigation System |
| 02833 | Ornamental Fencing and Gates |
| 02870 | Site and Street Furnishings |
| 02881 | Playground Equipment and Structures |
| 02920 | Lawns and Grasses |
| 02930 | Exterior Plants |
| 02935 | Water Feature |
| 03300 | Cast-in-Place Concrete |
| 04810 | Unit Masonry Assemblies |
| 05120 | Structural Steel |

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

Issued:  November 9, 2004

Page 11 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| 05310 | Steel Deck |
| 05400 | Cold-Formed Metal Framing |
| 05500 | Metal Fabrications |
| 05511 | Metal Stairs |
| 05521 | Pipe and Tube Railings |
| 05580 | Formed Metal Fabrications |
| 05700 | Ornamental Metal |
| 06105 | Miscellaneous Carpentry |
| 06160 | Sheathing |
| 06402 | Interior Architectural Woodwork |
| 06680 | Fiberglass Reinforced Plastic Wall Panels |
| 07141 | Cold Fluid-Applied Waterproofing |
| 07210 | Building Insulation |
| 07410 | Corrugated Metal Wall Panels |
| 07420 | Metal Plate Wall Panels |
| 07540 | Thermoplastic Membrane Roofing |
| 07565 | Hot Fluid Applied Garden Roofing System |
| 07620 | Sheet Metal Flashing and Trim |
| 07720 | Roof Accessories |
| 07811 | Sprayed Fire-Resistive Materials |
| 07841 | Through-Penetration Firestop Systems |
| 07842 | Fire Resistive Joint System |
| 07920 | Joint Sealants |
| 08111 | Steel Doors and Frames |
| 08211 | Flush Wood Doors |
| 08261 | Bifold doors |
| 08311 | Access Doors and Frames |
| 08331 | Overhead Coiling Doors |
| 08411 | Aluminum Framed Entrances and Storefronts |
| 08520 | Aluminum Windows |
| 08710 | Door Hardware |
| 08800 | Glazing |
| 08814 | Mirrored Glass |
| 08870 | Glazing Film |
| 09260 | Gypsum Board Assemblies |
| 09265 | Gypsum Board Shaft Wall Assemblies |
| 09310 | Ceramic Tile |
| 09402 | Epoxy Terrazzo |
| 09404 | Precast Terrazzo Treads and Landing |
| 09511 | Acoustical Panel Ceilings |
| 09652 | Sheet Vinyl Floor Coverings |
| 09653 | Resilient Wall Base and Accessories |

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

Issued: November 9, 2004

Page 12 of 13

## EXHIBIT B
### PLANS AND SPECIFICATIONS DOCUMENT LIST

| | |
|---|---|
| 09654 | Linoleum Floor Coverings |
| 09680 | Carpet |
| 09681 | Carpet Tile |
| 09912 | Painting |
| 09960 | High Performance Coatings |
| 10101 | Visual Display Surfaces |
| 10155 | Toilet and Shower Compartments |
| 10200 | Louvers and Vents |
| 10431 | Signs |
| 10520 | Fire Protection Specialties |
| 10550 | Postal Specialties |
| 10801 | Toilet and Bath Accessories |
| 10900 | Closet Fittings |
| 11132 | Projection Screens |
| 11160 | Loading Dock Equipment |
| 11451 | Food Service Equipment |
| 12356 | Kitchen Casework |
| 12494 | Roller Shades |

### Volume Two

| | |
|---|---|
| 15010 | Basic Mechanical Requirements |
| 15050 | Materials & Methods |
| 15160 | Mechanical Sound and Vibration Control |
| 15180 | Mechanical Insulation |
| 15401 | Domestic Water Piping Systems |
| 15405 | Storm, Soil and Waste Piping Systems |
| 15420 | Plumbing Equipment |
| 15450 | Plumbing Fixtures and Trim |
| 15500 | Fire Protection Systems |
| 15600 | Power/Heat Generation |
| 15650 | Refrigeration |
| 15700 | Heat Transfer |
| 15800 | Air Distribution |
| 15850 | Air Handling |
| 15990 | Testing, Adjusting and Balancing |
| 16010 | General Provisions |
| 16050 | Basic Materials and Methods |
| 16400 | Service and Distribution (600 Volt Class) |
| 16402 | Underground Electric Service |
| 16480 | Motors and Motor Controls |
| 16500 | Lighting |

Chicago Christian Industrial League
Roosevelt Road Campus
Chicago, Illinois

Issued:  November 9, 2004

Page 13 of 13

## EXHIBIT B
## PLANS AND SPECIFICATIONS DOCUMENT LIST

16720        Fire Alarm System (Chicago Code Class I)

1.8    UNIT PRICES:

A.    Unit price is an amount proposed by the Bidder, as a price per unit of measurement for materials or services added to or deducted from the Contract Sum by appropriate modification, if quantities of Work required by the Contract Documents are increased or decreased.

B.    The Undersigned proposes the following unit prices for additions or deductions to the lump sum base bid:

| NO. | DESCRIPTION | UNIT | ESTIMATED QUANTITY | UNIT PRICE ADD | UNIT PRICE DEDUCT |
|-----|-------------|------|--------------------|----------------|-------------------|
| 1A | Additional excavation | Cu.yd. | TBD | $32.65 | ($27.25) |
| 1B | Additional fill | Cu.yd. | TBD | $22.35 | ($18.65) |
| 1C | Additional rock excavation | Cu.yd. | TBD | $100.00 | ($N/A) |
| 2 | Contaminated soil removal | Cu.yd. | TBD | $55.35 | ($46.25) |
| 3A | Additional Labor, Concrete | Cu.yd. | TBD | $147.50 | ($71.50) |
| 3B | Reinforcing steel | Ton | TBD | $1612.50 | ($600.00) |
| 3C | Permanent corrugated liners | Per ft. (length) | TBD | $32.50 | ($N/A) |
| 3D | Temporary liners | Per ft. (length) | TBD | $175.00 | ($N/A) |
| 3E | Drilling | Per ft. (length) | TBD | $60.00 | ($15.00) |



# ▲AIA® Document A201™ – 1997

## ░░░░ral Conditions of the Contract for Construction

░░ the following PROJECT:
*(Name and location or address):*
░RL Construction Contract Documents
░6 W. R░░evelt B░░ Chicago, Illinois – 3.6 Acres bounded by West Roosevelt,
░░th Fair░░ Cali░░░, and elevated railway embankment

░E OWI░░
*░ms a░░░ddress):*

THE ░░░░TE░░
*(Nam░ and ░░░ess):*

░A░░ OF ARTICL░░

1    ░ENERAL PR░░ISIONS

2    ░░NER

3    ░ONT░░░TOR

4    ADMINISTRATION OF ░░░ CONTRACT

5    ░░░░T░░ ░TOR░

6    ░ONSTRUCTION ░░ ░░░░░ BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TI░░

9    ░AYMENTS AND ░░MPLETION

10   ░░░░░░░ OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   ░░VERING AND CORRECTION OF WORK

13   ░░░░LANEOUS PROVISIONS

14   TERMINATION OR SUSPENSION OF THE CONTRACT

**ADDITIONS AND DELETIONS:**
The author of this document has
added information needed for its
completion. The author may also
have revised the text of the
original AIA standard form. An
*Additions and Deletions Report*
that notes added information as
well as revisions to the standard
form text is available from the
author and should be reviewed.
A vertical line in the left margin of
this document indicates where
the author has added necessary
information and where the author
has added to or deleted from the
original AIA text.

This document has important
legal consequences.
Consultation with an attorney
is encouraged with respect to
its completion or modification.

This document has been
approved and endorsed by The
Associated General Contractors
of America

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order
No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                              (2256955884)

**INDEX**

(and Topics in Bold are Section Headings)

...ce of Nonconforming Work
9.6.6, 9.9.3, 12.3
...ance of Work
..., 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
..., 6.2.1, ...1
...dent Pr...tion
..., 10
...s and C... ...ions
...3.2... ..., 4.3.8, 4.4.1, 8.3.1,
...

...ting

**...NISTR...N ...E CONTRACT**

...r Payment
...9.5.1, ..., 9.7.1, 9.8.5,

...3.10.2, 3.1... ...13.4.2, 13.5
...4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9,
**Architect**
4.1...
Architect... ...ion of
...1.1
...hitect, ...hority
...4, 3.12.7, ..., 4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4,
9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1, 12.2.1,
...2.... 4.2.2, 14.2.4
...ions of Authority and
...4, 3.12.8, 3.12.10, 4.1.2, 4.2.1,
...4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4,
5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6
**Architect's Additional Services and Expenses**
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
**Architect's Administration of the Contract**

3.1.3, 4.2, 4.3.4, 4.4, 9.4, 9.5
**Architect's Approvals**
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
**Architect's Authority to Reject Work**
3.5.1, 4.2.6, 12.1.2, 12.2.1
**Architect's Copyright**
1.6
**Architect's Decisions**
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4,
9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
**Architect's Inspections**
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
**Architect's Instructions**
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
**Architect's Interpretations**
4.2.11, 4.2.12, 4.3.6
**Architect's Project Representative**
4.2.10
**Architect's Relationship with Contractor**
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2,
4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4,
9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12,
13.4.2, 13.5
**Architect's Relationship with Subcontractors**
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
**Architect's Representations**
9.4.2, 9.5.1, 9.10.1
**Architect's Site Visits**
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1,
13.5
**Asbestos**
10.3.1
**Attorneys' Fees**
3.18.1, 9.10.2, 10.3.3
**Award of Separate Contracts**
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
5.2
**Basic Definitions**
1.1
**Bidding Requirements**
1.1.1, 1.1.7, 5.2.1, 11.5.1
**Boiler and Machinery Insurance**
11.4.2
**Bonds, Lien**
9.10.2
**Bonds, Performance, and Payment**
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
**Building Permit**
3.7.1
**Capitalization**
1.3
**Certificate of Substantial Completion**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955684)

9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
.7, 14.1.1.3, 14.2.4
ates of Inspection, Testing or Approval
13.5.4
ates of Insurance
, 11.1.3
**Change Orders**
1, 2.4.1, 2, 3.8, 3.11.1, 3.12.8, 4.2.8, 4.3.4,
9, 5.2.3, 7.2, 3.1, 9.3.1.1, 9.10.3,
.12, 1 11. 1.2
ge Or Definit of

ANG T OR
4 4.9
on
led o
4 3. 6.3. 7.3.8, 9.3.3, 9.10.4,

i ns Se iation
4.6.1
g
3
ent of Statutor tion Period
5
of Wor tions Relating to
3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1,
2.2, 12.2, 8 1.1, 11.4.1, 11.4.6,
11.5.1
Co encement of t Definition of
3.12
mmu s ilitating Contract
mi 1
.1, 4.2.4
**Completion, Conditions Relating to**
1.6.1, 3.4.1 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8,
13.7, 14.1.2
PAYMENTS AND

tantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7
**Compliance with Laws**

1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4,
4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14.1.1, 14.2.1.3
**Concealed or Unknown Conditions**
4.3.4, 8.3.1, 10.3
**Conditions of the Contract**
1.1.1, 1.1.7, 6.1.1, 6.1.4
**Consent, Written**
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
**CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS**
1.1.4, 6
**Construction Change Directive, Definition of**
7.3.1
**Construction Change Directives**
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, 7.3, 9.3.1.1
**Construction Schedules, Contractor's**
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
**Contingent Assignment of Subcontracts**
5.4, 14.2.2.2
**Continuing Contract Performance**
4.3.3
**Contract, Definition of**
1.1.2
**CONTRACT, TERMINATION OR
SUSPENSION OR THE**
5.4.1.1, 11.4.9, 14
**Contract Administration**
3.1.3, 4, 9.4, 9.5
**Contract Award and Execution, Conditions Relating
to**
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1
**Contract Documents, The**
1.1, 1.2
**Contract Documents, Copies Furnished and Use of**
1.6, 2.2.5, 5.3
**Contract Documents, Definition of**
1.1.1
**Contract Sum**
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2,
9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2
**Contract Sum, Definition of**
9.1
**Contract Time**
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2,
8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2
**Contract Time, Definition of**
8.1.1
**CONTRACTOR**
3
**Contractor, Definition of**
3.1, 6.1.2
**Contractor's Construction Schedules**
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
**Contractor's Employees**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order
No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955884)

3

3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1,

...r's Liability Insurance

...'s Relationship with Separate Contractors and Owner's Forces
...3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4

...ractor's Relationship with Subcontractors
...2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, ...1.2, 11.4.7, 11.4

...ntractor's ...ation...s with the Architect
...2, 1.6, ... 3.2, ..., 3.2.3, 3.3.1, 3.4.2, 3.5.1, ...3, 3.10 ... 3.7 ... 6, 3.18, 4.1.2, 4.1.3, 4.2, ...4, 4.4 ..., ... 2.7, 8.3.1, 9.2, 9.3, 9.4, ...9.7 ... ...10 ... 11.3, 11.4.7, 12, ...2

...
...3. ... 3. ... 2 ... 9.3.3, 9.8.2
Con... ... ... Those Performing the
...

... ... ...1.3, 6.2, 6.3, 9.5.1,

...ion ... ... ... Co... Documents
...2, 3.2, 7

...'... ... ... ... ... Work
...

... 's R... ... the Contract
...

C... ... Sub... ...1, 5.2.3, 7.3.6, 9.2, 9.3, ... 9.9.1, 9.10.2 ... 11.3, 11.1.3, 11.5.2

...10.2.6

...s Supervision and Co... ...ion
Proce...
...3. ... ... 4.2.7, 4.3.3, 6.1.3, ... 7.3.4, 7.3.6, 8.2 ... 14.4

Co... ...ability Insur...
...2.3 ...
...dination and Correlation
...2, 3.2.1, 3.10 ... 6.1.3, 6.2.1

Copies Furnished of ... ... Specifications
1.6, ... 2.5, 3.11

Copyright...
...6, 3.17

...rection...
...2, 2.4, 3.7... ...2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2, 13.7.1.3

Correlation and Intent of the Contract Documents
...

...f
...
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3, 11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14
Cutting and Patching

6.2.5, 3.14
Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1, 11.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4
Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work, Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
3.5.1
Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Execution and Progress of the Work

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes: (2256955984)

4



1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3, 7.3.4,
9.1, 10.2, 10.3, 12.2, 14.2, 14.3
of Time
1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1,
9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
of Payment
9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
ulty Work
Defective or Non forming Work)
nal Condition and al Payment
4.2.9, 9, 9, 0, 11.1.2, 11.1.3, 11.4.1,
5, 17, 14.4.3
ncial nt Owner's

on Insurance

Pr

(

n t Co uments

y r and Suppliers

10.5, 11.4.4.2, 11.4.7
and Se equired of the Owner
10, 4.2.7 3.3, 6.1.3,
6.2 6.4, 9 3, 10.3.3,
13.5.2, 14.1
injur son o perty
10.2

1, 4.2.2, 4 2, 9.8.2,
3. 2.1, 9.8.2, 13.5.2
Instruction he
3.2 3.3.1, 3.8.1, 4 2, 8.2.2, 13.5.2
Insuranc
18.1, 6 2.1, 9.3.2, 9.8.4, 9.9.1, 9.10.2,
0.5, 11
surance, B Machinery
11.4.2
Insurance, Contractor's Liability

ve Date of

of Use
11.4.3
Insurance, Owner's Liability
11.2

Insurance, Project Management Protective
Liability
11.3
Insurance, Property
10.2.5, 11.4
Insurance, Stored Materials
9.3.2, 11.4.1.4
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
13.6
Interpretation
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
4.6.4
Judgment on Final Award
4.6.6
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
42.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Liens
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
4.6.4
Limitations, Statutes of
4.6.3, 12.2.6, 13.7
Limitations of Liability
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18,
4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.10.4,
10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Loss of Use Insurance
11.4.3
Material Suppliers
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
10.2.4, 10.3, 10.5

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order
No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                        (2256955884)



Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.2.3, 3.12, 3.13,
...6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
...0.2, 10.2.1, 10.2.4, 14.2.1.2
...ethods, Techniques, Sequences and
Procedures of Construction
...12.10, 4.2.2, 4.2.7, 9.4.2
...nic's Lien
4.4.8
...lation
..., 4.4.5..., 4.6, 4..., ..5, 4.6.1, 4.6.2, 8.3.1, 10.5
...or Changes in the Work
..., 3.12..., .8..., .1, 7.4
...CELL...POUS...OVISIONS
...7.1
...roo...f the Con...
...1
...2.1, 5.2.3, 7, 8.3.1,
...r Re...ship...
...tions...ance of
...99..., 1...
...W... ...on and Correction of
...9.58, 9.8.2, 9.9.3, 9.10.4,
Not...
2...
....2, 3.7.4, 3.12.9, 4.3,
....7, 9.10, 10.2.2, 11.1.3,
.... .5.1, 13.5.2, 14.1, 14.2
...3.12.... ...8, 4.6.5,
...
...
...s of ...nspections
...5.2
No...rd
...2
..., Permits, Fees and
...7, 3.13, 7.3...
Observatio...Con...
1....3.2, 3.7.3, 4.3...
Occupan...
.2.2, 9.....5
...ers, W...
..., 2.3, 3..., ..2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1
OWN...
...
...n of
...ion and Services Required of the
2.1.2, 2.2, 3.2.1, 3.1.3, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority
1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1,
6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1,
9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3, 11.4.10,
12.2.2, 12.3.1, 13.2.2, 14.3, 14.4
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance
11.2
Owner's Loss of Use Insurance
11.4.3
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
2.4, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.6, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.4.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
PAYMENTS AND COMPLETION
9
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8,
14.2.1.2
PCB
10.3.1

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order
No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                      (2256965884)

Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5

Permits, Fees and Notices
3.13, 7.3.6.4, 10.2.2

PERSONS AND PROPERTY, PROTECTION
OF



Polychlorinated Biphenyl
10.3.1

Product Data, Definition of
3.12.2

Product Data and Samples, Shop Drawings
3.11, 3.12

Progress and Completion
4.3.3, 8.2, 9.8, 9.9.1, 14.1.4

Progress Payments
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3

Project, Definition of the
1.1.4

Project Management and Protective Liability
Insurance
11.3

Project Manual, Definition of the
1.1.7

Project Manuals
2.2.5

Project Representatives
4.2.10

Property Insurance
10.2.5, 11.4

PROTECTION OF PERSONS AND PROPERTY
10

Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14

Rejection of Work
3.5.1, 4.2.6, 12.2.1

Releases and Waivers of Liens
9.10.2

Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1

Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2,
13.2.1

Resolution of Claims and Disputes
4.4, 4.5, 4.6

Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1,
10

Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3

Review of Contract Documents and Field
Conditions by Contractor
1.5.2, 3.2, 3.7.3, 3.12.7, 6.1.3

Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2

Review of Shop Drawings, Product Data and
Samples by Contractor
3.12

Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3,
5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3,
12.2.2, 12.2.4, 13.4, 14

Royalties, Patents and Copyrights
3.17

Rules and Notices for Arbitration
4.6.2

Safety of Persons and Property
10.2, 10.6

Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, 10.1, 10.2, 10.6

Samples, Definition of
3.12.3

Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7

Samples at the Site, Documents and
3.11

Schedule of Values
9.2, 9.3.1

Schedules,
1.4.1.2, 3.10, 3.Construction12.1, 3.12.2, 4.3.7.2,
6.1.3

Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1,
11.4.7, 12.1.2, 12.2.5

Shop Drawings, Definition of
3.12.1

Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7

Site, Use of
3.13, 6.1.1, 6.2.1

Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1, 13.5

Site Visits, Architect's
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5

Special Inspections and Testing
4.2.6, 12.2.1, 13.5

Specifications, Definition of the
1.1.6

Specifications, The
1.1.1, 1.1.6, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17

Statute of Limitations
4.6.3, 12.2.6, 13.7

Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1

Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4

Subcontractor, Definition of
5.1.1

SUBCONTRACTORS

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order
No.1000197492_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                    (2256955884)

7



5
Subcontractors, Work by
2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,

actual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1,
14.3.2
entials
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2,
9.8, 9.9, 9.10.2, 10.3, 11.1.3
rogation, Waiver
1, 11.4.5, 11.4.7
stantial Completion
9, 8.
4.2
ation Summary Definition of
.1,
.7,

Substantial
um
Subcontr
Subt
Subr
Sub
Sub

on Procedures
3.2, 4.2, 4.2, 4.6.1.3,
3.6, 8.2, 8.3.1, 9, 12, 14
rs
.5, .0, 3.10.3, 14.2.2
onsei
ve
ion by the Owner Convenience
14.4
Suspension of the W
5.4.2, 14
uspensi ion of the Contract
6, 5.4,
les
3.6, 3.8.2.1, 7.3.6.4
Termination by the Contractor

the Owner for Cause
.2
Architect
4.1.3
Termination of the Contractor
14.2.2

**TERMINATION OR SUSPENSION OF THE
CONTRACT**
14
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, 13.5
**TIME**
8
**Time, Delays and Extensions of**
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
**Time Limits**
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
**Time Limits on Claims**
4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
**Title to Work**
9.3.2, 9.3.3.
**UNCOVERING AND CORRECTION OF
WORK**
12
**Uncovering of Work**
12.1
**Unforeseen Conditions**
4.3.4, 8.3.1, 10.3
**Unit Prices**
4.3.9, 7.3.3.2
**Use of Documents**
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
**Use of Site**
3.13, 6.1.1, 6.2.1
**Values, Schedule of**
9.2, 9.3.1
**Waiver of Claims by the Architect**
13.4.2
**Waiver of Claims by the Contractor**
4.3.10, 9.10.5, 11.4.7, 13.4.2
**Waiver of Claims by the Owner**
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7,
12.2.2.1, 13.4.2, 14.2.4
**Waiver of Consequential Damages**
4.3.10, 14.2.4
**Waiver of Liens**
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, 11.4.5, 11.4.7
**Warranty**
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,
13.7.1.3
**Weather Delays**
4.3.7.2
**Work, Definition of**
1.1.3
**Written Consent**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:
(2256935884)

1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1,  13.2, 13.4.2

Interpretations
_.12, 4.3.6

Notice

2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3,  11.1.3, 11.4.6,
12.2.2, 12.2.4, 13.3, 14

Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1



AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951–1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The
American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be
prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order
No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:
(2256955884)

**ARTICLE 1   GENERAL PROVISIONS**

**§ 1.1 BASIC DEFINITIONS**

**THE CONTRACT DOCUMENTS**

...tract Documents consist of the Contractor's Bid Qualifications, Agreement between Owner and Contractor ... the Agreement or the Contract), Conditions of the Contract (General, Supplementary and other ...Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in ...reement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment ... Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written ...der for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the ...tract Documents do not include other documents such as bidding requirements (advertisement or invitation to ...Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding ...irements

**§ 1.2 THE CONTRACT**

...Con... shall form the Contract for Construction. The Contract represents the entire and integrated ...nent... ...reto and supersedes prior negotiations, representations or agreements, either written ...or... may be ...ended or modified only by a Modification. The Contract Documents shall not be ...ned... a... ...l relationship of any kind (1) between the Architect and Contractor, (2) between the ...O... a... ...Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons ...o... a... ...er and Contractor. The Architect shall, however, be entitled to performance and ...n... the Contract intended to facilitate performance of the Architect's duties.

**THE WORK**

...term Work ...ans ...struction and services required by the Contract Documents, whether completed or ...completed... ...des all other labor, materials, equipment and services provided or to be provided by ...ontractor to ... Contractor's obligations. The Work may constitute the whole or a part of the Project.

**THE PROJECT**

...the ...struction of which the Work performed under the Contract Documents may be the whole ...clude construction by the Owner or by separate contractors.

**THE DRAWINGS**

...Drawings ...phic an... ...d portions of the Contract Documents showing the design, location and ...ns of the Work, gener... ...ding plans, elevations, sections, details, schedules and diagrams.

**THE SPECIFICATIONS**

...ifications are that part... ...the Contract Documents consisting of the written requirements for materials, ...stems, stand... ...manship for the Work, and performance of related services.

**THE PROJECT MANUAL**

...Project Manual... ...me assembled for the Work which may include the bidding requirements, sample forms, Cond...ons... ...s and Specifications.

§ 1.1.8 "..." shall mean those entities set forth in SCHEDULE I to these General Conditions and their ...pective... affiliates, officers, boards of directors, agents and employees provided, however, that ...withstan... ...g herein to the contrary, Contractor shall not be deemed to have Indemnified any party with ...sign respon... ...gainst any liability resulting from their having produced or provided any faulty or negligent designs.

..."...ist" is limited to, uncompleted and unacceptable items of the Work (a) which do not interfere with ...ancy of any part of the Project for its intended purpose and (b) which, as a group, are capable of ...by the Contractor within 60 days of issuance of any Punch List.

§ 1.1.10    "Substantial Completion" shall have the meaning set forth in Section 9.8 of the General Conditions.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2266955884)

08CV3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC

## § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

... all materials or labor for Work that is shown in or on the Contract Documents or which are reasonably ... therefrom as being necessary to produce finished Work shall be provided by Contractor, whether or not the Work is expressly covered in the Drawings and Specifications. The Contract Documents are complementary, and ... required by one shall be as binding as if required by all. Where compliance with two or more requirements ... indicated in the Contract Documents and where these requirements provide conflict in quantity or quality, Contractor shall comply with the most stringent requirements for quality and provide the greatest quantity unless specifically indicated ... wise in the Contract Documents. In addition, where provisions in two or more of the Contract Documents ... conflict, the more detailed provision shall control over the more general provision. It is the ... of the ... Contract ... ments that they shall be construed to require a high quality of workmanship and include ... items n... essary ... produce the results intended by the Contract Documents.

§ 1.2.1 ... the ... differences or conflicts between the requirements of the manufacturer's instructions or ... specifications and ... sections of the Specifications, the more stringent and more detailed and precise ... provided Contractor shall not be required to adhere to any requirements that may cause ... voided or diminished.

§ ... Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall ... dividing the Work among Subcontractors or in establishing the extent of Work to be ...

§ 1.2.3 Unless otherwise ... in the Contract Documents, words which have well-known technical or constructions ... are used in the Contract Documents in accordance with such recognized meanings.

... or sections of the Work are completely detailed on the Drawings and Specifications and ... which are essentially of the same construction are shown in outline only, the complete ... shall apply to the Work which is shown in outline form.

... duplication of Work, conflict or discrepancy is intended by the Contract Documents and any such ... discrepancy specified shall not become a basis for an increase in the Contract Sum.

... (deleted)

## ... DEFINITIONS

... ms capitalized in these General Conditions include those which are (1) specifically defined herein or in the ... Contract Documents ... titles of numbered articles, or (3) the titles of other documents published by ... American Institute of Architects ...

## ... INTERPRETATION

§ 1.4.1 In the ... the Contract Documents frequently omit modifying words such as "all" and "any" and ... articles such as ... but the fact that a modifier or an article is absent from one statement and appears in another ... intended to affect the interpretation of either statement.

## ... 5 EXECUTION OF CONTRACT DOCUMENTS

§ 1.5.1 The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

... of the Contract by the Contractor is a representation that the Contractor has visited the site, ... with local conditions under which the Work is to be performed and correlated personal ... requirements of the Contract Documents. By execution of the Contract, the Contractor represents ... is applicable, covenants and agrees) that:

(a) (i) Contractor has carefully examined the Drawings, Specifications, and information provided by Owner pursuant to Section 2.2.3 (the "Survey"); (ii) the Drawings, Specifications and Survey are sufficient in content and detail to complete the Work in accordance with the Contract Documents and to enable Contractor to complete the Work with all

EXHIBIT
A3

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2256955884)

appurtenant improvements as shown or specified from the Contract Documents and consistent with the Contract Documents without the need for any change to the Contract Sum, the construction schedule or the Dates of Substantial ........, and Contractor is aware of no errors, ambiguities, discrepancies, conflicts or omissions in the Contract ..... which will require work that is not included in the Contract Sum. The foregoing is not intended to imply or ......... design responsibility on the Contractor. The Contract Sum includes any work mentioned in the Specifications but not shown on the Drawings, or shown on the Drawings but not mentioned in the Specifications.

..... the Contractor's prosecution of the Work shall be controlled by existing conditions at and around the Site and all ..... and protective measures necessary to keep and leave the premises surrounding the Site in the same condition as ..... were before commencing Work shall be done by Contractor without any addition to the Contract Sum or change in ..... construction schedule or Dates of Substantial Completion. Except to the extent otherwise provided by law, .......ractor ...... not be responsible for sinking, settling or cracking of improvements not located on the Site.

..... Contractor has reviewed the Survey and all geotechnical information provided by Owner.

..... Contractor ... reviewed the Contract Documents (i) to establish construction means, methods, techniques, ..... (ii) to establish safety precautions and programs in connection with the Work, and (iii) to ......... building permits, which shall be obtained by Owner), or other approvals from ......... required to perform the Work.

..... Work ........ and materials required with regard to site conditions that have been discovered by .....

§..... OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
..... and other documents, including those in electronic form, prepared by the ..... consultants are Instruments of Service through which the Work to be executed by the ......... The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub.......... or equipment supplier shall own or claim a copyright in the Drawings, Specifications ......... by the Architect or the Architect's consultants, and unless otherwise indicated the .......'s consultants shall be deemed the authors of them and will retain all common law, ..... and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the ......... be returned or suitably accounted for to the Architect, on request, upon completion of ..... Work ......... Specifications and other documents prepared by the Architect and the Architect's ......... copies thereof ........ to the Contractor, are for use solely with respect to this Project. They are not to ..... the Contractor, any Subcontractor, Sub-subcontractor or material or equipment supplier on other ......... to this Project outside the scope of the Work without the specific written consent of the ......... and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material ..... suppliers are ......... use and reproduce applicable portions of the Drawings, Specifications and ......... prepared by the Architect and for use in the ......... of their Work under the Contract Documents. All copies made under this authorization shall bear the ......... copyright ..... may, shown on the Drawings, Specifications and other documents prepared by the Architect and the ......... consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in con......... this Project is not to be construed as publication in derogation of the Architect's or Architect's ......... consultants' copyrights or other reserved rights.

ARTICLE 2 ....
§ .... GENERA....
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have ......... to bind the Owner with respect to all matters requiring the Owner's approval or authorization (the ................tative"). Except as otherwise provided in Section 4.2.1, the Architect does not have such ......... t the Owner's Representative.. The term "Owner" means the Owner or, as agent of the Owner, the ......... tative; provided, however, the Owner's Representative shall not have any personal liability to Contractor under the Contractor Documents. Until otherwise notified in writing by Owner, Contractor shall route all communications, notices and submittals to the Owner's Representative in triplicate. The Owner's Representative shall have all of the Owner's authority to reject any portion of the work that does not conform to the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                          (2256955884)

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information ⬛⬛⬛⬛ and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such ⬛⬛⬛⬛ shall include a correct statement of the record legal title to the property on which the Project is located, ⬛⬛⬛ referred to as the site, and the Owner's interest therein.

⬛⬛ FORMATION AND SERVICES REQUIRED OF THE OWNER
⬛⬛ 1 Intentionally omitted.

⬛ 2.2 Except for per⬛⬛ and fees, including those required under Section 3.7.1, which are the responsibility of the ⬛⬛tractor ⬛⬛ the ⬛⬛tract Documents, the Owner shall secure and pay for necessary approvals, easements, ⬛ssessment⬛ and charge⬛ ⬛⬛quired for construction, use or occupancy of permanent structures or for permanent ⬛⬛nges in ⬛⬛ting ⬛⬛⬛.

⬛ 2.3 T⬛⬛ ⬛⬛ ⬛⬛ surveys describing physical characteristics, legal limitations and utility locations for ⬛⬛ site ⬛⬛ ⬛⬛⬛⬛⬛ description of the site. The Contractor shall be entitled to rely on the accuracy of ⬛⬛for⬛⬛ ⬛⬛ ⬛⬛ by ⬛⬛ ⬛⬛ner but shall exercise proper precautions relating to the safe performance of the ⬛⬛r⬛

⬛ ⬛⬛for⬛⬛ion ⬛⬛ ⬛⬛⬛ required of the Owner by the Contract Documents shall be furnished by the Owner ⬛⬛ ⬛⬛⬛⬛ ⬛⬛⬛⬛ ⬛⬛. ⬛⬛ other information or services relevant to the Contractor's performance of the ⬛⬛ ⬛⬛ ⬛⬛ Co⬛⬛ ⬛⬛⬛ shall be furnished by the Owner after receipt from the Contractor of a written ⬛⬛ ⬛⬛⬛ ⬛⬛⬛⬛ ⬛⬛⬛⬛ services.

⬛ ⬛⬛⬛ ⬛⬛⬛⬛ ⬛⬛ ⬛⬛⬛ ⬛ in the Contract Documents, the Contractor will be furnished, free of charge, one ⬛⬛ ⬛⬛producible ⬛⬛ ⬛⬛⬛ of the Drawings and twelve (12) copies of the Project Manuals. Additional sets ⬛⬛ ⬛⬛ ⬛⬛ ⬛⬛ ⬛⬛⬛⬛ reproduction, postage and handling as determined by the Architect. The Contractor ⬛⬛ ⬛⬛ ⬛⬛⬛⬛ of the Drawings and Project Manuals to each entity or person required to have such ⬛⬛ ⬛⬛⬛⬛ ⬛⬛⬛ only be printed from the above mentioned set of reproducible transparencies.

⬛ ⬛⬛⬛⬛'S RIGHT TO STOP THE WORK
⬛⬛ ⬛⬛ to correct Work which is not in accordance with the requirements of the Contract ⬛⬛⬛ ⬛⬛⬛ Section ⬛⬛ ⬛⬛ fails to carry out Work in accordance with the Contract Documents, the ⬛⬛ ⬛⬛ a written order ⬛⬛ Contractor to stop the Work, or any portion thereof, until the cause for such ⬛⬛ order ⬛⬛⬛ ⬛⬛⬛⬛ ho⬛⬛⬛ the right of the Owner to stop the Work shall not give rise to a duty on the part ⬛⬛ ⬛⬛ ⬛⬛ner ⬛⬛ ⬛⬛⬛ the right for the benefit of the Contractor or any other person or entity, except to the extent ⬛⬛ ⬛⬛ in Section 6.1.3.

⬛ ⬛⬛⬛'S RIGHT TO O⬛⬛ THE WORK
⬛⬛1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and ⬛⬛ within ⬛ forty ⬛⬛ ⬛⬛ period after receipt of written notice from the Owner to commence and continue correction ⬛⬛ ⬛ch ⬛⬛ ⬛⬛ ⬛⬛ct with diligence and promptness, the Owner may after such forty-eight hour pe⬛⬛, without prejudice ⬛⬛ ⬛⬛ remedies the Owner may have, correct such deficiencies. In such case an ⬛⬛propriate ⬛⬛ ⬛⬛ Order may be issued deducting from payments then or thereafter due the Contractor the ⬛⬛asonable ⬛⬛ ⬛ correcting such deficiencies, including Owner's expenses and compensation for the Architect's ⬛⬛ditional ⬛⬛ ⬛⬛ ⬛⬛ necessary by such default, neglect or failure. If payments then or thereafter due the ⬛⬛ontractor a⬛⬛ ⬛⬛ sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

⬛⬛TICLE 3 CONTRACTOR
⬛⬛ ⬛⬛ ⬛⬛ ⬛⬛ctor is the person or entity identified as such in the Agreement and is referred to throughout the ⬛⬛⬛⬛ ⬛⬛ ⬛⬛ts as if singular in number. The term "Contractor" means the Contractor or the Contractor's ⬛⬛ ⬛⬛ ⬛⬛⬛entative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                          (2256955584)

**§ 3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

**REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR**

**§ 3.2.1** Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

**§ 3.2.2** Any errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

**§ 3.2.3** If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Sections 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations.] The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

**SUPERVISION AND CONSTRUCTION PROCEDURES**

**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage. The Contractor shall review any specified construction or installation procedure, including those recommended by any product manufacturer or supplier. The Contractor shall advise the Architect a) if the specified procedure deviates from good construction practice; (b) if following the procedure will affect any warranties; or (c) of any objections which the Contractor may have to the procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**§ 3.3.4  Staff/Personnel**

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955884)

14

§ 5.3.3.4.1 Contractor shall furnish a competent and adequate staff as necessary for the proper administration, _____, supervision and superintendence of the Work; organize the procurement of all materials and _____ so that they will be available at the time they are needed for the Work; and keep an adequate force of _____ workers on the job to complete the Work in accordance with all requirements of the Contract Documents.

§ _____2 Contractor's project manager shall have full responsibility for the execution of the Work, with full _____ on behalf of Contractor to act in all matters as necessary for the proper coordination, direction and _____ administration of the Work and shall attend meetings at such place or places as shall be decided by the _____ or Architect in ____ er to render reports on the progress of the Work.

§ ___3.4.3 Supervisor____ members of Contractor's staff listed on SCHEDULE II hereto (the "Contractor _____ _____ n___ __ changed, nor shall their duties, level of effort, or responsibilities with respect to the Project _____ _____ without the written consent of Owner unless such person leaves the employ of Contractor, __ which ___ _____ must first be approved in writing by Owner. Without limitation of the foregoing, _____ _____ __ _____ or will change any of the members of its staff at the request of Owner if, in Owner's _____ ___ _____ __'s performance does not equal or exceed the level of competence which may be _____ ___ __ __ performing such duties on behalf of a fully competent, first-class contractor, or if the acts or ____ ___ _____ __ __ detrimental to the progress of the Work.

§ ___ _____ ___ pro____ qualified personnel acceptable to Owner who shall, among other things, be _____ ___ ____ ___ __ architectural, structural, mechanical and electrical shop drawings and details for _____ __ _____ ____ Work related to the Contractor's Work; checking for any conflict or interference of Work ___ _____ ___ __ with another.

§ 3.4 _____ AND __ _____
§ 3.___ ___ _____ pro____ in the Contract Documents, the Contractor shall provide and pay for labor, _____ ___ _____ _____ construction equipment and machinery, water, heat, utilities, transportation, and other f____ ____ ___ _____ ___ _____ for proper execution and completion of the Work, whether temporary or permanent ___ _____ __ _____ __ corporated or to be incorporated in the Work.

§ __ ___ _____ ___ ___ make substitutions only with the consent of the Owner, after evaluation by the Architect __ ___ ___ _____ Change_____.

§ 3.4.__ _____ __ shall enfor___ strict discipline and good order among the Contractor's employees and other _____ _____ ___ __ ___ Contract. The Contractor shall not permit employment of unfit persons or persons not _____ _____ __ assigned to the ____.

§ __ 3.4.__ ____ Agreement ___ __ __ executed, the Owner and the Architect will consider a formal request for the _____ _____ of products in place of those specified only under the conditions set forth in the Specifications.

§ 3.4.4  Hours of ____ ___

§ 3.4.4.__ _____ shall be performed during the working hours described in Section 1.8(A) of Document No. 01100 _____ _____ __ I of the Specifications ("Regular Working Hours"), except that, in the event of emergency, __ when ___ __ complete the Work within the individual time duration stated in the construction schedule, ___ Work may _____ _____ on night shifts, overtime, Sundays and holidays. Contractor shall neither be entitled to nor paid additional compensation for Work performed outside Regular Working Hours unless the necessity of _____ ___ ___ Work for which additional compensation is sought is not the result of the negligence or fault of _____ _____ _____ subcontractor at any tier or anyone directly or indirectly employed by any of them. Such _____ _____ ___ ___ shall include, but is not limited to the following: (a) failure to properly manage, sequence, direct, _____ _____ inister, or schedule the Work; (b) improper timing of activities; (c) defective construction; (d) failure __ _____ _____ nt labor forces for performance of Work; (e) failure to timely procure or provide materials or equipment required for performance of the Work; and (f) failure to perform the Work in an efficient and expeditious manner.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955884)

15

### § 3.5 WARRANTY

§ 3.5.1 The Contractor warrants to the Owner and Architect that: (a) the materials and equipment furnished under [the Contract] will be of good quality and new unless otherwise required or permitted by the Contract Documents, and [the materials free] from defects not inherent in the materials required or permitted by the Contract Documents; and (b) the [Work will] be free from defects in workmanship and will conform to the requirements of the Contract Documents. Work (including materials and equipment) not conforming to these requirements, including substitutions not [properly] approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for [damage] or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect or the [Owner, the Contractor shall] furnish satisfactory evidence as to the kind and quality of materials and equipment. [These] warranties [are not the] exclusive remedy of the Owner and the Owner shall have all other equitable and legal rights [which it] is entitled to at or under the Contract Documents.

§ 3.5.1.1 [Upon substantial] completion of the Work, Contractor shall submit to the Owner and the Architect a written [certificate or] Certification setting forth the foregoing warranty in form acceptable to Owner.

§ 3.5.[1.2 ...] the warranties provided for in Section 3.5.1 and elsewhere in this Contract shall be [assignable ... to interested] parties without obtaining Contractor's consent to such assignments; provided, [however, that ...] that no assignment shall be necessary to cause any warranty or guarantee to inure to [the benefit of ... directly] by Owner and Owner's successors and assigns.

§ 3.5.[1.3 ... the warranty] periods set forth in this Section 3.5 or Section 12.2 shall not be advanced or [... in the event that] Contractor uses portions of the Work, including, but not limited to, the electrical, [mechanical, plumbing and] ventilating systems, prior to when such warranty period would otherwise commence. [... permanent] systems for which the Contractor has elected to use on a temporary basis, [such as ... but not limited to passenger] and freight elevators, will not begin until Contractor has completed [... restored] these systems to like new condition (including making a change of all [... and turned] the systems over to Owner for permanent use or operation by Owner, or the [... occupancy ... operation, whichever] is later.

§ 3.5.[1.4 In the event that a defect] arises which is covered by a warranty provided under the Contract Documents, [... to whom the warranty runs,] the warranty shall be deemed to run to all affected parties.

### § 3.6 [TAXES]

§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor [which are legally enacted when] bids are received or negotiations concluded, whether or not yet effective or merely [scheduled to go into] effect.

§ 3.6.[2 ... the location of the] Project in a State of Illinois Enterprise Zone, the Owner is exempt from sales tax [on products] and materials permanently incorporated in the Project. Accordingly, in purchasing products and [materials for incorporation in] the Project, Contractor shall take such actions as are necessary to ensure that the Owner is [not obligated to pay] sales tax on such products and materials and, correspondingly, that no such sales tax [is part of the Contract Sum. Such] actions shall include, without limitation, the following: (a) obtaining a sales tax exemption [certificate] number from the Owner; (b) placing the exemption certificate number on invoices for materials [to be incorporated] in the Project; (c) furnishing a copy of all such invoices to Owner; (d) upon final completion [of the Work,] and as a condition of final payment of the Contract Sum, providing to Owner the Contractor's [written] statement that all purchases made under the exemption certificate were entitled to be exempt; and (e) paying any legally assessed penalties for any improper use of the exemption certificate number.

### § 3.7 [PERMITS, FE]ES AND NOTICES

§ 3.7.1 [The Contractor shall] procure the building permit, the cost of which shall be included in the Contract Sum. Unless [otherwise provided in the] Contract Documents, the Contractor shall secure and pay for the other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256965884)

**§ 3.7.2** The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work. The Owner delegates to the Contractor ▓▓▓▓▓▓ and responsibilities the Owner may have pursuant to any statute, ordinance or regulation requiring ▓▓▓▓▓▓▓▓ of adjacent or nearby property owners of proposed excavations. The Contractor shall, as part of the ▓▓▓▓▓ give such notices as required, provide all lateral and subjacent support necessary to prevent any damage to ▓▓▓▓▓ or nearby property owners and shall be solely responsible to pay for any damage incurred by reason of ▓▓▓▓▓tions by such property owners. If entry on or encroachment upon adjoining property or public right of way is necessary to perform the Work, the Contractor shall obtain any necessary permissions, permits or licenses and pay ▓▓costs and fees there▓▓▓

**§ ▓7.3** If the ▓ntract▓▓ ▓▓serves that portions of the Contract Documents are not in accordance with applicable ▓▓s, statut▓▓ ▓rdinan▓▓ building codes, and rules and regulations ("Legal Requirements"), the Contractor shall ▓mptly ▓▓▓ the ▓▓▓tect and Owner in writing, and necessary changes shall be accomplished by appropriate ▓▓ification

**§ 7▓** ▓▓ ▓▓▓▓▓▓ ▓▓tions Work knowing it to be contrary to Legal Requirements without such notice to the ▓▓ch▓▓▓▓ ▓ Owner, ▓▓▓tractor shall assume appropriate responsibility for such Work and the cost attributable ▓▓ ▓▓▓▓ and ▓▓▓▓ ▓ ▓▓▓ in the Contract Sum.

**§ ▓ ALLOWANCES**
The ▓▓▓▓▓▓ shall include in the Contract Sum all allowances stated in the Contract Documents. Items ▓▓▓▓ ▓▓▓▓ ▓▓▓▓▓▓ supplied for such amounts and by such persons or entities as the Owner may direct, ▓▓ ▓▓▓ ▓▓▓▓▓ shall ▓▓ ▓ required to employ persons or entities to whom the Contractor has reasonable ▓▓▓▓ction.

**§ 3▓** ▓▓▓ ▓▓ ▓▓▓ provi▓▓d in the Contract Documents:
▓▓▓▓▓▓▓▓ ▓▓▓ ▓▓▓ cover the cost to the Contractor of materials and equipment delivered at the site and ▓▓ ▓▓▓ ▓▓▓es, less applicable trade discounts;
▓▓▓ ▓▓ ▓▓ ▓osts for unloading and handling at the site, labor, installation costs, overhead, profit and ▓▓▓▓ expenses contemplated for stated allowance amounts shall be included in the allowances;
▓▓▓▓▓ ▓▓▓s are more than or less than allowances, the Contract Sum shall be adjusted accordingly ▓▓ ▓▓▓▓ ▓rder. The ▓mount of the Change Order shall reflect (1) the difference between actual ▓▓ ▓▓▓▓ the allo▓▓▓ ▓▓ under Section 3.8.2.1 and (2) changes in Contractor's costs under Section ▓▓▓▓▓

**§ ▓** ▓▓▓▓▓ ▓▓ ▓▓▓ equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay ▓ ▓▓▓

**§ ▓ SUPERINTENDENT**
**§ ▓▓** The Contractor shall employ a full time, experienced and qualified superintendent, acceptable to Owner, and ▓▓▓▓▓ary ▓▓▓▓▓▓ ▓▓▓ ▓▓ ▓ in attendance at the Project site during performance of the Work. The superintendent shall ▓▓▓ ▓▓▓▓ ▓▓ Contractor, and communications given to the superintendent shall be as binding as if ▓▓▓▓ to the Contr▓▓▓▓ ▓▓ant communications shall be confirmed in writing. Other communications shall be ▓milarly ▓▓▓▓▓▓tion written request in each case. The Superintendent shall not be changed except with the ▓▓▓nsent of ▓▓▓▓ ▓▓▓which shall not be arbitrarily withheld; provided, however, that in the event of an emergency ▓▓sed by th▓ ▓▓▓▓▓tion of the Superintendent's employment, Contractor shall provide a substitute superintendent. The Contractor ▓▓▓ ▓▓t employ or continue to employ on the Work a superintendent against whom the Owner or Architect has made reasonable objection.

**§ ▓▓** ▓▓▓ ▓▓ctor shall employ during the progress of the Work a qualified mechanical/electrical coordinator ▓▓▓ ▓▓▓▓onsible for coordinating general, mechanical, and electrical portions of the Work, reviewing all ▓▓▓▓▓▓ ▓▓▓▓ to their submission to the Architect for approval, checking for compliance with Plans and ▓pecifications, and identifying conflicts and interferences between the Work of one section or trade with another.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES
**§ 3.10.1** The Contractor, at the time indicated in the Specifications, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes: (2256955884)

current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall ... r expeditious and practicable execution of the Work.

... Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which ... coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review ... als. The Contractor shall submit the schedule of submittals at the time indicated in the Specifications.

§ 3.10.3 The Contractor shall perform the Work in accordance with the most recent schedules submitted to the ... ner and Architect. ... Owner's or Architect's receipt of review of any schedule required by this Section 3.10 ... l not relie... the Con...ctor of its responsibility to complete the Work within the Contract Time.

§ 3.11 DOC...TS ...D SAMPLES AT THE SITE
§ 3.11.1 The ...tor ...all maintain at the site for the Owner one record copy of the Drawings, Specifications, ...tend...ce ...t ...her Modifications, in good order and marked currently to record field changes and ... tin...s ...d ...ion, and one record copy of approved Shop Drawings, Product Data, Samples and ... il... ... ...se shall be available to the Architect and shall be delivered to the Architect for ...h... ...t... ... ...completion of the Work.

§ 3.1... SHOP ...NGS, ... PRODUCT DATA AND SAMPLES
§ ... Sh... ... ... drawings, diagrams, schedules and other data specially prepared for the Work by the ... ... S...tor ...b-subcontractor, manufacturer, supplier or distributor to illustrate some portion of ... ...

§ ... Pro... Data ... ...strations, standard schedules, performance charts, instructions, brochures, diagrams ... ...r ...forma... ... ...he...by the Contractor to illustrate materials or equipment for some portion of the Work.

§ ... ...m...te p... ... examples which illustrate materials, equipment or workmanship and establish ... ...hi... ... will be judged.

§ ... ...on Dr... ...duct Data, Samples and similar submittals are not Contract Documents. The purpose of ... ...itt... ... ...trate for those portions of the Work for which submittals are required by the Contract ...n... ... ...ch the ...tor proposes to conform to the information given and the design concept ... ...h...e Contract Docum... ...Review by the Architect is subject to the limitations of Section 4.2.7. ...ation ... ...upon ...ch the Architect is not expected to take responsive action may be so identified in ...e ... ...mittals which are not required by the Contract Documents may be returned by the ...t ...without ... action.

§ ... ...he Contractor sh... ... for compliance with the Contract Documents, and submit to the Architect Shop ...ings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable ...mess and in s... ...ence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. ...mit... ...not marked as reviewed for compliance with the Contract Documents by the Co...actor may be re... ...Architect without action. For record keeping purposes, on all submittals the Contract... ...ndicate ...e date the Contractor received or created each submittal and the date it was transmitted to ...e Architec... ...chitect shall not be required to take any action on any submittal not showing such dates. Any ...bmittal ... ...mittal by the Contractor to the Architect constitutes a representation that the Contractor has ...viewed the ... ...hether or not such dating procedures are followed.

§ 3.12.6 ...By ...bmitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that ... ... ... determined and verified that the materials comply with the Contract Documents, field ... ... ...d field construction criteria related thereto, or will do so, and has checked and coordinated the ... ... ...ined within such submittals with the requirements of the Work and of the Contract Documents.

§ 3.12.7 The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                      (2256955884)

18

§ 3.12.8 The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop [...], Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect [...] of such deviation at the time of submittal and (1) the Architect has given written approval to the specific [...] as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be responsible for errors or omissions in Shop Drawings, Product [...] samples or similar submittals by the Architect's approval thereof, except to the extent imposed by sections [...] and 3.12.6. Delays caused by Contractor's failure to fulfill its obligations under this paragraph shall not [...]end the Completion Date.

§ 3.12.9 The Contractor [...] direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, [...]ples or [...]lar s[...]als, to revisions other than those requested by the Architect on previous submittals. In the [...]ence of [...]writ[...]ice the Architect's approval of a resubmission shall not apply to such revisions.

§ 3.12.1[...] [...] shall not be required to provide professional services which constitute the practice of [...] unless such services are specifically required by the Contract Documents for a portion of [...] or unless the Contractor needs to provide such services in order to carry out the Contractor's [...] means, methods, techniques, sequences and procedures. The Contractor shall not be [...] services in violation of applicable law. If professional design services or [...] professional related to systems, materials or equipment are specifically required of the [...] Documents, the Owner and the Architect will specify all performance and design criteria [...] the Contractor shall cause such services or certifications to be provided by a [...] professional, whose signature and seal shall appear on all drawings, calculations, [...]op Drawings and other submittals prepared by such professional. Shop Drawings [...] the Work designed or certified by such professional, if prepared by others, shall bear [...]approval when submitted to the Architect. The Owner and the Architect shall be entitled [...] accuracy and completeness of the services, certifications or approvals performed by such [...] the Owner and Architect have specified to the Contractor all performance and design [...] must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take [...] submittals only for the limited purpose of checking for conformance with information [...] the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the [...] or design criteria required by the Contract Documents.

§ [...] Nothing in this Agreement [...] whether stated or implied, shall give the Contractor responsibility for any [...] in the specific designs of the Architect.

§ [...] USE OF SITE

§ 3.[...] Contractor sh[...] [...]erations at the site to areas permitted by law, ordinances, permits and the [...] and sh[...] unreasonably encumber the site with materials or equipment.

§ [...] CUTTING AND P[...]ING

§ 3.14.1 The [...] responsible for cutting, fitting or patching required to complete the Work or to m[...] its parts fit toge[...]

§ 3.14.2 [...] or shall not damage or endanger a portion of the Work or fully or partially completed [...]tion [...] or separate contractors by cutting, patching or otherwise altering such construction, or by [...]avation. [...] [...]tor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably [...] The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's [...] or otherwise altering the Work.

§ [...] [...]UP

§ [...] [...]tractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. During the progress of the Work, the Contractor shall, at the end of each working day, remove from the Project waste materials and rubbish. The Contractor shall insure that no burning of trash or debris occurs on the site and that no dust or trash from Work in progress creates a public nuisance. The Contractor shall comply with all municipal and other government regulations concerning environmental pollution.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2256955884)

**19**

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost shall be charged to the Contractor.

### ▮▮▮ESS TO WORK

§ 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress ▮▮▮er located.  Contractor shall obtain, review for conformance with Project requirements, and submit full and ▮▮▮rate information in writing directly to Architect on any questions concerning quality, performance, delivery ▮▮tains and such other d▮▮a as may be requested by Architect.

### ▮17 ROYA▮▮ES, PA▮▮▮S AND COPYRIGHTS

§ 3.17.1 The ▮▮▮tractor ▮▮all pay all royalties and license fees. The Contractor shall defend suits or claims for ▮▮ingem▮▮ ▮copy▮▮▮▮ and patent rights and shall hold the Owner, Architect and the other Indemnitees harmless ▮▮ in loss ▮▮ ▮▮oun▮ ▮▮of, but shall not be responsible for such defense or loss when a particular design, process ▮ produ▮▮ ▮▮ a ▮▮▮ ▮▮nufacturer or manufacturers is required by the Contract Documents or where the ▮▮▮▮▮ ▮▮▮ ▮▮ ▮▮scribed in Drawings, Specifications or other documents prepared by the Owner or ▮▮▮▮ ▮▮ ▮▮▮tractor has reason to believe that the required design, process or product is an ▮▮▮▮ ▮▮ ▮▮▮▮ ▮ ▮ patent, the Contractor shall be responsible for such loss unless such information is ▮▮▮▮ ▮▮ ▮▮ ▮▮▮itect.

§ ▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮mitted by law, the Contractor shall indemnify, hold harmless (and, if requested by ▮▮▮▮▮ ▮▮▮ ▮▮▮ment of counsel reasonably acceptable to the requesting Indemnitee) (Contractor's ▮ouse, C▮▮▮▮ ▮▮all ▮▮ ▮▮▮ed acceptable) the Indemnitees from and against claims, damages, losses, fines, ▮▮▮▮▮and▮▮▮ ▮▮ns▮▮ing but not limited to attorneys' fees, arising out of or resulting from performance of ▮▮▮ ▮▮ ▮▮vid▮▮ ▮▮ ▮uch claim, damage, loss, fine, penalty or expense is attributable to bodily injury, sickness, ▮▮ ▮▮ ▮▮▮ati▮▮ ▮▮▮ini▮▮ ▮▮ destruction of tangible property (other than the Work itself), but only to the extent ▮▮▮ ▮▮ ▮▮ ▮▮ ▮▮missions of the Contractor, a Subcontractor, anyone directly or indirectly employed ▮▮ ▮▮▮ ▮▮▮▮▮ ▮▮ ▮▮cts they may be liable, regardless of whether or not such claim, damage, loss or ▮▮ ▮▮▮ ▮▮ ▮▮▮ ▮▮ ▮ party indemnified hereunder. Such obligation shall not be construed to negate, ▮▮▮ ▮▮ ▮▮▮ ▮▮▮▮▮▮ ▮▮e or obligations of indemnity which would otherwise exist as to a party or person ▮▮▮▮▮ ▮▮ ▮▮ ▮▮▮ ▮▮▮6.

§ ▮▮▮ ▮▮laims against any ▮▮▮▮ ▮▮ ▮▮tity indemnified under this Section 3.18 by an employee of the Contr▮▮▮ ▮▮▮ ▮▮ction, anyone directly or indirectly employed by them or anyone for whose acts they may be ▮▮ ▮▮▮ ▮▮ ▮▮ ▮▮▮▮ obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of ▮▮▮ ▮▮ ▮▮ ▮ompensation or ben▮▮ ▮▮yable by or for the Contractor or a Subcontractor under workers' ▮o▮▮▮▮▮ ▮▮cts, disabil▮▮▮ ▮▮▮▮ ▮▮ ▮▮or other employee benefit acts.

### ▮▮▮    TRADE REGULATIONS

§ 3.20.1 W▮▮▮ev▮▮ ▮▮ ▮▮ ▮▮s of any section of the Drawings or Specifications conflict with any agreement or re▮▮lation of any ▮▮▮ ▮▮▮▮▮c in force among members of any trade associations, unions or councils which ▮egulate▮ ▮▮▮ ▮▮ ▮lish what work shall or shall not be included in the work of any particular trade, Contractor shall ▮ake all ▮▮▮ ▮▮▮ ▮rrangements to reconcile any such conflict.

§ 5.20.2 In cas▮▮ ▮▮ progress of the Work may be affected by any delay in furnishing or installing any items of material or equipment required under the Contract Documents because of a conflict involving any agreement or ▮▮▮▮ ▮▮ ▮▮▮ type described in Section 3.20.1, Contractor shall notify Architect and Owner of the conflict and

▮▮▮ ▮▮ ▮▮ay require that other materials or equipment of equal kind and quality be provided to overcome the ▮▮▮ ▮▮▮ ▮▮ ▮thout adjustment of the Contract Sum, except as otherwise provided in the Contract Documents.

### § 3.21 NO ASSIGNMENT

§ 3.21.1 The Contractor shall not assign to any party the whole or any part of the Agreement, or any monies due or to become due hereunder, without written consent of the Owner.  In case the Contractor, with Owner's consent,

AIA Document A201™ – 1997.  Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.  Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                            (2250955884)

assigns all or any part of this contract or any monies due or to become due hereunder, the instrument of assignment shall contain a clause substantially to the effect that the right of the assignee in and to any monies due or to become _____ Contractor shall be subject to the prior claims of all persons, firms and corporations for services rendered _____ is supplied for the performance of the Work called for in the Agreement.

**ARTICLE 4  ADMINISTRATION OF THE CONTRACT**
____ARCHITECT
____ The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified ___ such in the Agreement and is referred to throughout the Contract Documents as if singular _____umber. The term "_____itect" means the Architect or the Architect's authorized representative. Duties, _____ responsibilit___ and lim___tions of authority of the Architect as set forth in the Contract Documents shall not be _____icted, _____ified ___ ___ended without written consent of the Owner and Architect.

____ In _____ ___ployment of the Architect is terminated, the Owner shall employ a new Architect whose status ____ th___ __ ___ ___chitect shall be that of the former Architect.

___ ___ ___ _____ ___MINI_____ATION OF THE CONTRACT
___ ____ ___ ____ __ ____ide administration of the Contract in accordance with its agreement with Owner and as ___ ____ ___ ____ _____cuments (1) during construction, (2) until final payment is due unless a different ____ __ ____ ___ ____ terms of the Owner's agreement with the Architect, and (3) with the Owner's _____ ___ _____ ___ during the one-year period for correction of Work described in Section 12.2. The _____ ___ ___ ____ __ ___ act on behalf of the Owner only to the extent provided in the Contract Documents, __ __ __ _____ _____ ___ ____ ing in accordance with other provisions of the Contract. Contractor shall not be the _____ ___ __ ___ wit__ ___ ___ event of any questions or ambiguities in the drawings, the Architect shall be ____ ___. Contra____ __ ___ written interpretations to the Contractor and the Owner's Representative.

___ ___ ___ Arch____ __ ____ ___resentative of the Owner, will visit the site at intervals appropriate to the stage of the ___ ___ ___ ___ ____ ____ ___ become generally familiar with and to keep the Owner informed about the progress ___ ___ ___ ___ the ___ ___ ___ the Work completed, (2) to endeavor to guard the Owner against defects and ___ ___ ___ ___ ___ ___ ___ and (3) to determine in general if the Work is being performed in a manner indicating that ___ ___ when full___ ___pleted, will be in accordance with the Contract Documents. However, the Architect will ___ ___ ___ ___ ___nsive or continuous on-site inspections to check the quality or quantity of the Work. __ Architect ___ ___ ___ have co___ ___ over or charge of, nor be responsible for, the construction means, methods, ___ ___ ___quences or proce___ ___ ___, or the safety precautions and programs in connection with the Work, since ___ ___ ___ ___ntra____ sole rights and responsibilities under the Contract Documents, except as provided in ___ ___ 3__.

___ ___ ___ Architect will ___ ___ ___ ___sible for the Contractor's failure to perform the Work in accordance with the ___ ___ ___ the contra___ ___ ___ments. The Architect will not have control over or charge of and will not be ___ ___sible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other ___ ___ ___ or entities ___ ___ing ___ portions of the Work.

§ ___ ___ Communicatio___ ___ ___ting Contract Administration. The Owner and Contractor shall not necessarily ___ ___ ___ ___ each other through the Architect about matters arising out of or relating to the Contract, but shall ___ ___ the ___ ___ ___ormed of their communications. Communications by and with the Architect's consultants shall __ ___ through ___ ___ ___. Communications by and with Subcontractors and material suppliers shall be through the ___tractor. Co___ ___ ___ions by and with separate contractors shall be through the Owner. The foregoing provisions notwithstanding, the Owner and Contractor will communicate only through the Architect on issues of conformance __ __ ___ Contract Documents.

___ ___ ___ ___ the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review ___ ___ ___ ___ ___mounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                      (2256955884)

not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing ... of the Work.

... the Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with ... ation given and the design concept expressed in the Contract Documents. The Architect's action will be taken ... in ten (10) business days of receipt of such submittals, so as to cause no delay in the Work or in the activities of ... Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional ... ment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the ... acy and completeness of other details such as dimensions and quantities, or for substantiating instructions for ... allation ... performance of equipment or systems, all of which remain the responsibility of the Contractor as ... ired by ... Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the ... ract ... of ... obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval ... of ... the construction means, methods, techniques, sequences or procedures. The Architect's ... rov ... component ... not indicate approval of an assembly of which the item is a component.

... Architect will ... are Change Orders and Construction Change Directives, and may authorize minor ... in the ... as provided in Section 7.4.

... The ... will conduct inspections to determine the date or dates of Substantial Completion and the date ... Completion, will receive and forward to the Owner, for the Owner's review and records, written warranties ... d ... red ... required by the Contract and assembled by the Contractor, and will issue a final Certificate ... Payment ... om ... with the requirements of the Contract Documents.

... the Owner and Architect agree, the Architect will provide one or more project representatives to assist in ... the ... responsibilities at the site. The duties, responsibilities and limitations of authority of ... representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

... Architect ... make initial interpretations relating to performance under and requirements of, the ... on ... on request of either the Owner or Contractor. The Architect's response to such requests ... an any time limits agreed upon or otherwise with reasonable promptness. but the ... and promptly within agreed time limits is not an Excusable Event of Delay.

... 2 ... of the Architect will be consistent with the intent of and reasonably inferable from the ... Documents and will be in writing or in the form of drawings. When making such interpretations and initial ... the Architect will ... to secure faithful performance by both Owner and Contractor, will not show ... either ... and will ... for results of interpretations or decisions so rendered in good faith.

... graph deleted)

**§ 4.3 CLAIMS AND ...**

§ ... .1 Definition. ... emand or assertion by one of the parties seeking, as a matter of right, adjustment ... interpret ... Contract terms, payment of money, extension of time or other relief with respect to the terms of ... Contr ... "Claim" also includes other disputes and matters in question between the Owner and ... ontractor ... of or relating to the Contract. Claims must be initiated by written notice. The responsibility to ... substantiate ... shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event ... Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, ... and whether or not any impact on cost or time has then been determined. Claims must be initiated ... to the Architect and the other party.

§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments of undisputed amounts in accordance with the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117492_1 which expires on 5/7/2005, and is not for resale.
User Notes:      (2256955884)

**§ 4.3.4 Claims for Concealed or Unknown Conditions.** If subsurface or otherwise concealed and unknown conditions (other than Hazardous Materials, which are covered by Section 10.3 below) are encountered at the site which delay, or cause an increase in the Contractor's cost of, the Work and which: a) differ materially from those indicated in the Contract Documents and b) are (i) of an unusual nature, (ii) differ materially from those ordinarily found to exist in the general area where the site is located, and (iii) are not generally recognized as inherent in construction activities of the character provided for in, or contemplated by, the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than five (5) business days after the first observance of the conditions. A subsurface or otherwise concealed and unknown condition that is encountered at the site and that satisfies the requirements of the immediately preceding clause (a) and clause (b) is referred to herein as a "Qualifying Concealed Condition." The Architect will promptly investigate such condition and determine whether the condition constitutes a Qualifying Concealed Condition. If the Architect shall notify the Owner and the Contractor of such determination in writing. If the Architect determines that the condition is a Qualifying Concealed Condition, the Architect will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the recommendation. If the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be subject to further proceedings pursuant to Section 4.4.

**§ 4.3.5 Claims for Additional Cost.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

**§4.3.6** There shall be no changes in the Contract Sum without a Change Order.

**§4.3.6.1** Within twenty-one (21) days after the occurrence of an event that the Contractor believes involves additional costs (other than costs associated with an Excusable Event of Delay which are to be addressed as set forth in Section 4.3.7), the Contractor shall submit a written notice (the "Additional Cost Notice") to the Owner and the Architect properly labeled as an Additional Cost Notice, which shall contain sufficient information to inform the Owner and the Architect of the occurrence of an event involving additional costs. Such timely submission shall be a prerequisite to any changes in the Contract Sum. The Additional Cost Notice is a notice in addition to the notice required under Section 4.3.4.

**§4.3.6.2** Within thirty (30) days after the occurrence of an event that the Contractor believes involves additional costs, the Contractor shall submit an "Additional Cost Claim." The Additional Cost Claim shall set forth a detailed explanation for the additional costs. The Additional Cost Claim shall also indicate the modification requested by the Contractor, if any, to the Contract Sum.

**§4.3.6.3** Any claim for an adjustment of the Contract Sum must be made through both a timely Additional Cost Notice and a timely Additional Cost Claim. If the Contractor fails to provide a proper Additional Cost Claim within the thirty (30) day period set forth above, Contractor's entitlement to an adjustment in the Contract Sum, if any, shall be waived.

**§4.3.7** There shall be no changes in either the construction schedule or Milestone Dates without a Change Order. The time of completion shall not be extended by Change Order or otherwise as a result of the delay or failure of Architect or Owner's Representative to respond to a request or inquiry of Contractor unless Owner has been given two (2) business days' notice that such response is overdue.

**§4.3.7.1** Within seven (7) days after the occurrence of an Excusable Event of Delay, the Contractor shall submit a written notice (the "Delay Notice") to the Owner and the Architect properly labeled as a Delay Notice, which shall contain sufficient information to inform the Owner and the Architect of the occurrence of an Excusable Event of Delay. Such timely submission shall be a prerequisite to any changes in the construction schedule or Milestone Dates. The Delay Notice is in addition to the notice required under Section 4.3.4.

**§4.3.7.2** Within fourteen (14) days after the occurrence of an Excusable Event of Delay, the Contractor shall submit a "Delay Claim." The Delay Claim shall set forth a detailed explanation for the delay, shall set forth the Contractor's programs for restoring the Work to the construction schedule and for mitigating any adverse effects of

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                                  (2256855884)

the projected delay. The Delay Claim shall also indicate the Modification requested by the Contractor, if any, of the construction schedule or Milestone Dates. Each Delay Claim shall also indicate the reasons that the Contractor considers the delay to constitute an Excusable Event of Delay.

§4.3.7.3 Any claim for an adjustment of the construction schedule or Contract Time must be made through both a timely Delay Notice and a timely Delay Claim. If the Contractor fails to provide a Delay Notice within the seven (7) day period set forth above, but provides the Delay Notice before the expiration of the fourteen (14) day period within which to file a Delay Claim, the Contractor's entitlement to an extension of time, if any, shall be reduced by the number of days that the Delay Notice was tardy. If the Contractor fails to provide a proper Delay Claim within the fourteen (14) day period set forth above, Contractor's entitlement to an extension of time or additional compensation, if any, shall be barred.

§4.3.7.4 If the Contractor complies with the requirements of Section 4.3.7, and the events of delay shall be an Excusable Event of Delay, the construction schedule, Milestone Dates and/or Contract Time, as applicable, shall be modified by Change Order by the number of days which such events actually caused such dates or Schedule to be extended after taking into consideration schedule float and the timeliness of the Delay Notice. No Change Order shall extend the Dates of Substantial Completion or increase the Contract Sum if the impacted tasks are not then on the Critical Path. However, Contractor shall not receive any extension of time pursuant to this Article unless the amount of any approved extension of time first absorbs all float as identified in the current construction schedule.

§ 4.3.8 Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

*(Paragraphs deleted)*

§4.3.9 Unit Prices shown on Exhibit C. If the quantities of such items or workthat were originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or the Contractor, the applicable unit prices shall be equitably adjusted.

*(Paragraphs deleted)*

§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES
§ 4.4.1 Claims, including those alleging an error or omission by the Architect but excluding those arising under Section 10.3 , shall be referred initially to the Architect for review. An initial interpretation by the Architect shall be required as a condition precedent to litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no interpretation having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner. In the event of a dispute or disagreement between the Contractor and the Owner's Representative, or the Contractor and the Architect, the Contractor shall advise the Owner's Executive Director and ask him or her to mediate such dispute.

§ 4.4.2 The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) indicate disagreement the Claim in whole or in part, (3) indicate agreement with the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect advises that it would be inappropriate for the Architect to review the Claim. If the Architect shall fail to take action on a Claim for thirty (30) days, the Claim shall not be acted upon thereafter by Architect.

§ 4.4.3 In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes: (2258955884)

24

**§ 4.4.4** The Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, or by mediation.

**§ 4.5 MEDIATION**
**§ 4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to the institution of legal or equitable proceedings by either party.

**§ 4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a suit but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**§ 4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 4.6 ARBITRATION**
**§ 4.6.1** There shall be no arbitration of any Claim or dispute.

*(Paragraphs deleted)*

**ARTICLE 5  SUBCONTRACTORS**
**§ 5.1 DEFINITIONS**
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK**
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, within thirty (30) days after being awarded the contract, shall furnish in writing to the Owner and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect or the Owner will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955884)

§ 5.2.3 If the Owner or Architect has objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no objection.

§ 5.2.4 The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes objection to such substitute. Pursuant to the Third Party Agreements, the City of Chicago has the right to review all contracts, which includes contracts with Subcontractors. Contractor shall abide by all decisions with the City in exercising its rights under the Third Party Agreements to disapprove of any contracts or Subcontractors. Owner shall increase the Contract Sum and the Contract Time if any unanticipated City decisions impact either the Contract Sum or Contract Time.

§ 5.2.5  Contractor shall be responsible to Owner for all acts and omissions of the Subcontractors, all sub-subcontractors, and all contractors and material suppliers at any tier, including the agents and employees of each of the foregoing.

§ 5.2.6  Contractor shall cause any Subcontractors not normally employing union labor to make all provisions necessary (including, but not limited to, the employment of union labor) to avoid any resulting disputes with labor unions which could affect the progress of the Work and to be responsible for any delays, damages or extra costs caused by employment of such non-union labor. Such costs shall not increase the Contract Sum.

§ 5.2.7 All labor utilized by Contractor and Subcontractors shall, if performed by non-union members, be paid in accordance with State of Illinois prevailing wage laws.

### § 5.3 SUBCONTRACTUAL RELATIONS

§ 5.3.1 By appropriate agreement, in writing, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. The Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors. All subcontracts shall contain the following sentence: "The Owner is an intended third party beneficiary of this subcontract."

§ 5.3.2 All Subcontracts shall be in writing in form and substance substantially similar to the Contractor's Owner approved standard form subcontract, and shall specifically provide that the Owner is an intended third-party beneficiary of such Subcontract. Notwithstanding the foregoing, pursuant to that certain Empowerment Zone Agreement between the City and the Owner pertaining to the Project, all Subcontracts shall be subject to the review and approval of the City and the Illinois Department of Human Services.

§ 5.3.3 The Contractor shall include in its contractual arrangements with its Subcontractors provisions whereby the Subcontractor's warranties are for the benefit of the entities set forth in Section 3.5 and are directly enforceable by such entities. Such Subcontractor warranties shall be of the same duration as the warranty the Contractor is providing under Section 3.5 and shall commence to run as set forth in Section 9.8.5. The Contractor shall require each Subcontractor to execute and deliver a warranty of the Work to be performed by such Subcontractor, in the form described and shall otherwise be in form and substance satisfactory to the entity to whom the warranty is designated to run. The Contractor shall obtain such warranties from each Subcontractor and deliver two executed originals of each as set forth in Section 3.5. Subcontractor's warranties shall be enforceable directly by the

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                    (2256955884)

designated entity, its successors or assigns, as the case may be against each such Subcontractor and shall be in addition to any warranty provided by the Contractor herein. The warranties shall be executed by the respective Subcontractors not later than the date of payment to be made with Substantial Completion of the applicable Subcontract. The Contractor shall also obtain warranties with respect to all equipment and materials and personal property supplied with respect to the Work from the respective suppliers, at least as favorable as those generally supplied with respect to such equipment, materials and personal property by the suppliers thereof, which warranties shall be enforceable directly by the entity designated in Section 3.5 against such suppliers and shall be in addition to any warranty provided by the Contractor herein or by any Subcontractor. The Contractor shall bind copies of warranties together in a single volume, grouped by trade and properly indexed. The Owner shall have no obligation to make any payment with respect to the portion of the Work provided by any Subcontractor that has not delivered the warranties required of each Subcontractor.

### § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

    .1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

    .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

Upon such assignment, Owner shall indemnify Contractor against any and all claims of subcontractors whose subcontracts have been assigned by Owner to the extent such claims are for the non-payment of amounts due as a result of work performed after the date of such assignment.

### ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
§ 6.1.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Section 4.3.

§ 6.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised. The Completion Date shall not be extended as a result of the failure of Contractor to coordinate the Work with the activities of the Owner's own forces and of separate contractors unless the delay was caused solely by the Owner's own forces or contractors hired by Owner.

§ 6.1.4 Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12. Contractor shall provide reasonable storage space onsite for any contractors hired by Owner.

### § 6.2 MUTUAL RESPONSIBILITY
§ 6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:36:25 on 12/03/2004 under Order No.1000177492_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2256955884)

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor. If Contractor claims that delay or additional costs are involved because of a separate contractor's work, Contractor must make such Claim as provided in Article 4.3 of these General Conditions in sufficient time to allow Owner to cease separate contractor's work and avoid the claim.

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

§ 6.3 OWNER'S RIGHT TO CLEAN UP
§ 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

ARTICLE 7   CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner (and the Owner's Representative) and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner (which term, for these purposes, does not include the Owner's Representative), Contractor and Architect, stating their agreement upon all of the following:
    .1    change in the Work;
    .2    the amount of the adjustment, if any, in the Contract Sum; and
    .3    the extent of the adjustment, if any, in the Contract Time.

Costs for insurance at a rate of 4%, bond at a rate of $9.25/$1,000 and Subguard at a rate of $11.00/$1,000 will be considered costs of change.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.2.3 Requests for Change Order submitted by the Contractor shall be on a form provided by Owner and shall specify the amount of additional labor or materials required and the price for such labor and materials.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2256955884)

## § 7.3 CONSTRUCTION CHANGE DIRECTIVES

§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner, the Owner's Representative and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner or Owner's Representative may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, and, if appropriate, the Contract Sum and Contract Time being adjusted accordingly. Costs for insurance at a rate of 4%, bond at a rate of $9.25/$1,000 and Subguard at a rate of $11.00/$1,000 will be considered costs of change.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Time or the Contract Sum, it must be signed by the Owner and not the Owner's Representative. If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

§ 7.3.3.1 By estimating and acceptance of a lump sum. The Contractor shall submit change proposals which include a complete itemization of quantities of materials, unit cost of materials when applicable, unit labor cost for each item of Work or total labor hours and applicable hourly rates for each classification of labor, actual cost of social security, welfare funds, bonds, taxes, insurance and project office expenses, allowance for overhead and profit, and the number of calendar days (if any) required to complete the extra Work in addition to the Contract Time or the reduction in calendar days (if any) in the Contract Time for omitted Work. Daily operational costs of temporary facilities may be included only when an extension of time is agreed upon.

§ 7.3.3.2 By unit prices stated in the Agreement or subsequently agreed upon. The Contractor shall submit an estimate itemizing the number of unit quantities of each part of the Work which is changed, multiplying such unit quantities by the applicable unit prices. Any change in Contract Time shall be as described in Section 7.3.3.1 above.

§ 7.3.3.3 By cost and percentage or by cost and fixed fee. The Contractor shall keep correct records of materials, labor, equipment, transportation, and other items used or expended to effect the required change. Such records shall be kept on forms acceptable to the Architect and submitted to the Architect for review each day that such Work is performed. Only acceptable documents will be considered in establishing the cost of the change. Any change in Contract Time shall be as described in Sub-subparagraph 7.3.3.1. above.

§ 7.3.3.4 as provided in Section 7.3.6. (Purposefully Omitted)

§ 7.3.4 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

§ 7.3.6 If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit, as set forth in Section 7.3.10. In such case, and also under Section 7.3.3., the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

    .1  costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2259955884)

  .2 costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

  .3 rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

  .4 costs of premiums for all bonds at a rate of $9.25/$1,000 and insurance at a rate of 4% and Subguard at a rate of $11.00/$1,000, permit fees, and sales, use or similar taxes related to the Work; and

  .5 additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.7** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**§ 7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

**§ 7.3.10** In Section 7.3.6, the allowance for the combined overhead and profit included in the total cost to the Owner shall be based on the following schedule:

  .1 For the Contractor, for Work performed by the Contractor's own forces ▓▓▓▓ percent of the cost.

  .2 For the Contractor, for Work performed by the Contractor's Subcontractor, (3%) three.......... percent of the amount due to the Subcontractor.

  .3 For each Subcontractor or Sub-subcontractor involved, for Work performed by that Subcontractor's or Sub-subcontractor's own forces, (10%) ten.......... percent of the cost.

  .4 For each Subcontractor, for Work performed by the Subcontractor's Sub-subcontractors, (10%) ten.......... percent of the amount due the Sub-subcontractor.

  .5 Total: Not to exceed ▓▓▓▓▓▓▓▓.......... percent, regardless of number of levels of Subcontractors and Sub-subcontractors involved.

  .6 Cost to which overhead and profit is to be applied shall be determined in accordance with Section 7.3.6.

  .7 In order to facilitate checking of quotations for extras or credits, all proposals, except those so minor that their propriety can be seen by inspection, shall be accompanied by a complete itemization of costs including labor, materials and Subcontracts.

    Labor and materials shall be itemized in the manner prescribed above. Where major cost items are Subcontracts, they shall be itemized also. In no case will a change involving over $▓▓▓▓ be approved without such itemization.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000174462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                        (2259955884)

**§7.3.11** Change Orders that result in a decrease to the Contract Sum shall include a deduction for overhead and profit in accordance with the limits set forth in Section 7.3.10 above.

**§7.3.12** Measurements for Work on a unit price basis shall be made in accordance with United States Standard Measures. When specified by weight, measurement shall be computed from weight slips. Measurement for area and linear quantities shall be taken on a horizontal plane. Measurement for volume of excavation and embankment shall be computed from cross-sections by the method of average end areas. Volume of other materials shall be computed by multiplication of the surface area on a horizontal plane times the specified depth or thickness. If materials are specified to be placed in a structure, the actual volume within the neat lines of the structure, as shown on the Drawings, shall be the basis for computing the Work.

**§ 7.4 MINOR CHANGES IN THE WORK**
**§ 7.4.1** The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

**§ 7.5** Any costs submitted by the Contractor for a Change in the Work shall be considered as the total cost associated with such Change in the Work including but not limited to: costs due to delay, disruption, hindrance, out-of-sequence work, re-sequencing of work, administration of the Change in Work, home office overhead and all Subcontractor costs as set forth in the Contract. Any costs not specifically identified by the Contractor at the time of its acceptance of a Change Order shall be deemed waived.

**ARTICLE 8 TIME**
**§ 8.1 DEFINITIONS**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 PROGRESS AND COMPLETION**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.2.4** Costs associated with performing and constructing the Work on a premium time basis, if necessary to complete the Work within the Contract Time identified in the Contract Documents, shall be included in the Contract Sum.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117452_1 which expires on 5/7/2005, and is not for resale.
User Notes: (2256955884)

## § 8.3 DELAYS AND EXTENSIONS OF TIME

§ 8.3.1 To the extent that any of the following events results in an actual delay in the progress of the Work and occurs because of events not within the Contractor's control, such delay shall, subject to compliance with the provisions of Section 4.3.7, constitute an "Excusable Event of Delay":

§ 8.3.1.1 Acts (including delays in acting or failure to act) of the State, or the City or of any other governmental or regulatory authority that are not the result of any fault, negligence or breach of the Contract Documents by the Contractor or its Subcontractors ("Regulatory Delays");

§ 8.3.1.2 Owner's delay in acting or failing to act in accordance with the Contract Documents provided the Contractor has given Owner two separate written notices, the first of which informs the Owner of precisely what actions it must take and which provides the Owner fourteen (14) days within which to do so and the second of which, not to be delivered until the fourteen (14) day period in the first notice has elapsed, provides the Owner with seven (7) additional days to effectuate a cure.

§ 8.3.1.3 Restraints or injunctions issued by a judicial body requiring that the Work or any portion thereof shall be halted ("Judicial Delays") for reasons not related to a breach of the Contract Documents by the Contractor;

§ 8.3.1.4 Changes in Legal Requirements;

§ 8.3.1.5 Fires, floods, earthquakes, civil disturbances, wars, insurrections, riots or sabotage;

§ 8.3.1.6 General strikes, involuntary work stoppages, labor disputes, lockouts which could not reasonably have been expected and a commercially reasonable alternative developed. In no event shall a labor dispute arising from the Contractor's own forces be considered as an Excusable Event of Delay;

§ 8.3.1.7 Weather conditions, but only to the extent the number of days lost due to such conditions exceeds 15 working days per year in the aggregate. Owner reserves the right to dispute the number of days claimed lost by Contractor as a result of a weather related condition; and

§ 8.3.1.8 Work at the site performed by or for the City or by Owner's separate contractors..

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

§ 8.3.4 If the Contractor, but for a delay not within its control, would have completed the Work prior to the expiration of the Contract Time, the Contractor shall not be entitled to recovery of damages arising out of any event or delay which prevented such early completion of the Work.

## § 8.4 ACCELERATION OF THE WORK

§ 8.4.1 If, as a result of an event (other an Excusable Event of Delay) the Contractor's rate of progress is such that the total amount of Work and/or the degree of completion of the Work accomplished by the Contractor and its Subcontractors within any time period required by the Contract Documents is less than the amount therein specified to be completed within such time, and it reasonably appears that the Contractor and its Subcontractors will be unable to meet the Milestone Dates or the Substantial Completion Dates, the Contractor shall have the duty to demonstrate to Owner that, based upon its estimate of the remainder of the construction schedule and potential for early completion of portions of the Work, the Contractor will be able to achieve completion of Work in accordance with the Milestone Dates and the Substantial Completion Dates. If the Owner, acting reasonably, does not agree that the Contractor has demonstrated its ability to achieve completion of Work in accordance with the Milestone Dates or the Substantial Completion Dates, the Owner may direct the Contractor to accelerate the Work by issuing a notice to the Contractor. Upon such direction, the Contractor, at the Contractor's sole cost and expense, shall be obligated to employ such extraordinary measures as necessary to bring the Work into conformity with the construction schedule so that the Milestone Dates and the Substantial Completion Dates can be achieved.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                              (2250955884)

**ARTICLE 9  PAYMENTS AND COMPLETION**
**§ 9.1 CONTRACT SUM**
§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**§ 9.2 SCHEDULE OF VALUES**
§ 9.2.1 At least fourteen (14) days before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 9.3 APPLICATIONS FOR PAYMENT**
§ 9.3.1 The procedures for application and certification of Applications for Payment are as described below and in Division 1 (General Requirements) of the Specifications. Contractor shall submit all Payment Applications for Payment simultaneously to Owner, Owner's Representative and Architect.

§ 9.3.1.1 Within (7) seven days after the last day of each month, the Contractor shall submit to the Architect and Owner's Representative a Pencil Draft of the proposed itemized Application for Payment for operations completed in the preceding month, in accordance with the Schedule of Values. The Pencil Draft shall be complete in every respect and shall be accompanied by supporting data as indicated in Division 1 - General Requirements and as the Owner or Architect may require. Contractor shall meet with Architect or Owner's Representative, if requested, to explain any matters in Contractor's Pencil Draft.

§ 9.3.1.2 Within (7) seven days after the Architect's receipt of the Pencil Draft, the Architect shall notify the Contractor of the amount that the Architect determines is properly due to the Contractor, and of any adjustments required to be made to the Pencil Draft.

§ 9.3.1.3 Within seven (7) days after the Architect's notification to the Contractor under Section 9.3.1.2, the Contractor shall submit a final monthly Application for Payment. The application shall be notarized and supported by data substantiating the Contractor's right to payment as the Owner or Architect may require, and reflecting retainage as provided for elsewhere in the Contract Documents.

§ 9.3.1.4 As provided in Section 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.5 All Applications for Payment shall be accompanied by a statement by the Contractor of any disputes with Subcontractors, but shall not include requests for payments of amounts the Contractor does not intend to pay to a Subcontractor because of a dispute or otherwise. The Contractor shall promptly repay to the Owner any amounts paid to it by the Owner which has not been paid to a Subcontractor within thirty (30) days of the date received by the Contractor, with interest thereon at the prime rate plus 2%.

§ 9.3.1.6 The Contractor promptly upon receipt of funds from the Owner shall pay each Subcontractor, with whom it has a Subcontract, the amount to which said Subcontractor is entitled. The Contractor shall indemnify, hold harmless (and, if requested by Owner, defend by employment of counsel reasonably acceptable to Owner) the Owner from any loss, cost, expense (including but not limited to reasonable attorneys' fees and expenses) or liability arising from the Contractor's breach of this Section 9.3. The Contractor shall, by any appropriate agreement with each Subcontractor with whom it has a Subcontract, require such Subcontractors to make payments to their respective Subcontractors in a similar manner. Each Subcontractor shall provide Contractor with a final lien waiver, in form satisfactory to Owner upon completion of its work on the Project. Owner shall have no obligation to pay or to see to the payment of any monies due and payable to any Subcontractor. No progress or other payment and no partial or entire use or occupancy of the Project by Owner shall constitute an acceptance of the Work or any part thereof which is not in accordance with the Contract Documents.

§ 9.3.1.7 The Owner shall have no obligation to pay or to confirm the payment of any monies to any Subcontractor except as may otherwise be required by law.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                          (2256955884)

**EXHIBIT**
A 5

§ 9.3.2 Except as otherwise provided in the Standard Form Agreement, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner and its lender, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner and its lender to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, including, but not limited to (a) submission by the Contractor to the Owner of bills of sale vesting ownership therein in the Owner upon payment, (b) if such materials are stored off-site, the storage location being a bonded site and approved by Owner, and (c) the Contractor causing the Builder's Risk insurance policy required by Article 11 to be amended to include such materials.

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work. All material necessary to construct this project, upon delivery to the premises, shall not be removed from the premises without written consent of the Owner.

## § 9.3.4 LIENS

§ 9.3.4.1 The Contractor shall endeavor to avoid the filing of any mechanic's or materialmen's lien or claim by the Contractor or by any Subcontractor or, laborer on account of any Work performed under this Contract so long as the Owner has made payments to the Contractor as herein provided; provided, however, if the Owner is entitled to retain or withhold payments under the Contract Documents and elects to do so, or otherwise is not under an obligation to make payments to the Contractor hereunder, the Contractor nonetheless shall remain responsible for keeping the Project free and clear of any such lien claims as may arise from the Owner's withholding of or failure to pay funds under the Contract Documents. If at any time there shall be evidence that any lien or claim arising out of the Work shall be filed, such lien or claim may remain upon the Project only if the Contractor posts a bond at the Contractor's sole cost and expense or other security in form, substance and amount reasonably satisfactory to the Title Insurer (which shall be in addition to any payment and performance bond posted by the Contractor, if any) sufficient to induce the Title Insurer to issue, or re-issue, as the case may be, its policy free and clear of all claims of all liens, obligations or claims, without indemnification or security from Owner.

§ 9.3.4.2 If any lien or claim remains unsatisfied after final payment is made, Contractor shall refund to Owner, or Contractor shall furnish a bond satisfactory to the Owner to indemnify the Owner against, all monies that Owner may be compelled to pay in discharging such a lien or claim, including all costs and expenses and a reasonable attorneys' fee and interest thereon from the date disbursed by Owner to Contractor at Owner's effective cost of funds at such rate not to exceed the maximum rate permitted by law.

§ 9.3.4.3 The Contractor shall defend the Owner, at the Contractor's cost and expense, against any actions, lawsuits or proceedings brought against the Owner as a result of liens filed against the Work, the Project Site, payments due the Contractor or any portion of the property, provided such liens arise out of the Work or any activities of the Contractor in connection with the Project. This duty to defend shall be met by payment of counsel selected by Owner for their separate representations from Constructor and the payment of all litigation related costs and expenses. The Contractor shall indemnify and hold the Owner harmless against any such liens or claims of liens not arising out of the Owner's unjustified failure to pay the Contractor and agrees to pay any judgment or lien resulting from any such actions, lawsuits or proceedings.

§9.3.4.4 The foregoing shall not apply to liens arising out of work done by Subcontractors for which payment has not been made to Contractor.

## § 9.4 CERTIFICATES FOR PAYMENT
§ 9.4.1 The Architect will, within (7) seven days after receipt of the Contractor's Application for Payment (not including, however, a pencil draft of the Application for Payment), either issue to the Owner a Certificate for

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                  (2258955864)

Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum. If any Application for Payment includes a payment request for on-site or off-site stored materials, the Architect's certification shall constitute only a representation that to its best knowledge and belief such materials are of a nature and type required by the Contract Documents but not a representation that the quantity the Contractor represents exists has been stored or that the quality of the materials will remain unaffected by later shipment or handling.

**§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION**
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of:

- .1    defective Work not remedied;
- .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
- .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
- .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
- .5    damage to the Owner or another contractor;
- .6    reasonable evidence that the Work will not be completed within the Contract Time or in accordance with the construction schedule or Milestone Dates and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
- .7    failure to carry out the Work in accordance with the Contract Documents; or
- .8    other breach by the Contractor of the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.6 PROGRESS PAYMENTS**
**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.    The initial monthly

**AIA Document A201™ – 1997. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:26 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
**User Notes:**                                                                                          (2258955884)

payment request shall be accompanied by the Contractor's Partial Waiver of Lien only. Each subsequent monthly payment request shall be accompanied by the Contractor's Partial Waiver and the Partial Waivers of Subcontractors, Sub-subcontractors, and Suppliers who were included in the immediate preceding payment request, to the extent of that payment (i.e., the Contractor must submit partial waivers on a current basis, but Subcontractors, Sub-subcontractors, and Suppliers may be not more than one payment late with their partial waivers).

§ 9.6.3 The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

§ 9.6.4 Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

§ 9.6.5 Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

§ 9.6.6 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

§ 9.6.7 Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

§ 9.7 FAILURE OF PAYMENT
§ 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within (7) seven days after receipt of the Contractor's final monthly Application for Payment, or if the Owner does not pay the Contractor within (7) seven days after the date established in the Contract Documents the amount certified by the Architect, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up.

§ 9.8 SUBSTANTIAL COMPLETION
§ 9.8.1 (a) Substantial Completion of a Designated Portion of the Work shall occur only when: (i) such Designated Portion is sufficiently complete in accordance with the Contract Documents so that the Owner can lawfully occupy and utilize the particular Designated Portion for its intended use; and (ii) the Owner has been issued a Partial, or Temporary, Certificate of Occupancy for such Designated Portion of the Work that permits the lawful occupancy and utilization of the same for its intended use and that does not contain any conditions or limitations that are unacceptable to the Owner in the Owner's reasonable discretion.

(b) Substantial Completion of all of the Work is the stage in the progress of the Work when substantial completion of all Designated Portions of the Work, as set forth in Section 9.8.1(a) above, has been achieved.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect and the Owner's Representative a comprehensive list of items to be completed or corrected prior to final payment ("Punch List"). Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect and Owner (or Owner's Representative) will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If this inspection discloses any item, whether or not included on the Contractor's Punch List, which is not sufficiently complete in

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2269955864)

accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect and either the Owner or Owner's Representative. With respect to Work enumerated on the list accompanying the Certificate of Substantial Completion, the warranty period shall start at the time of subsequent acceptance of this Work in writing by the Owner.

§ 9.8.4   Notwithstanding the Owner's prior review of the Work for conformance with the Contract Documents, the Contractor shall begin to complete the Punch List within three (3) business days after its creation and shall complete the Punch List for the Work and final completion within sixty (60) days following the date of Substantial Completion of the Work.  If necessitated by the identification of additional items during inspection of the Work (by the Architect or Owner), there may be more than one Punch List.  Contractor shall notify Owner's Representative at least five (5) days in advance of its contemplated completion of the Punch List and of the Work.

§ 9.8.5   When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.6   The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

§ 9.9 PARTIAL OCCUPANCY OR USE
§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by the Contract Documents or by separate agreement with the Contractor, provided such occupancy or use is authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, on conditions set forth in the Contract Documents or, if no conditions are established thereby, as provided for by Owner and Contractor in writing.  Prior to Owner's occupancy, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

§ 9.10 FINAL COMPLETION AND FINAL PAYMENT
§ 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.  Should the Architect find that the Work is not acceptable under the Contract Documents and the Contract not fully performed, costs associated with the Architect's re-inspections under this Section will be reimbursed to the Owner by the Contractor.   On final inspection and acceptance of each portion of the Work on which the price is stated separately in the Contract, payment may be made in full, including retained percentages thereon.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117452_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                                (2256955684)

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect:

(1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied;

(2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner;

(3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents;

(4) consent of surety, if any, to final payment;

(5) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien; if such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees;

(6) warranties required by the Contract Documents;

(7) a notarized affidavit stating that all monetary obligations to suppliers of material, services, labor and all other Subcontractors of all tiers have been completely fulfilled and discharged;

(8) all submittals not previously submitted as required by the Contract Documents;

(9) (a) all permits, licenses, approvals, certificates including, but not limited to, certificates of occupancy and all other certificates and approvals required to lawfully occupy and operate the Project and authorizations required by any authority having jurisdiction over the Project and the operation thereof and (b) a general release from Contractor on a form approved by Owner, in favor of Owner, Lender and Contractor's sureties, if any, for all claims arising from a failure to pay all amounts due under this Contract, in a form provided by Owner and acceptable to Contractor in its reasonable judgment;

(10) a certificate by Contractor addressed to the Owner certifying that the Work has been completed: (a) in accordance with the original approval Drawings, Specifications and other Contract Documents; (b) in accordance with changes thereto which have been approved in writing by the Owner; and (c) in accordance with all Legal Requirements;

(11) all (a) maintenance and operating manuals, (b) marked sets of field record drawings and specifications reflecting "as-built" conditions, (c) to the extent not previously supplied, a list of the names, addresses and telephone numbers of all Subcontractors and of any persons providing warranties, and (d) such other matters, documents or information as set forth in the Contract Documents or as Owner may reasonably request have been delivered to and approved by the Owner;

(12) commercially reasonable evidence (if any exists) that Owner owns all equipment and tangible and intangible personal property (including, but not limited to, contract rights and computer programs) to be provided by Contractor pursuant to the Contract Documents, free and clear of all rights and claims whatsoever; and

(13) the Contractor's sworn statement required under Section 3.6.2 above.

§ 9.10.3 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                              (2256955684)

Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

    **.1**   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

    **.2**   failure of the Work to comply with the requirements of the Contract Documents; or

    **.3**   terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
### § 10.1 SAFETY PRECAUTIONS AND PROGRAMS
**§ 10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 SAFETY OF PERSONS AND PROPERTY
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

    **.1**   employees on the Work and other persons who may be affected thereby;

    **.2**   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

    **.3**   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss. All accidents related to the Work shall be promptly reported in writing by Contractor to Owner's Representative.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:59:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                     **39**

                                                            (2256955864)

**§ 10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

**§ 10.2.8** If the Contract Documents require work, whether immediate or in the future, which poses an unreasonable risks of bodily injury which could not have been reasonably anticipated, the Contractor shall immediately take steps to protect its personnel and Subcontractors and, if there are no other reasonable alternatives, stop the Work or remove its personnel from the affected area. Contractor shall not be deemed to have assumed any obligation to identify such risks. In taking action as provided under this paragraph, the Contractor shall be entitled to an equitable adjustment to the Contract Sum and the Completion Date.

### § 10.3 HAZARDOUS MATERIALS
**§ 10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**§10.4** The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

**§ 10.5** If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**§ 10.6** None of the foregoing shall apply with regard to the Special Waste which it was the Contractor's obligation to remove from the site.

### § 10.7 EMERGENCIES
**§ 10.7.1** In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Section 4.3 and Article 7.

AIA Document A201™ —1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                           (2256955884)

§10.8  If Contractor correctly identifies materials on the Site that are hazardous or contaminated and not stated or identified in the Contract Documents and Contractor is required by law to stop working as a result thereof, Contractor shall be entitled to an equitable adjustment to the Contract Sum and the Completion Date.

## ARTICLE 11  INSURANCE AND BONDS

§ 11.1 CONTRACTOR'S LIABILITY INSURANCE. The Contractor shall provide a Contractor controlled Wrap-up insurance policy with coverage limits not less than the amounts identified in Article 11.

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1 claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed, including private entities performing work at the site and exempt from the coverage on account of number of employees or occupation, which entities shall maintain voluntary compensation coverage at the same limits specified for mandatory coverage for the duration of the Project;

.2 claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees or persons or entities excluded by statute from the requirements of Section 11.1.1.1 but required by the Contract Documents to provide insurance required by that Section;

.3 claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4 claims for damages insured by usual personal injury liability coverage;

.5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6 claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7 claims for bodily injury or property damage arising out of completed operations; and

.8 claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ 11.1.2 The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

§ 11.1.2.1 Liability Insurance shall include all major divisions of coverage and be on a comprehensive basis including:

.1 Premises Operations (including X, C and U coverages as applicable).

.2 Independent Contractors' Protective.

.3 Products and Completed Operations.

.4 Personal Injury Liability with Employment Exclusion deleted.

.5 Contractual, including specified provision for Contractor's indemnification obligations under the Contract Documents, including under Section 3.18 above.

.6 Owned, non-owned and hired motor vehicles.

.7 Broad Form Property Damage Liability including Completed Operations.

.8 Special Requirements:

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/08/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256955894)

(i)    Products and Completed Operations to be maintained for two (2) years after final payment. Damage to material, product or item of equipment itself shall be covered by an Installation Floater on a legal liability basis or by an extension of the manufacturer's warranty.

(ii)    the term "caused by accident", if used in bodily injury or property damage coverage, shall be replaced by the term "occurrence".

§ 11.1.2.2 Miscellaneous Insurance Requirements

§ 11.1.2.2.1 All insurance coverage shall be provided by insurance companies having policy holder ratings no lower than "A" and financial ratings not lower than "XII" in the Best's Insurance Guide, latest edition in effect as of the date of the Contract.

§ 11.1.2.2.2 The Contractor is responsible for determining that Subcontractors are adequately insured against claims arising out of or relating to the Work. The premium cost and charges for such insurance shall be paid by each Subcontractor.

§ 11.1.2.2.3 The limits of liability as stated, may be arrived at using a Split-Limit or Combined Single Limit basis. However, the total limit of liability shall not be less than that stated in the requirements.

§ 11.1.2.4 The Indemnitees shall be additional insureds ("Additional Insureds") on the Liability Insurance policy required by Clause 11.1.2.1 through an endorsement thereto which provides for no different coverage to the Additional Insured than to the Contractor with respect to the required limits and coverages. The additional insured endorsement shall provide the following:

§ 11.1.2.3.1 That the coverage afforded the Additional Insureds will be primary insurance for the Additional Insureds with respect to claims arising out of operations performed by or on behalf of the Contractor;

§ 11.1.2.3.2 That coverage afforded the Additional Insureds shall not exclude claims asserted by the Contractor's employees;

§ 11.1.2.3.3 That if the Additional Insureds have other insurance that is applicable to the loss, such other insurance will be on an excess or contingent basis;

§ 11.1.2.3.4 That the amount of the Contractor's insurance company's liability under the insurance policy will not be reduced by the existence of such other insurance; and

§ 11.1.2.3.5 That the Additional Insureds will be given not less than 30 days prior written notice of any cancellation thereof. The Contractor shall furnish to the Owner, and the Architect certificates of insurance evidencing the foregoing coverages.

§ 11.1.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and copies of the insurance policies shall be reviewed by Owner at Contractor's local office upon request by Owner. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

§ 11.1.4 The Contractor shall cause each Subcontractor to (1) procure insurance of the same types and coverages of the Contractor hereunder and, where applicable, professional liability insurance (covering, if applicable, a Subcontractor's design work that is part of the Work), but with the limits set forth in Section 11.1.6, and (2) name the Indemnitees as additional insureds under the Subcontractor's commercial general liability policy. The additional

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2250855684)

42

insured endorsement to the Subcontractor's commercial general liability policy shall be identical to that of the Contractor and shall state that coverage is afforded the additional insured with respect to claims arising out of operations performed by or on behalf of the Subcontractor. If the additional insured has other insurance that is applicable to the loss, such other insurance shall be on an excess or contingent basis. The amount of the insurer's liability under this insurance policy shall not be reduced by the existence of such other insurance.

§ 11.1.5 Contractor's insurance will have the following coverages and limits:

a.    Worker's Compensation:

Bodily injury by Accident $1,000,00 (each occurrence);

Bodily injury by Disease $1,000,000 (each occurrence);

Bodily injury by Disease $1,000,000 (policy limit).

b.    General Liability:

Bodily Injury and Property Damage $1,000,000 per occurrence, with a General Aggregate of $2,000,000;

Personal Injury $1,000,000 per occurrence, with a General Aggregate of $2,000,000 (aggregate); and

Products and Completed Operations, with a $2,000,000 Aggregate.

c.    Automobile Liability: $1,000,000 Combined single limit for bodily injury and property damage

d.    Umbrella Excess Liability: Combined single limit over $35,000,000 Underlying Limits

Any combination of primary, umbrella, and/or excess policies may be used to satisfy the stated required limits.

§ 11.1.6 Subcontractor's insurance will meet or exceed the following limits:

a.    Worker's Compensation:

Bodily injury by Accident $1,000,000 (each occurrence);

Bodily injury by Disease $1,000,000 (each occurrence);

Bodily injury by Disease $1,000,000 (policy limit).

b.    General Liability:

Bodily Injury and Property Damage $1,000,000 per occurrence, with a General Aggregate of $2,000,000;

Personal injury $1,000,000 per occurrence, with a General Aggregate of $2,000,000; and

Products and Completed Operations, with a $2,000,000 Aggregate

(Exceptions will be mutually agreed to for certain smaller Subcontractors.)

c.    Automobile Liability: $1,000,000 Combined single limit for bodily injury and property damage

d.    Umbrella Excess Liability:

Combined single limit over $5,000,000
Underlying Limits

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2256955884)

(Exceptions will be mutually agreed to for certain smaller Subcontractors.)

§ 11.1.6.1  Subcontractors who perform design/build Work (if applicable) shall purchase and maintain for three years after Substantial Completion of the Work, claims made professional liability insurance (covering their design obligations that are a part of the Work): (i) with a retroactive date prior to their commencement of any Work on the Project; (ii) in the amount of $2 million; (iii) with contractual liability coverage and (iv) in conformance with Sections 11.1.2.2.1 and 11.1.3 of these General Conditions.

§ 11.1.7 FIRE INSURANCE ON OWNED OR RENTED EQUIPMENT.

§ 11.1.7.1  Contractor shall secure, pay for and maintain whatever fire or Extended Coverage Insurance it may deem necessary to protect itself against loss of owned or rented capital equipment and tools, including any tools owned by mechanics, and any tools, equipment, scaffoldings, stagings, towers and forms owned or rented by Contractor.  The requirement to secure and maintain such insurance is solely for the benefit of Contractor. Failure of Contractor to secure such insurance or to maintain adequate levels of coverage shall not obligate Owner, Architect or their agents and employees for any losses of owned or rented equipment. If Contractor secures such insurance, the insurance policy shall include a waiver of subrogation clause in favor of Owner and Architect.

§ 11.1.8 FAILURE OF CONTRACTOR TO COMPLY WITH INSURANCE REQUIREMENT

§ 11.1.8.1  In the event of any failure by the Contractor to comply with provisions of this Section 11.1, the Owner may, at its option, on notice to the Contractor, suspend the Work for cause until there is full compliance with this Section 11.1 and/or terminate the Agreement for cause. Alternatively, the Owner may purchase such insurance at the Contractor's expense, provided that the Owner shall have no obligation to do so and if the Owner shall do so, the Contractor shall not be relieved of or excused from the obligation to obtain and maintain such insurance amounts and coverages.

§ 11.2 OWNER'S LIABILITY INSURANCE
§ 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

§ 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability Insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

§ 11.3.2 To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 11.3.3 The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

§ 11.4 PROPERTY INSURANCE
§ 11.4.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others plus the value of the contents of the Project during construction and when completed and occupied, comprising total value for the entire Project at the site on a replacement cost basis including the cost to cover professional fees without deductibles greater than $10,000 per occurrence. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                    (2256965884)

has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project and the Contractor, Subcontractors and Sub-subcontractors shall be named additional insured under such policies.

**§ 11.4.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation including terrorism coverage, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements (if generally available), and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss. The form of policy for this coverage shall be Completed Value. Property Insurance provided by the Owner shall not cover any tools, apparatus, machinery, scaffolding, hoists, forms, shoring and other similar items commonly referred to as construction equipment, which may be on the site and the capital value of which is not included in the Work. Contractor shall secure, pay for and maintain whatever fire or Extended Coverage Insurance it may deem necessary to protect itself against loss of owned or rented capital equipment and tools, including any tools owned by mechanics, and any apparatus, tools, equipment, machinery, scaffoldings, hoists, stagings, towers, forms and shorings, owned or rented by Contractor. The requirement to secure and maintain such insurance is solely for the benefit of Contractor. Failure of Contractor to secure such insurance or to maintain adequate levels of coverage shall not obligate Owner, Architect, or their agents and employees for any losses of owned or rented equipment or other such items. If Contractor secures such Insurance, the insurance policy shall include a waiver of subrogation clauses in favor of the Owner or Architect.

**§ 11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**§ 11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**§ 11.4.1.4** The Contractor shall provide insurance coverage for portions of the Work stored off the site after written approval of the Owner at the value established in the approval, and also for portions of the Work in transit.

**§11.4.1.5** Intentionally Omitted

**§11.4.1.6** Should Owner elect to procure a Builders Risk insurance without terrorism coverage, Owner acknowledges that it is accepting the risk of all terrorist-related events, and Owner waives all rights as against Contractor and the other parties to be insured under the Owners builders risk policy for terrorism-related events and agrees to indemnify, hold harmless and defend Contractor from all costs, expenses (including legal fees and disbursements), claims, suits, liabilities and judgments arising out of any terrorist act or acts, to the fullest extent permitted by law.

**§ 11.4.2** Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**§ 11.4.3** Loss of Use Insurance. The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused.

**§ 11.4.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 9/7/2005, and is not for resale.
User Notes: (2256955884)

45

**§ 11.4.5** Contractor shall obtain an endorsement to its General Liability Policy waiving the General Liability carrier's rights to recover payments made pursuant to the General Liability Policy from the Indemnitees. Contractor shall also obtain an endorsement to its Workers Compensation Policy waiving the Workers Compensation carrier's rights to recover payments made pursuant to the Workers Compensation Policy from the Indemnitees.

**§ 11.4.7 Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 11.4.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgage clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**§11.4.9 Intentionally Omitted**

*(Paragraph deleted)*

**11.4.10 Intentionally Omitted**

**§11.4.11 Professional Liability Insurance.** The Owner shall cause the Architect to carry such professional liability insurance as will adequately protect the Architect against claims which may arise out of its professional liability. The Architect's professional liability coverage shall, if written on a claims made basis, shall have a tail of no less than the relevant Statute of Limitations. Such insurance policy shall be available for inspection by the Contractor, who shall receive at least 30 days notice prior to its cancellation. To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor and its subcontractors, agents and employees from and against any and all loss, expense or damage (including, but not limited to reasonable attorney's fees) arising out of the professional liability of the Architect, the architect's consultants and the agents and employees of any of them, provided however, that Owner's liability as a result thereof shall not exceed the proceeds of such insurance recoverable for such loss, expense or damage.

**§ 11.5 PERFORMANCE BOND AND PAYMENT BOND**
**§ 11.5.** At the Owner's request, the Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract. Each of such bonds shall be in the amount of 100% of the Contract Sum and shall be issued by a surety acceptable to Owner the cost of which shall be paid by Owner as an increase in the Contract Sum.

**§ 11.5.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

**AIA Document A201™ – 1997.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. **WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/77/2005, and is not for resale.
User Notes:                                                                                                      (2256955884)

## ARTICLE 12  UNCOVERING AND CORRECTION OF WORK

### § 12.1 UNCOVERING OF WORK

**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK

#### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION

**§ 12.2.1.1** The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

#### § 12.2.2 AFTER SUBSTANTIAL COMPLETION

**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

**§ 12.2.6** Contractor shall, within a reasonable time after receipt of written notice thereof, but in no event later than forty-eight (48) hours after receipt of such notice, commence to correct, repair and make good any failures, defects, or deficiencies in the Work which may develop within periods for which said materials, equipment and workmanship are warranted, and also make good any damage to other work caused by the repairing of such defects.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:59:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                     (2258955884)

None of the cost of such work shall increase the Contract Sum. If, after notification of defect, Contractor shall default or delay in diligently commencing, continuing or completing the repair, replacement and testing of any defective item, material or workmanship in a manner satisfactory to Owner, then Owner, after five (5) days written notice to Contractor may take any action which may be necessary to correct such defects. Owner may deduct the cost from any amounts due Contractor. Otherwise, Contractor shall forthwith pay to Owner an amount equal to such costs, charges and expenses, upon receipt of verifiable invoices certified by Owner. Contractor's warranties and other duties hereunder are independent of any obligation or duty of any Subcontractor.

§ 12.2.7  If Contractor does not remove defective Work, equipment and materials or, if removal is not possible within a reasonable period of time as determined reasonably by the Owner, commence to remove and diligently prosecute with ten (10) days of written notice, Owner may, at the expense of Contractor, remove them and store the materials. If Contractor does not pay the expenses of such removal within ten (10) days time thereafter, Owner may deduct all costs and expenses from any amounts due the Contractor. Otherwise, Contractor shall forthwith pay to Owner an amount equal to such costs, charges and expenses, upon receipt of verifiable invoices certified by Owner.

§ 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1  If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

ARTICLE 13   MISCELLANEOUS PROVISIONS
§ 13.1 GOVERNING LAW
§ 13.1.1  The Contract shall be governed by the law of the place where the Project is located.

§ 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1  The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 13.2.2  The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

§ 13.3 WRITTEN NOTICE
§ 13.3.1  Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

§ 13.4 RIGHTS AND REMEDIES
§ 13.4.1  Except as otherwise provided in Section 8.5.4 above, duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2  No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

§ 13.5 TESTS AND INSPECTIONS
§ 13.5.1  Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                    (2259965884)

48

bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

§ 13.6 SEVERABILITY

§ 13.6.1 If any provision of the Contract Documents is held invalid as applied to any fact or circumstance, such invalidity shall not affect the validity of such provisions as applied to any other fact or circumstance or the validity of any other provision of the Contract Documents.

§ 13.7 NEWS RELEASES

§ 13.7.1 Except as necessary to Contractor's performance of Contractor's Work hereunder, Contractor shall not divulge information (including, without limitation, information applicable for permits, variances, etc.) concerning this Agreement, the Project, or any Work to anyone (including, but not limited to, the print and broadcast media) without the Owner's prior written consent. Contractor shall obtain a similar agreement from all Subcontractors. Owner reserves the right to control the release of all information together with its form and content. This requirement shall survive the completion of Contractor's performance of its other obligations under the Contract Documents.

§ 13.8 ADVERTISING

§ 13.8.1 Contractor shall not, without the prior written consent of Owner, use or exploit in advertising or for any other business purpose, directly or indirectly any of the following: Owner, the names of any other Indemnitee, or any derivation of any of the foregoing, or use any logos or servicemarks relative or related thereto. Contractor shall include in all agreements with any Subcontractor a proscription, prohibiting any such Subcontractor from erecting any sign or other advertisement upon the Site.

§ 13.9 CONSTRUCTION ESCROW

§ 13.9.1 Contractor shall execute such customary form of construction escrow (Owner's or Lender's form) for the purpose of facilitating the payment of amounts due to Contractor and providing protections against any liens, obligations or claims for lien arising out of Contractor's performance of the Work. Contractor further understands and agrees that all funds shall not be disbursed to Contractor unless and until the Title Insurer and Lender are

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                          (2258955884)

satisfied as to the absence of any liens, obligations or claims for lien being asserted or imposed upon the Site and the Work. Any bonds or other security provided by Contractor shall be furnished at Contractor's sole cost and expense and shall not entitle Contractor to an increase in the Contract Sum.

*(Paragraph deleted)*

### § 13.10 COLLATERAL ASSIGNMENT

*(Paragraph deleted)*

§ 13.10.1 At the Request of any Lender, Contractor shall execute an acknowledgment consenting to the collateral assignment of this Contract to any Lender and agree to customary provisions requested by Lender including, without limitation, the agreement to perform the Work for such Lender. Further, Contractor agrees to comply with the pertinent terms of any building loan agreement, to be provided for information, between Owner and Lender pursuant to which the funds are being made available to Owner and, in turn, to Contractor for the payment of the amounts due to Contractor hereunder.

### ARTICLE 14    TERMINATION OR SUSPENSION OF THE CONTRACT
### § 14.1 TERMINATION BY THE CONTRACTOR
§ 14.1.1 The Contractor may suspend performance of the Work (which shall constitute suspension of the Contract) if, after 15 days prior notice by Contractor to Owner, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, any of the following continues to exist:

 .1 issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;
 .2 an act of government, such as a declaration of national emergency which requires all Work to be stopped;
 .3 because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within 15 days written notice that the time stated in the Contract Documents has expired; or

*(Paragraph deleted)*

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less; provided, however, that no such termination may occur without the Contractor having given the Owner 30 days advance written notice and opportunity to cure.

§ 14.1.3  If one of the reasons described in Section 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and the lesser of (a) Contractor's lost profit on the unfinished portion of the Work, or (b) for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead and profit.

§ 14.1.4 If for one of the reasons set forth in Section 14.1.1 above, the Work is suspended by Contractor for 30 days and no cure has been effectuated, the Contractor may, if such reason exists after 20 additional days' written notice to the Owner and the Architect, terminate its performance of the Work (which shall constitute termination of the Contract) and recover from the Owner as though the Owner had terminated the Contractor's performance for convenience pursuant to Section 14.4 as its sole and exclusive remedy and waiving all other claims and rights both legal and equitable.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:53:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes: (2256955864)

50

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ 14.2.1 The Owner may terminate the Contract if the Contractor:

    .1    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors

    .3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

    .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

*(Paragraph deleted)*

§ 14.2.2 When any of the above reasons exist, the Owner may, without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

    .1    take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

    .2    accept assignment of subcontracts pursuant to Section 5.4; and,

    .3    finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 14.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, any further payments to which the Contractor may be entitled shall not be due until the Work is completed.

§ 14.2.4 In the event that the Owner exercises its right to terminate under this Section 14.2, and it is later adjudicated that the Owner's termination was without cause, the termination will be converted to a termination of the Owner's convenience pursuant to Section 14.4 and the Contractor's entitlement to damages shall be limited to the amounts recoverable under Section 14.4.2.

§ 14.2.5 If Owner terminates the Contract under this Section 14.2, it shall be entitled to damages equal to the sum of (a) the total amount expended to complete the Work in excess of the Contract Sum, and (b) interest which Owner paid or incurred on its construction loan for the period between which Contractor was to have completed the Work and the date on which the Work was actually completed.

## § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
§ 14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 14.3.2 The Contract Sum, the construction schedule and Milestone Dates and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. No adjustment shall be made to the extent:

    .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

    .2    that an equitable adjustment is made or denied under another provision of the Contract.

## § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1    cease operations as directed by the Owner in the notice;

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                       (2258955884)

51

.2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ 14.4.3 In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and the lesser of (a) lost profit on the unfinished portion of the Work, and (b) any costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

§ 14.4.4 [REDO]The total sum to be paid the Contractor under Section 14.4.2 shall not exceed the total Contract Sum allocable to that portion of the Work for which the termination appliesContract Sum, as properly adjusted, reduced by the amount of payments otherwise made, and shall in no event include duplication of payment.

§ 14.5 CLAIMS FOR CONSEQUENTIAL DAMAGES
Except for those damages described in Paragraph 14.2.5, Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes, but is not limited to:

.1 damages incurred by the Owner for rental expenses, for losses of use, ;;income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14, except to the extent provided for in paragraph 14.2.5

§ 15.1 THIRD-PARTY AGREEMENTS
§ 15.1.1 A copy of each of the Third-Party Agreements (as defined in the Agreement), with only certain confidential information unrelated to the Contractor's obligations under the Contract Documents redacted therefrom, has been provided to the Contractor.

§ 15.1.2 The Contractor acknowledges that the Owner is required to comply with the Third-Party Agreements and that a failure to comply may affect the availability of funding to pay the costs of the Work or may otherwise adversely affect the Project. Accordingly, the Contractor agrees (i) to cooperate with the Owner (and shall cause all Subcontractors and others for whom it has liability under the Contract Documents to cooperate with Owner) in connection with the Owner's performance and compliance with the requirements of the Third-Party Agreements, and (ii) that it will not do or fail to do (and will not permit others for whom it has liability under the Contract Documents to do or fail to do) any act which if done or not done, as the case may be, would constitute a violation of any of the Third-Party Agreements. Further, the Contractor shall comply, and shall cause each of the said Subcontractors and all others for whom it has liability under the Contract Documents to comply, with the terms of the Third-Party Agreements that bear upon the Work. Those obligations of the Owner under the Third-Party Agreements which Owner, pursuant to any of those Agreements, is expressly obligated (or, to ensure Owner's own compliance with the Third-Party Agreements, is impliedly obligated) to pass along to the Contractor are hereby incorporated in and made a part of the Contract Documents. Such obligations include those which pertain to the following matters:

a) employment (including, without limitation, the related reporting, meeting and default/remedy provisions);

b) accounting, book and record keeping;

c) Change Orders;

d) progress reports;

e) Subcontracts (including, without limitation, Subcontract approval and assignment provisions);

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117482_1 which expires on 5/7/2005, and is not for resale.
User Notes:   (2256955684)

52

f) Prevailing wage, overtime payment and labor standards;

g) The Steel Products Procurement Act;

h) Lobbying certification; and

i) Compliance with laws, including, without limitation, the following laws (including all codes, regulations and executive orders promulgated pursuant, or related, to such laws):

    A.    the Illinois Veterans Act;

    B.    the National Emission Standards for Hazardous Air Pollutants;

    C.    the federal Civil Rights Act;

    D.    the federal Age Discrimination Act;

    E.    the federal Fair Housing Amendments Act of 1988;

    F.    the federal Americans with Disabilities Act;

    G.    the federal Rehabilitation Act;

    H.    the Illinois Human Rights Act;

    I.    the Illinois Public Workers Employment Discrimination Act;

    J.    the City Human Rights Ordinance;

    K.    the City Municipal Code (including, without limitation, the residency requirements of Section 2-92-330 thereof);

    L.    the City Fair Housing Regulations;

    M.    all MBE/WBE and EZ hiring requirements;

    N.    the McLaughlin Ordinance; and

    O.    all federal, state and local laws, regulations, executive orders and ordinances related to the Empowerment Zone in which the Site is located.

Provided Contractor has not breached its obligations hereunder, a breach by Owner of any of its obligations under the above or any Third Party Agreements shall not diminish or change Owner's obligations to Contractor.

[END OF PAGE]

AIA Document A201™ –1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:56:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:    (2256965864)

SCHEDULE I TO THE GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

LIST OF INDEMNITEES

CHICAGO CHRISTIAN INDUSTRIAL LEAGUE PROPERTIES, INC., AN ILLINOIS NOT-FOR-PROFIT CORPORATION

CHICAGO CHRISTIAN INDUSTRIAL LEAGUE, AN ILLINOIS NOT-FOR-PROFIT CORPORATION

THE CITY OF CHICAGO, AN ILLINOIS MUNICIPAL CORPORATION

BANK OF AMERICA, N.A., A NATIONAL BANKING ASSOCIATION

NCB, FSB, A FEDERAL SAVINGS BANK

NATIONAL CONSUMER COOPERATIVE BANK

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                    (2256955864)

SCHEDULE 11 TO THE GENERAL CONDITIONS TO THE CONTRACT OF CONSTRUCTION

CONTRACTOR'S PERSONNEL

[TO BE COMPLETED]

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:58:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                                                (2258955884)

55

08CV3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC



**Building the Future**

**Turner Change Order**
Detailed, Grouped by Each Number

| | |
|---|---|
| Project #10649 - Chicago Christian Industrial League<br>2750 West Roosevelt Road<br>Chicago, IL | Turner Construction Company<br>Tel:<br>Fax: |

**Date:** 5/2/2005
**To Contractor:**
Turner Construction Company
55 East Monroe St.
Suite 3100
Chicago, IL  60603

**Architect's Project No:**
**Contract Date:**       12/3/2004
**Contract Number:** 001
**Change Order Number:** 001

**The Contract is hereby revised as outlined below:**

CORs Approved Through 5/2/05

| PCO | Description | | Amount |
|---|---|---|---|
| 006 | Building Permit Fee | $ | 6,603 |
| 007 | Changes to the construction site fence per City of Chicago Ordinance | $ | 15,789 |

| | | |
|---|---|---|
| The original Contract Value was.................................................................................................. | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders.............................................................................. | | 0 |
| The Contract Value prior to this Turner Change Order was............................................................. | | 15,535,000 |
| The Contract Value will be changed by this Turner Change Order in the amount of........................ | | 22,392 |
| The new Contract Value including this Turner Change Order will be................................................ | $ | 15,557,392 |
| The Contract duration will be changed by......................................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.................................... | | 6/4/2006 |

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|---|---|---|
| ARCHITECT<br>221 West Erie<br>Chicago, IL 60610 | CONTRACTOR<br>55 East Monroe St.<br>Suite 3100<br>Chicago, IL  60603 | OWNER<br>123 South Green Street<br>Chicago, IL  60607 |
| Address | Address | Address |
| By: Jamie Cook | By: | By: Judy McIntyre |
| SIGNATURE: | SIGNATURE: 5/17/05 | SIGNATURE: |
| DATE: 5/10/05 | DATE: | DATE: 5/12/05 |

**EXHIBIT**

**B**



**Turner**

Building the Future

*p #2 H co c*

# Turner Change Order
Detailed, Grouped by Each Number

---

**Project #10649 - Chicago Christian Industrial League**　　　　　　　　　**Turner Construction Company**
2750 West Roosevelt Road　　　　　　　　　　　　　　　　　　　　　　　　　　Tel:
Chicago, IL　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax:

**Date:** 5/16/2005
**To Contractor:**　　　　　　　　　　　　　　**Architect's Project No:**
Turner Construction Company　　　　　　　　　**Contract Date:**　　　12/3/2004
55 East Monroe St.　　　　　　　　　　　　　　**Contract Number:**　001
Suite 3100　　　　　　　　　　　　　　　　　　**Change Order Number:**　002
Chicago, IL  60603

**The Contract is hereby revised as outlined below:**

Build - Out Alternates per Contract

| PCO | Description | | Amount |
|---|---|---|---|
| 027 | Build-Out Alternates per Contract | $ | 1,808,386 |

| | | |
|---|---|---|
| The original Contract Value was.................................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders................................................................ | | 22,392 |
| The Contract Value prior to this Turner Change Order was.............................................. | | 15,557,392 |
| The Contract Value will be changed by this Turner Change Order in the amount of...................... | | 1,808,386 |
| The new Contract Value including this Turner Change Order will be...................................... | $ | 17,365,778 |
| The Contract duration will be changed by.......................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.............................. | | 6/4/2006 |

---

Krueck and Saxton　　　　　　　　　Turner Construction Company　　　　Chicago Christian Industrial League

**ARCHITECT**　　　　　　　　　　　**CONTRACTOR**　　　　　　　　　　**OWNER**
221 West Erie　　　　　　　　　　　55 East Monroe St.　　　　　　　　　123 South Green Street
Chicago, IL  60610　　　　　　　　　Suite 3100　　　　　　　　　　　　　Chicago, IL  60607
　　　　　　　　　　　　　　　　　　Chicago, IL  60603

**Address**　　　　　　　　　　　　　**Address**　　　　　　　　　　　　　**Address**
By: Jamie Cook　　　　　　　　　　　By:　　　　　　　　　　　　　　　　By: Judy McIntyre

SIGNATURE:　　　　　　　　　　　　SIGNATURE:　　　　　　　　　　　　SIGNATURE:

DATE: 6/10/05　　　　　　　　　　　DATE: 6/13/05　　　　　　　　　　　DATE:

---



*PCO 10, C03*

**Turner Change Order**
Detailed, Grouped by Each Number

---

**Project #10649 - Chicago Christian Industrial League**
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel:
Fax:

**Date:** 5/24/2005
**To Contractor:**
Turner Construction Company
55 East Monroe St.
Suite 3100
Chicago, IL  60603

**Architect's Project No:**
**Contract Date:**          12/3/2004
**Contract Number:** 001
**Change Order Number:** 003

The Contract is hereby revised as outlined below:

Underground Foundation, Basement and Obstruction Removal

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 010 | Underground Foundation, Basement and Obstruction Removal Discovered on 4/6/05 and 4/7/05 | $ | 46,559 |

| | | | |
|---|---|---|---|
| The original Contract Value was............................................................................. | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders.................................................... | | 1,830,778 |
| The Contract Value prior to this Turner Change Order was................................... | | 17,365,778 |
| The Contract Value will be changed by this Turner Change Order in the amount of................ | | 46,559 |
| The new Contract Value including this Turner Change Order will be........................... | $ | 17,412,337 |
| The Contract duration will be changed by............................................................. | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.................. | | 6/4/2006 |

---

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|-------------------|-----------------------------|-------------------------------------|
| **ARCHITECT**<br>221 West Erie<br>Chicago, IL  60610 | **CONTRACTOR**<br>55 East Monroe St.<br>Suite 3100<br>Chicago, IL  60603 | **OWNER**<br>123 South Green Street<br>Chicago, IL  60607 |
| Address | Address | Address |
| By: Jamie Cook | By: | By: Judy McIntyre |
| SIGNATURE: | SIGNATURE: | SIGNATURE: |
| DATE: 6/10/05 | DATE: 6/18/05 | DATE: |



**Turner**
**Building the Future**

# Turner Change Order
Detailed, Grouped by Each Number

---

**Project #10649 - Chicago Christian Industrial League**          **Turner Construction Company**
2750 West Roosevelt Road                                                                          Tel:
Chicago, IL                                                                                               Fax

**Date:** 6/16/2005
**To Contractor:**                                    **Architect's Project No:**
Turner Construction Company                   **Contract Date:**          12/3/2004
55 East Monroe St.                                   **Contract Number:**  001
Suite 3100                                              **Change Order Number:**  004
Chicago, IL  60603

**The Contract is hereby revised as outlined below:**

Approved PCOs #3, 4 and 9 (CORs #3, 11 and 14)

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 009 | Underground Storage Tank Discovered 4/5/05 | $ | 5,229 |
| 003 | Bulletin #3 | $ | 38,358 |
| 004 | Bulletin #4 | $ | 297,011 |

---

| | | |
|---|---|---|
| The original Contract Value was............................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders........................................................ | | 1,877,337 |
| The Contract Value prior to this Turner Change Order was......................................... | | 17,412,337 |
| The Contract Value will be changed by this Turner Change Order in the amount of...... | | 340,598 |
| The new Contract Value including this Turner Change Order will be............................ | $ | 17,752,935 |
| The Contract duration will be changed by................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is................ | | 6/4/2006 |

---

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|---|---|---|
| **ARCHITECT** | **CONTRACTOR** | **OWNER** |
| 221 West Erie | 55 East Monroe St. | 125 South Green Street |
| Chicago, IL  60610 | Suite 3100 | Chicago, IL  60607 |
| | Chicago, IL  60603 | |
| Address | Address | Address |
| By:  Jamie Cook | By:  Brad Warschied | By:  Judy McIntyre |
| SIGNATURE: | SIGNATURE: | SIGNATURE: |
| DATE: 7/12/05 | DATE: 7/8/05 | DATE: 6/29/05 |

---





**Turner Change Order**

Detailed, Grouped by Each Number

---

**Project #10549 - Chicago Christian Industrial League**
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-5064
Fax: 773-722-5247

**Date:** 7/6/2005

**To Contractor:**
Turner Construction Company
2750 West Roosevelt Road Chicago, IL 60608

**Architect's Project No:**
**Contract Date:**      12/3/2004
**Contract Number:** 001
**Change Order Number:** 005

**The Contract is hereby revised as outlined below:**

Approved PCOs #6, 34 and 44 (CORs #17, 19 and 20)

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 044 | Revisions to GB-11 to accomodate plumbing sleeve | $ | 919 |
| 006 | Bulletin #6 | $ | 27,013 |
| 034 | Waterproofing at Elevator Pits per RFI #45 | $ | 6,577 |

| | | |
|---|---|---|
| The original Contract Value was................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders............................................ | | 2,217,935 |
| The Contract Value prior to this Turner Change Order was............................ | | 17,752,935 |
| The Contract Value will be changed by this Turner Change Order in the amount of.................... | | 34,509 |
| The new Contract Value including this Turner Change Order will be............................ | $ | 17,787,544 |
| The Contract duration will be changed by................................................ | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is........................ | | 8/4/2005 |

---

Krueck and Sexton
**ARCHITECT**
221 West Erie
Chicago, IL 60610
Address

By: Jamie Cook

SIGNATURE:

DATE 8/7/05

Turner Construction Company
**CONTRACTOR**
2750 West Roosevelt Road Chicago, IL 60608
Address

By: Brad Warehime

SIGNATURE:

DATE 8/2/05

Chicago Christian Industrial League
**OWNER**
123 South Green Street
Chicago, IL 60607
Address

By: Judy McIntyre

SIGNATURE:

DATE 7-29-05

---





**Turner Change Order**

Detailed, Grouped by Each Number

(6)

| Project #10649 - Chicago Christian Industrial League | Turner Construction Company |
|---|---|
| 2750 West Roosevelt Road | Tel: 773-722-5064 |
| Chicago, IL | Fax: 773-722-5247 |

Date: 7/6/2005 .
To Contractor:
Turner Construction Company
2750 West Roosevelt Road Chicago, IL 60608

Architect's Project No:
Contract Date:          12/3/2004
Contract Number:  001
Change Order Number:  006

The Contract is hereby revised as outlined below:

Approved PCO #14 (COR #4)

| PCO | Description | | Amount |
|---|---|---|---|
| 014 | Payment and Performance Bond for the Project | $ | 161,546 |

| | | |
|---|---|---|
| The original Contract Value was......................................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders............................................................ | | 2,252,544 |
| The Contract Value prior to this Turner Change Order was........................................... | | 17,787,544 |
| The Contract Value will be changed by this Turner Change Order in the amount of..................... | | 161,546 |
| The new Contract Value including this Turner Change Order will be.................................... | $ | 17,949,090 |
| The Contract duration will be changed by........................................................................ | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is........................... | | 6/4/2005 |

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|---|---|---|
| ARCHITECT | CONTRACTOR | OWNER |
| 221 West Erie | 2750 West Roosevelt Road Chicago, IL | 123 South Green Street |
| Chicago, IL  60610 | 60608 | Chicago, IL  60607 |
| Address | Address | Address |
| By:  Jamie Cook | By:  Brad Warehime | By:  Judy McIntyre |
| SIGNATURE: | SIGNATURE: | SIGNATURE: |
| DATE  8/2/05 | DATE  8/2/05 | DATE  7-29-05 |





**Turner Change Order**
Detailed, Grouped by Each Number

---

Project #10649 - Chicago Christian Industrial League
2750 West Roosevelt Road
Chicago, IL

Turner Construction Company
Tel: 773-722-6064
Fax: 773-722-5247

---

Date: 7/11/2005
To Contractor:
Turner Construction Company
2750 West Roosevelt Road Chicago, IL  60608

Architect's Project No:
Contract Date:        12/3/2004
Contract Number:  001
Change Order Number:  007

The Contract is hereby revised as outlined below:

Approved PCO #5 (COR #12)

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 005 | Bulletin #5 | $ | 84,977 |

---

| | | |
|---|---|---|
| The original Contract Value was............................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders.............................................. | | 2,414,080 |
| The Contract Value prior to this Turner Change Order was................................. | | 17,949,080 |
| The Contract Value will be changed by this Turner Change Order in the amount of...................... | | 84,977 |
| The new Contract Value including this Turner Change Order will be...................................... | $ | 18,034,057 |
| The Contract duration will be changed by............................................................ | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is............................ | | 6/4/2006 |

---

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|-------------------|-----------------------------|-------------------------------------|
| ARCHITECT | CONTRACTOR | OWNER |
| 221 West Erie | 2750 West Roosevelt Road Chicago, IL 60608 | 123 South Green Street |
| Chicago, IL  60610 | | Chicago, IL  60607 |
| Address | Address | Address |
| By:  Jamie Cook | By:  Brad Warshawski | By:  Judy McIntyre |
| SIGNATURE: | SIGNATURE: | SIGNATURE: |
| DATE  8/2/05 | DATE  8/2/05 | DATE  7-29-05 |



**Turner**

Building the Future

**Turner Change Order**

Detailed, Grouped by Each Number

---

**Project #10849 - Chicago Christian Industrial League**
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-5064
Fax: 773-722-5247

**Date: 11/29/2005**
**To Contractor:**
Turner Construction Company
2750 West Roosevelt Road Chicago, IL 60608

**Architect's Project No:**
**Contract Date:** 12/3/2004
**Contract Number:** 001
**Change Order Number:** 006

**The Contract is hereby revised as outlined below:**

PCOs #18,24,30,32,33,48,57,65,67,68,69

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 030 | Deeper Caisson Drilling | $ | - 3,069 |
| 057 | Revise Doors, Frames and Hardware per Submittal #01-08110 as stamped by Krueck and Sexton on 8/12/05 | $ | 8,571 |
| 024 | Additional Fire Alarm A/V devices per RFI #15 | $ | 8,943 |
| 085 | Provide support framing for roof mounted exhaust fans per SSK-11 and SSK-12 | $ | 2,700 |
| 048 | Provide Closet Lighting as per RFI #30 | $ | 9,823 |
| 032 | Locundo Equipment Revisions | ($ | 38,133) |
| 033 | Bulletin #7 | ($ | 2,830) |
| 067 | Furnish and install additional concrete for loading dock ramp per SSK-14 and 15 | $ | 7,357 |
| 068 | Revise Doors, Frames and Hardware per Submittal #01-08110 as stamped by Krueck and Sexton on 10/4/05 | $ | 6,108 |
| 069 | Furnish and install roof straps as indicated on SSK-13 | $ | 4,202 |
| 018 | Caisson Obstruction Encountered on 4/21, 4/27 and 5/2 | $ | 7,517 |

| | | |
|---|---|---|
| The original Contract Value was............................................................................. | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders.......................................................... | | 2,499,067 |
| The Contract Value prior to this Turner Change Order was............................................. | | 18,034,067 |
| The Contract Value will be changed by this Turner Change Order in the amount of................ | | 24,138 |
| The new Contract Value including this Turner Change Order will be................................. | $ | 18,058,205 |
| The Contract duration will be changed by.................................................................. | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.......................... | | 6/4/2006 |

---

Krueck and Sexton

ARCHITECT
221 West Erie
Chicago, IL 60610
Address
By: Jamie Cook
SIGNATURE:
DATE: 12/15/05

Turner Construction Company

CONTRACTOR
2750 West Roosevelt Road Chicago, IL 60608
Address
By: Brad Warchime
SIGNATURE:
DATE: 12/13/05

Chicago Christian Industrial League

OWNER
123 South Green Street
Chicago, IL 60607
Address
By: Judy McIntyre
SIGNATURE:
DATE: 12/19/05

---



**Building the Future**

**Turner Change Order**
Detailed, Grouped by Each Number

---

**Project #10649 - Chicago Christian Industrial League**
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-5064
Fax: 773-722-9247

Date: 2/9/2008
To Contractor:
Turner Construction Company
2750 West Roosevelt Road Chicago, IL  60608

Architect's Project No:
Contract Date:        12/3/2004
Contract Number:  001
Change Order Number:  009

The Contract is hereby revised as outlined below:

PCOs #17, 45, 46, 52, 56, 74, 94, 100 and 105

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 105 | Eliminate Water Feature | ($ | 57,841) |
| 094 | Replace fixture type EF with GE / Valmont in lieu of VE Alternate of Cooper | $ | 18,907 |
| 052 | Bulletin #8 | $ | 58,189 |
| 074 | Infill of 2" Slab Depression at the Kitchen Area, Bathrooms #104, 105, Toilet #159, 154 and 152 | $ | 11,584 |
| 045 | Added Elevator Rail Support Steel | $ | 12,448 |
| 046 | Underground Obstruction Removal at Kitchen and ComEd Areas | $ | 4,153 |
| 017 | Unforseen Underground Concrete and Obstruction Removal, including all USTs to date | $ | 50,272 |
| 100 | Credit to Eliminate the Rooftop Planters | ($ | 20,000) |
| 056 | Provide Ballasted Roof System in lieu of Specified Mechanically Fastened EPDM | ($ | 14,110) |

| | | |
|---|---|---|
| The original Contract Value was.................................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders............................................................. | | 2,523,205 |
| The Contract Value prior to this Turner Change Order was............................................ | | 18,058,205 |
| The Contract Value will be changed by this Turner Change Order in the amount of........ | | 63,582 |
| The new Contract Value including this Turner Change Order will be............................... | $ | 18,121,787 |
| The Contract duration will be changed by...................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is................... | | 6/4/2006 |

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|-------------------|----------------------------|-------------------------------------|
| **ARCHITECT** | **CONTRACTOR** | **OWNER** |
| 221 West Erie | 2750 West Roosevelt Road Chicago, IL | 123 South Green Street |
| Chicago, IL  60610 | 60608 | Chicago, IL  60607 |
| Address | Address | Address |
| By: Jamie Cook | By: Brad Warehime | By: Judy McIntyre |
| SIGNATURE | SIGNATURE | SIGNATURE |
| DATE: 7/14/06 | DATE: | DATE: 3/20-06 |



# Turner

## Building the Future



**Turner Change Order**

Detailed, Grouped by Each Number

Project #10649 - Chicago Christian Industrial League
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-5064
Fax: 773-722-5247

Date: 3/15/2006
To Contractor:
Turner Construction Company
2750 West Roosevelt Road Chicago, IL 60608

Architect's Project No:
Contract Date:      12/3/2004
Contract Number:  001
Change Order Number: 010

The Contract is hereby revised as outlined below:

PCOs #77, 98, 103, 107, 108, 110 and 117

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 103 | RFI 216 - Elevator Machine Room Doors | $ | 2,988 |
| 107 | Furnish and Install Additional Quarry Tile Flooring below the Freezer per RFI #196 | $ | 3,521 |
| 110 | Relocate Hose Bib to Column J.1 and 1 Line per Shop Drawing Review | $ | 1,357 |
| 108 | Semi - Recessed Toilet Accessories per RFI #235 | $ | 1,859 |
| 117 | Change Carpet in Rooms 108, 109 and 110 from CPT-2 to CPT-1 | $ | 3,073 |
| 077 | Provide Mag Drill Beam Penetrations and Revise the Height of the 4th Floor Sprinkler Piping | $ | 32,663 |
| 098 | Revise glass and framing dimensions per ASK 084 | $ | 10,782 |

| | | |
|---|---|---|
| The original Contract Value was | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders | | 2,586,787 |
| The Contract Value prior to this Turner Change Order was | | 18,121,787 |
| The Contract Value will be changed by this Turner Change Order in the amount of | | 55,841 |
| The new Contract Value including this Turner Change Order will be | $ | 18,177,628 |
| The Contract duration will be changed by | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is | | 6/4/2006 |

Krueck and Sexton
**ARCHITECT**
221 West Erie
Chicago, IL 60610
Address
By: Jamie Cook
SIGNATURE:
DATE: 4/25/06

Turner Construction Company
**CONTRACTOR**
2750 West Roosevelt Road Chicago, IL 60608
Address
By: Brad Wareham
SIGNATURE:
DATE: 4/25/06

Chicago Christian Industrial League
**OWNER**
123 South Green Street
Chicago, IL 60607
Address
By: Judy McIntyre
SIGNATURE:
DATE: 4/26/2006

FILE: 000301


**Building the Future**

**Turner Change Order**
Detailed, Grouped by Each Number

---

Project #10649 - Chicago Christian Industrial League
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-6064
Fax: 773-722-5247

Date:  4/25/2006
To Contractor:
Turner Construction Company
2750 West Roosevelt Road Chicago, IL  60608

Architect's Project No:
Contract Date:          12/3/2004
Contract Number:  001
Change Order Number:  011

The Contract is hereby revised as outlined below:

PCOs #106, 122 and 126

| PCO | Description | Amount |
|-----|-------------|--------|
| 106 | Eliminate Security and CCTV Equipment and Connections. | ($40,000) |
| 122 | Provide Concrete Curbs and Waterproofing at the Shower Areas per ASKs 105 and 108 | $31,039 |
| 126 | Provide Accent Color Paint at the Recessed Walls of the Corridors per RFI 171 | $8,177 |

---

| | |
|---|---|
| The original Contract Value was............................................................................................................. | $15,535,000 |
| Sum of changes by prior Turner Change Orders.................................................................................... | 2,642,628 |
| The Contract Value prior to this Turner Change Order was.................................................................... | 18,177,628 |
| The Contract Value will be changed by this Turner Change Order in the amount of:.............................. | (784) |
| The new Contract Value including this Turner Change Order will be....................................................... | $18,176,844 |
| The Contract duration will be changed by................................................................................................ | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.......................................... | 9/4/2006 |

---

Knueck and Sexton
**ARCHITECT**
221 West Erie
Chicago, IL  60610
Address
By:  Jamie Cook
SIGNATURE:
DATE:  June 13, 2006

Turner Construction Company
**CONTRACTOR**
2750 West Roosevelt Road Chicago, IL.
60608
Address
By:  Brad Worsham
SIGNATURE:
DATE:  June 13, 2006

Chicago Christian Industrial League
**OWNER**
123 South Green Street
Chicago, IL  60607
Address
By:  Judy McIntyre
SIGNATURE:
DATE:  June 13 2006

---

# Turner Change Order

Detailed, Grouped by Each Number

| Project #10649 - Chicago Christian Industrial League | Turner Construction Company |
|---|---|
| 2750 West Roosevelt Road | Tel: 773-722-6064 |
| Chicago, IL | Fax: 773-722-5247 |

**Date:** 10/3/2006

**To Contractor:**

Turner Construction Company
55 East Monroe Street
Suite 3100
Chicago, IL  60603

**Architect's Project No:**

**Contract Date:**    12/3/2004

**Contract Number:** 001

**Change Order Number:** 014

**The Contract is hereby revised as outlined below:**

Request for Equitable Adjustment Settlement

| PCO | Description | | Amount |
|---|---|---|---|
| 165 | Request for Equitable Adjustment Settlement | $ | 150,000 |

| | | |
|---|---|---|
| The original Contract Value was............................................................................................ | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders....................................................................... | | 2,921,338 |
| The Contract Value prior to this Turner Change Order was....................................................... | | 18,456,338 |
| The Contract Value will be changed by this Turner Change Order in the amount of.................. | | 150,000 |
| The new Contract Value including this Turner Change Order will be......................................... | $ | 18,606,338 |
| The Contract duration will be changed by................................................................................. | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is............................ | | 8/4/2006 |

| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
|---|---|---|
| **ARCHITECT** | **CONTRACTOR** | **OWNER** |
| 221 West Erie | 55 East Monroe Street | 123 South Green Street |
| Chicago, IL  60610 | Suite 3100 | Chicago, IL  60607 |
| | Chicago, IL  60603 | |
| Address | Address | Address |
| By:  Jamie Cook | By:  Bradley Werching | By:  Judy McIntyre |
| SIGNATURE | SIGNATURE | SIGNATURE |
| DATE  5/17/07 | DATE  5/17/07 | DATE  5/17/07 |

# Turner Change Order
Detailed, Grouped by Each Number

---

**Project #10649 - Chicago Christian Industrial League**
2750 West Roosevelt Road
Chicago, IL

**Turner Construction Company**
Tel: 773-722-5064
Fax: 773-722-5247

---

Date: 12/12/2006

To Contractor:
Turner Construction Company
55 East Monroe Street
Suite 3100
Chicago, IL  60603

Architect's Project No:

Contract Date:          12/3/2004

Contract Number:  001
Change Order Number: 015

**The Contract is hereby revised as outlined below:**

Change order for bonding over liens due to late payment

| PCO | Description | | Amount |
|-----|-------------|---|--------|
| 215 | Cost to bond over liens due to late payment. Bond is 150% of the liens. Actual cost of the bond will be reconciled with this change order. | $ | 10,932 |

| | | |
|---|---|---|
| The original Contract Value was.................................................................................. | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders.......................................................... | | 3,071,338 |
| The Contract Value prior to this Turner Change Order was.......................................... | | 18,606,338 |
| The Contract Value will be changed by this Turner Change Order in the amount of...................... | | 10,932 |
| The new Contract Value including this Turner Change Order will be.................................. | $ | 18,617,270 |
| The Contract duration will be changed by...................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is.......................... | | 6/4/2006 |

---

Krueck and Sexton

**ARCHITECT**
221 West Erie
Chicago, IL  60610

Address

By:  Jamie Cook

SIGNATURE:

DATE  5/17/07

Turner Construction Company

**CONTRACTOR**
55 East Monroe Street
Suite 3100
Chicago, IL  60603

Address

By:  Bradley Werthing

SIGNATURE:

DATE  5/17/07

Chicago Christian Industrial League

**OWNER**
123 South Green Street
Chicago, IL  60607

Address

By:  Judy McIntyre

SIGNATURE:

DATE  5/17/07

---

# Turner Change Order

Detailed, Grouped by Each Number

| | |
|---|---|
| **Project #10649 - Chicago Christian Industrial League** | **Turner Construction Company** |
| 2750 West Roosevelt Road | Tel: 773-722-5094 |
| Chicago, IL | Fax: 773-722-5247 |

**Date: 12/14/2006**

To Contractor:

Turner Construction Company

55 East Monroe Street

Suite 3100

Chicago, IL  60603

Architect's Project No:

Contract Date:     12/3/2004

Contract Number:  001

Change Order Number:  017

**The Contract is hereby revised as outlined below:**

Change order for work provided

| PCO | Description | | Amount |
|---|---|---|---|
| 109 | Provide 3" Conduits from Panel DP-East in lieu of 2" as illustrated on Riser Diagram E6.1 | $ | 12,637 |
| 124 | Furnish and Install Additional 4" Conduits for SBC Lines | $ | 5,182 |
| 130 | Provide Additional Conduit and Wiring for Exterior Lighting as per RFI #278 | $ | 8,835 |
| 132 | Provide Reception Desk lighting changes per ASK 114 and additional electrical and tele / data outlets as per Krueck + Sexton millwork shop drawing rev | $ | 2,732 |
| 133 | Pagoda Saturday Work on 4/22/06 | $ | 2,210 |
| 138 | MCC electrical rework in accordance with RFI #292 | $ | 9,004 |
| 155 | Provide a 115V/60C Outlet as Required for Make Up Bleed Off Panel in the Penthouse Reference Drawing M6.3 | $ | 890 |
| 177 | Relocation of dishwasher hood | $ | 5,768 |
| 189 | Add TV in lounge | $ | 553 |
| 198 | Move base cabinets from right to left side of elevation rework and add scribes to mailboxes | $ | 1,073 |
| 206 | Installation of the vestibule carpet | $ | 2,461 |
| 217 | CCTV security camera and 2 door contacts material | $ | 550 |

| | | |
|---|---|---|
| The original Contract Value was.................................................................................... | $ | 15,535,000 |
| Sum of changes by prior Turner Change Orders................................................................ | | 3,103,854 |
| The Contract Value prior to this Turner Change Order was................................................. | | 18,638,854 |
| The Contract Value will be changed by this Turner Change Order in the amount of..................... | | 51,875 |
| The new Contract Value including this Turner Change Order will be........................................ | $ | 18,690,730 |
| The Contract duration will be changed by.......................................................................... | | 0 Days |
| The revised Substantial Completion date as of this Turner Change Order is............................. | | 6/4/2006 |

| | | |
|---|---|---|
| Krueck and Sexton | Turner Construction Company | Chicago Christian Industrial League |
| **ARCHITECT** | **CONTRACTOR** | **OWNER** |
| 221 West Erie | 55 East Monroe Street | 123 South Green Street |
| Chicago, IL  60610 | Suite 3100 | Chicago, IL  60607 |
| | Chicago, IL  60603 | |
| Address | Address | Address |
| By:  Jamie Cook | By:  Bradley Wascher | By:  Judy McIntyre |
| SIGNATURE | SIGNATURE | SIGNATURE |
| DATE  5/17/07 | DATE  5/17/07 | DATE  5/17/07 |

# CERTIFICATE OF FINAL COMPLETION

**PROJECT:**

OWNER: ☐
CONSTRUCTION MANAGER: ☐
ARCHITECT: ☐
CONTRACTOR: ☐
FIELD: ☐
OTHER: ☐

CCIL Roosevelt Road Campus
2750 West Roosevelt Road
Chicago, IL 60608

**PROJECT NUMBER:** 9911
**CONTRACT FOR:** General Construction
**CONTRACT DATE:** July 27, 2006

**TO OWNER:**

**TO CONTRACTOR:**
*(Name and address):*
Turner Construction
55 East Monroe Street
Suite 3100
Chicago, IL 60603

CCIL Roosevelt Road Campus
2750 West Roosevelt Road
Chicago, IL 60608

**DATE OF ISSUANCE:** October 29, 2007

**PROJECT OR DESIGNATED PORTION SHALL INCLUDE:**

The Work performed under this Contract has been reviewed and found, to the Architect's best knowledge, information and belief, to be complete. Final Completion is the stage in the progress of the Work when the Work or designated portion thereof is complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use. The date of Final Completion of the Project or portion thereof designated above is hereby established as October 29, 2007.

Krueck & Sexton Architects
**ARCHITECT**                    **BY**                    **DATE**

Turner Construction Company
**CONTRACTOR**                    **BY**                    **DATE**

The Owner accepts the Work or designated portion thereof as complete and will assume full possession thereof at 12:00pm on October 29, 2007.

Chicago Christian Industrial League
**OWNER**                    **BY**                    **DATE**

08 CV 3535
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
RCC

## CCIL INTEREST CALCULATION

13-May-08

| | Amount of Application | Date submitted | Date Due* | Payment received | Days Late | Amount received | Interest Rate** | Interest amount due |
|---|---|---|---|---|---|---|---|---|
| Application #1 | $323,542.00 | 03/01/05 | 3/19/2005 | 04/12/2005 | 24 | $100,000.00 | 5.75% | $378.06 |
| | | | | 04/21/05 | 33 | $100,000.00 | 5.75% | $519.86 |
| | | | | 06/06/05 | 79 | $123,542.00 | 6.01% | $1,607.03 |
| Application #2 | $495,458.00 | 04/04/05 | 4/25/2005 | 06/22/2005 | 58 | $495,498.00 | 6.01% | $4,732.07 |
| Application #3 | $422,475.00 | 05/09/05 | 5/27/2005 | 07/15/05 | 49 | $422,475.00 | 6.25% | $3,544.74 |
| Application #4 | $1,070,717.00 | 06/20/05 | 7/08/2005 | 09/05/05 | 40 | $1,070,717.00 | 6.44% | $7,596.62 |
| Application #5 | $818,769.00 | 07/12/05 | 7/30/2005 | 08/26/05 | 27 | $818,769.00 | 6.44% | $3,896.13 |
| Application #6 | $896,095.00 | 08/08/05 | 8/26/2005 | 10/04/05 | 39 | $896,095.00 | 6.75% | $6,462.93 |
| Application #7 | $1,100,030.00 | 09/19/05 | 10/07/2005 | 11/01/05 | 25 | $1,100,030.00 | 6.75% | $5,274.42 |
| Application #8 | $718,960.00 | 10/19/05 | 11/06/2005 | 12/01/05 | 42 | $718,959.68 | 7.15% | $5,636.93 |
| Application #9 | $1,331,194.00 | 11/11/05 | 11/29/2005 | 01/10/06 | 42 | $1,331,194.00 | 7.25% | $11,320.76 |
| Application #10 | $1,621,761.00 | 12/15/05 | 1/3/2006 | 01/27/06 | 24 | $1,621,761.00 | 7.26% | $7,744.80 |
| Application #11 | $2,070,527.00 | 01/20/06 | 2/7/2006 | 03/03/06 | 36 | $2,070,527.00 | 7.53% | $90,261.66 |
| Application #12 | $693,396.00 | 02/02/06 | 2/21/2006 | 03/29/06 | 36 | $693,399.00 | 7.59% | $5,194.33 |
| Application #13 | $1,014,490.00 | 03/16/06 | 4/02/2006 | 04/27/06 | 25 | $1,014,427.00 | 7.75% | $5,384.00 |
| Application #14 | $1,432,104.00 | 04/19/06 | 5/06/2006 | 06/07/06 | 32 | $1,432,104.00 | 8.02% | $10,069.48 |
| Application #15 | $1,279,102.00 | 06/01/06 | 6/19/2006 | 08/14/06 | 55 | $1,279,102.00 | 8.25% | $15,198.28 |
| Application #16 | $1,126,752.00 | 06/26/06 | 7/14/2006 | 09/21/06 | 69 | $1,095,853.00 | 8.25% | $17,074.72 |
| Application #16R | $20,909.00 | 07/26/06 | 9/13/06 | 09/21/06 | 8 | $38,899.00 | 8.25% | $822.26 |
| Application #17 | $565,463.00 | 07/18/06 | 8/05/06 | 12/19/06 | 136 | $20,909.00 | 8.25% | $184.31 |
| Application #17R | $38,972.00 | 07/18/06 | 8/05/06 | 12/19/06 | 136 | $565,461.00 | 8.25% | $17,074.72 |
| Application #18 | $41,420.00 | 10/05/06 | 10/23/06 | 12/19/06 | 57 | $6,972.00 | 8.25% | $214.32 |
| Application #18R | $275,738.00 | 10/05/06 | 10/23/06 | 12/19/06 | 57 | $41,420.00 | 8.25% | $633.64 |
| Application #19AA | $314,982.00 | 04/16/07 | 5/04/07 | 07/27/07 | 84 | $275,738.00 | 8.25% | $3,482.49 |
| Application #19AAR | $997,085.00 | 04/16/07 | 5/04/07 | 07/27/07 | 91 | $314,982.00 | 8.25% | $5,998.53 |
| | | | | 08/03/07 | 91 | $325,330.00 | 8.25% | $6,176.91 |
| | | | | 08/21/07 | 105 | $325,462.00 | 8.26% | $6,662.92 |
| | | | | 08/21/07 | 108 | $15,360.00 | 8.25% | $203.76 |
| | | | | 09/07/07 | 138 | $232,219.00 | 8.03% | $7,650.17 |

Total Interest Due $163,878.53

\* Per contract language payment should be received 15 days after sign off from Architect (3 days to review). This calculates to 18 days after submission date

\*\* Interest rate is the Average Prime rate per the Federal Reserve during the month of payment



EXHIBIT
C

# CERTIFICATE OF FINAL COMPLETION

**PROJECT:**

CCIL Roosevelt Road Campus
2750 West Roosevelt Road
Chicago, IL 60608

**TO OWNER:**

CCIL Roosevelt Road Campus
2750 West Roosevelt Road
Chicago, IL 60608

**PROJECT NUMBER:** 9911
**CONTRACT FOR:** General Construction
**CONTRACT DATE:** July 27, 2006

**TO CONTRACTOR:**
*(Name and address):*
Turner Construction
55 East Monroe Street
Suite 3100
Chicago, IL  60603

OWNER: ☐
CONSTRUCTION MANAGER: ☐
ARCHITECT: ☐
CONTRACTOR: ☐
FIELD: ☐
OTHER: ☐

**DATE OF ISSUANCE:** October 29, 2007

**PROJECT OR DESIGNATED PORTION SHALL INCLUDE:**

The Work performed under this Contract has been reviewed and found, to the Architect's best knowledge, information and belief, to be complete. Final Completion is the stage in the progress of the Work when the Work or designated portion thereof is complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use. The date of Final Completion of the Project or portion thereof designated above is hereby established as October 29, 2007.

Krueck & Sexton Architects
_____        _____        _____
**ARCHITECT**                              **BY**                                      **DATE**

Turner Construction Company
_____        _____        _____
**CONTRACTOR**                           **BY**                                      **DATE**

The Owner accepts the Work or designated portion thereof as  complete and will assume full possession thereof at 12:00pm on October 29, 2007.

Chicago Christian Industrial League
_____        _____        _____
**OWNER**                                 **BY**                                      **DATE**



**EXHIBIT**

D

# Turner

Turner Construction Company
55 East Monroe Street
Suite 3100
Chicago, Illinois 60603
phone: 312.327.2770
fax: 312.327.2800
www.turnerconstruction.com

May 19, 2008

Chicago Christian Industrial League        Chicago Christian Industrial League
123 South Green Street                      2750 West Roosevelt Road
Chicago, Illinois 60607                     Chicago, Illinois 60608

Attn: Judy McIntyre

Re:     Chicago Christian Industrial League Campus Relocation Project (the "Project")

Dear Ms. McIntyre:

I am writing to advise you that Turner has completed all items on the final punch list for the Project. As you know, despite Turner's full and final completion of the Project, CCIL has failed to make the final payment to Turner required by CCIL's December 3, 2004 contract with Turner (the "Contract"). Krueck & Sexton Architects issued the Certificate of Final Completion on October 29, 2007 entitling Turner to final payment under the Contract. Accordingly, CCIL is obligated to immediately make payment to Turner in the amount of $60,000, plus interest at the rate of six percent (6%) per annum (see § 7.2 of the Contract) from October 29, 2007 through the date of full payment.

Additionally, as we have previously advised, virtually all of the progress payments made by CCIL pursuant to Article 5 of the Contract were untimely. As a result, Turner is entitled to $163,878.58 in interest pursuant to Section 7.2 of the Contract. The attached chart details this interest calculation.

We have received CCIL's letter of March 28, 2008 setting forth a "deduct charge," which apparently forms the basis for CCIL's failure to make final payment. Each of the supposed bases for non-payment are without merit. Turner is entitled to immediate payment from CCIL in the amount of $223,878.58, plus interest at the rate of 6% per annum on the $60,000 final payment from and after October 29, 2007, and all attorneys' fees and other collection costs Turner is forced to incur as a result of CCIL's nonpayment. In the event that CCIL chooses not to satisfy its payment obligations under the Contract by May 30, 2008, we will have no choice but to pursue all available remedies.

Please contact me at your earliest convenience to make payment arrangements.

Sincerely,

Gregory A. Mulac
Vice President
Deputy Operations Manager

Cc:     Frederick M. Kaplan, Esq.
        David Ariola (in triplicate)
        M. A. Simonides, TCCo.
        M. Sexton

Building the Future



**EXHIBIT**
**E**

## CCIL INTEREST CALCULATION

13-May-08

| | Amount of Application | Date submitted | Date Due* | Payment received | Days Late | Amount received | Interest Rate*** | Interest amount due |
|---|---|---|---|---|---|---|---|---|
| Application #1 | $323,542.00 | 03/01/05 | 3/19/2005 | 04/12/05 | 24 | $100,000.00 | 5.75% | $378.08 |
| | | | | 04/21/05 | 33 | $100,000.00 | 5.75% | $919.86 |
| | | | | 06/06/05 | 79 | $123,542.00 | 6.01% | $1,607.03 |
| Application #2 | $465,458.00 | 04/04/05 | 4/25/2005 | 06/22/05 | 58 | $465,458.00 | 6.01% | $4,732.07 |
| Application #3 | $422,475.00 | 05/05/05 | 5/27/2005 | 07/15/05 | 49 | $422,475.00 | 6.25% | $3,544.74 |
| Application #4 | $1,070,717.00 | 06/06/05 | 6/26/2005 | 08/05/05 | 39 | $1,070,717.00 | 6.44% | $7,356.62 |
| Application #5 | $315,759.00 | 07/12/05 | 7/30/2005 | 08/26/05 | 27 | $315,756.00 | 6.44% | $3,886.13 |
| Application #6 | $896,085.00 | 08/09/05 | 8/26/2005 | 10/04/05 | 39 | $896,085.00 | 6.75% | $6,462.93 |
| Application #7 | $1,100,030.00 | 08/19/05 | 10/7/2005 | 11/01/05 | 25 | $1,100,030.00 | 7.00% | $5,274.12 |
| Application #8 | $718,960.00 | 10/19/05 | 11/62/2005 | 12/01/05 | 25 | $718,959.68 | 7.15% | $3,520.05 |
| Application #9 | $1,331,194.00 | 11/11/05 | 11/29/2005 | 01/10/06 | 42 | $1,331,194.00 | 7.26% | $11,129.76 |
| Application #10 | $1,621,761.00 | 12/15/05 | 1/3/2006 | 01/27/06 | 24 | $1,621,761.00 | 7.26% | $7,741.90 |
| Application #11 | $2,070,527.00 | 01/20/06 | 2/7/2006 | 03/03/06 | 24 | $2,070,527.00 | 7.53% | $10,251.66 |
| Application #12 | $696,396.00 | 02/03/06 | 2/21/2006 | 03/29/06 | 36 | $696,396.00 | 7.53% | $5,184.33 |
| Application #13 | $1,014,429.00 | 03/15/06 | 4/2/2006 | 04/27/06 | 25 | $1,014,427.00 | 7.75% | $5,384.80 |
| Application #14 | $1,432,104.00 | 04/18/06 | 5/6/2006 | 06/07/06 | 32 | $1,432,104.00 | 8.02% | $10,069.46 |
| Application #15 | $1,279,102.00 | 05/01/06 | 6/19/2006 | 08/14/06 | 55 | $1,279,102.00 | 8.25% | $9,196.29 |
| Application #16 | $1,126,752.00 | 05/26/06 | 7/14/2006 | 08/31/06 | 48 | $1,095,853.00 | 8.25% | $11,781.61 |
| Application #16R | $20,909.00 | 07/28/06 | 8/13/2006 | 09/21/06 | 39 | $20,908.00 | 8.25% | $222.28 |
| Application #7 | $555,463.00 | 07/18/06 | 8/05/2006 | 12/18/06 | 136 | $555,461.00 | 8.25% | $17,874.72 |
| Application #7R | $6,872.00 | 07/18/06 | 8/05/2006 | 12/18/06 | 136 | $6,872.00 | 8.25% | $214.32 |
| Application #8 | $41,420.00 | 10/05/06 | 10/23/06 | 12/18/06 | 57 | $41,420.00 | 8.25% | $933.64 |
| Application #8R | $275,738.00 | 10/05/06 | 10/23/06 | 12/18/06 | 57 | $275,738.00 | 8.25% | $3,582.48 |
| Application #18AA | $314,982.00 | 04/16/07 | 5/04/2007 | 07/27/07 | 84 | $314,982.00 | 8.25% | $5,990.53 |
| Application #19AAR | $997,085.00 | 04/16/07 | 5/04/2007 | 09/18/07 | 138 | $232,219.00 | 8.01% | $7,080.17 |

Total Interest Due: $163,678.56

* Per contract language payment should be received 15 days after Archited (3 days to review). This calculates to 18 days after submission date

*** Interest rate is the Average Prime rate per the Federal Reserve during the month of payment

# Turner

**Turner Construction Company**
55 East Monroe Street
Suite 3100
Chicago, Illinois 60603
phone: 312.327.2770
fax: 312.327.2800
www.turnerconstruction.com

May 19, 2008

Mr. Mark Sexton
Krueck & Sexton
221 West Erie
Chicago, Illinois 60610-3125

**Re:    Chicago Christian Industrial League Campus Relocation Project (the "Project")**

Dear Mr. Sexton:

As you may be aware, the Chicago Christian Industrial League ("CCIL") is substantially indebted to Turner Construction Company ("Turner") with respect to the above Project. I have attached Turner's letter of May 19, 2008 to CCIL summarizing its claim for payment and the CCIL's letter of March 28, 2008 setting forth a "deduct charge," which apparently forms the basis for CCIL's failure to make certain payments to Turner. We are submitting Turner's claim for payment to you for initial interpretation in accordance with Section 4.4. of the December 3, 2004 contract between CCIL and Turner. Please contact us if you have any questions.

Sincerely,

Gregory A. Mulac
Vice President
Deputy Operations Manager


Cc:    Judith McIntyre, Executive Director, CCIL
       Frederick M. Kaplan, Esq.
       David Ariola
       M. A. Simonides, TCCo

4734818_1


*Building the Future*

# Turner

Turner Construction Company
55 East Monroe Street
Suite 3100
Chicago, Illinois 60603
phone: 312.327.2770
fax: 312.327.2800
www.turnerconstruction.com

May 19, 2008

Chicago Christian Industrial League          Chicago Christian Industrial League
123 South Green Street                       2750 West Roosevelt Road
Chicago, Illinois 60607                      Chicago, Illinois 60608

Attn: Judy McIntyre

Re:    Chicago Christian Industrial League Campus Relocation Project (the "Project")

Dear Ms. McIntyre:

I am writing to advise you that Turner has completed all items on the final punch list for the Project. As you know, despite Turner's full and final completion of the Project, CCIL has failed to make the final payment to Turner required by CCIL's December 3, 2004 contract with Turner (the "Contract"). Krueck & Sexton Architects issued the Certificate of Final Completion on October 29, 2007 entitling Turner to final payment under the Contract. Accordingly, CCIL is obligated to immediately make payment to Turner in the amount of $60,000, plus interest at the rate of six percent (6%) per annum (see § 7.2 of the Contract) from October 29, 2007 through the date of full payment.

Additionally, as we have previously advised, virtually all of the progress payments made by CCIL pursuant to Article 5 of the Contract were untimely. As a result, Turner is entitled to $163,878.58 in interest pursuant to Section 7.2 of the Contract. The attached chart details this interest calculation.

We have received CCIL's letter of March 28, 2008 setting forth a "deduct charge," which apparently forms the basis for CCIL's failure to make final payment. Each of the supposed bases for non-payment are without merit. Turner is entitled to immediate payment from CCIL in the amount of $223,878.58, plus interest at the rate of 6% per annum on the $60,000 final payment from and after October 29, 2007, and all attorneys' fees and other collection costs Turner is forced to incur as a result of CCIL's nonpayment. In the event that CCIL chooses not to satisfy its payment obligations under the Contract by May 30, 2008, we will have no choice but to pursue all available remedies.

Please contact me at your earliest convenience to make payment arrangements.

Sincerely,

Gregory A. Mulac
Vice President
Deputy Operations Manager

Cc:    Frederick M. Kaplan, Esq.
       David Ariola (in triplicate)
       M. A. Simonides, TCCo.
       M. Sexton

Building the Future



**CHICAGO CHRISTIAN INDUSTRIAL LEAGUE**
JOURNEY TO INDEPENDENT LIVING

**March 28, 2008**

Mr. Stephen Fort
Turner Construction
General Manager, Vice President
Turner Construction Company
55 East Monroe Street, Suite 3100
Chicago, Illinois 60603

Re: 2750 West Roosevelt

Dear Mr. Fort:

Attached you will find a spreadsheet listing the projects completed by our agency at 2750 West Roosevelt Road. As you may see the largest cost was the Com Ed charges owed by Turner prior to 8/29/2006. Please be aware that CCIL was forced to pay the outstanding Com Ed balance to ensure that service was not interrupted at our facility. Due to Turner Construction's inability to execute the listed projects, CCIL paid the city residency fine as well completed other items in order to receive our certificate of completion. Please note that the City of Chicago residency fine is liened against contractors who do not meet the contractual requirements for local and minority hiring and participation.

We are requesting that Turner issue a deduct charge order in the amount of $67,615.95. As you will see this amount exceeds the $60,000 held back in the construction draws so we ask that a reimbursement check in the amount of $7,615.95 is issued and made payable to the Chicago Christian Industrial League. Detailed information is available and will gladly be provided upon request.

Thank you very much for your attention to this matter. Chicago's poor and homeless men, women, and children have a place to help them get back to independent living thanks to all the hard work of Turner Construction. We have enjoyed working with you, your team and subtractors.

I can be reached at 773-435-8377 if you have any further questions.

Very truly yours,

Judith McIntyre
Executive Director

JM: ct

Cc: David Ariola
Tony Hayes

**Chicago Christian Industrial League**
**2750 W. Roosevelt**
**Funds to be deducted from $60,000 Turner contingency**

| Projects Completed by CCIL | Total Cost |
|---|---|
| DOH City Residency fine | $8,239.00 |
| Final on-site construction cleaning | $4,000.00 |
| Interior & exterior window cleaning | $4,150.00 |
| Courtyard power restoration project | $1,920.00 |
| Adjust doors and install door closers | $672.00 |
| (60) hours for maint. staff for misc. repairs | $1,813.20 |
| Miscellaneous repairs to receive Cert. of Occupancy | $12,200.00 |
| ComEd charges owed by Turner prior to 8/29/06 | $28,474.85 |
| 10% CCIL fee for staff time to oversee above projects | $6,146.90 |

| TOTAL | $67,615.95 |
|---|---|


**American Arbitration Association**
*Dispute Resolution Services Worldwide.*

## REQUEST FOR MEDIATION

| Name of Responding Party | | | Name of Representative (if known) | | |
|---|---|---|---|---|---|
| **Address:**<br>Chicago Christian Industrial League ("CCIL")<br><br>2750 West Roosevelt Road | | | **Name of Firm (if applicable)** | | |
| | | | **Representative's Address:** | | |
| **City**<br>Chicago | **State**<br>IL | **Zip Code**<br>60608 | City | State | Zip Code |
| **Phone No.**<br>773-435-8300 | | **Fax No.**<br>773-435-8415 | Phone No. | | Fax No. |
| **Email Address:**<br>jmcintyre@theleague.org | | | **Email Address:** | | |

The undersigned party to an agreement contained in a written contract dated <u>December 3, 2004</u>, providing for mediation under the <u>Construction Industry</u> Mediation Procedures of the American Arbitration Association, hereby requests mediation

**THE NATURE OF THE DISPUTE**

Breach of Contract -- Turner Construction Company ("Turner") is seeking damages arising out of the CCIL's refusal to fully compensate Turner for its construction of an educational and dormitory facility in accordance with the Parties' agreement. Notwithstanding Turner's performance of its duties, CCIL repeatedly delayed its payments to Turner in breach of the agreement and has utterly refused to make final payment for the services provided. Turner seeks compensation for such breaches in the amount of $223,878.58, plus continuing interest, its attorneys' fees, expenses, costs and such other and further relief as this Court deems proper.

**CLAIM OR RELIEF SOUGHT (amount, if any):**

Turner is seeking damages in the amount of Two Hundred Twenty Three Thousand Eight Hundred Seventy Eight Dollars and Fifty Eight Cents ($223,878.58), plus interest at the rate of 5% per annum on the $60,000 outstanding final payment from and after October 29, 2007, the costs associated with this action, including Turner's reasonable attorneys' fees, pre-judgment interest and any and all further relief as is appropriate.

Mediation locale <u>Chicago, Illinois</u>          (check one) ☐ Requested by Filing Party ☒ Locale provision included in the contract

Type of Business:  Filing Party <u>Construction Company</u>          Responding Party <u>Not-for-Profit</u>

You are hereby notified that copies of our mediation agreement and this request are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA ☒ Dallas, TX ☐ East Providence, RI ☐ Fresno, CA ☐ ICDR, NY, with a request that it commence administration of this mediation.

| Signature (may be signed by a representative)   Date:<br>*[signature]* 6-9-08 | Name of Representative<br>Todd A. Rowden |
|---|---|
| **Name of Filing Party**<br>Turner Construction Company | **Name of Firm (if applicable)**<br>Thompson Coburn LLP d/b/a Thompson Coburn Fagel Haber |
| **Address (to be used in connection with this case):**<br>55 E. Monroe Street, Suite 3100 | **Representative's Address:**<br>55 E. Monroe Street, Suite 4000 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Chicago | IL | 60603 | Chicago | IL | 60603 |
| **Phone No.**<br>312-327-2800 | | **Fax No.** | **Phone No.**<br>312-346-7500 | | **Fax No.**<br>312-782-1030 |
| **Email Address:**<br>gmules@tcoo.com | | | **Email Address:**<br>trowden@tcfhlaw.com | | |

To begin proceedings, please send two copies of this Request and the Mediation Agreement to the AAA. Send the originals to respondant

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879


**EXHIBIT**
**F**

**§ 4.4.4** The Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, or by mediation.

### § 4.5 MEDIATION

**§ 4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to the institution of legal or equitable proceedings by either party.

**§ 4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a suit but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**§ 4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### § 4.6 ARBITRATION

**§ 4.6.1** There shall be no arbitration of any Claim or dispute.

*(Paragraphs deleted)*

### ARTICLE 5 SUBCONTRACTORS

### § 5.1 DEFINITIONS

**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, within thirty (30) days after being awarded the contract, shall furnish in writing to the Owner and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect or the Owner will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

AIA Document A201™ – 1997. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:25 on 12/03/2004 under Order No.1000117462_1 which expires on 5/7/2005, and is not for resale.
User Notes:                                                                                              (2256895884)